# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KARI LAKE, ET AL.,

and

ALAN DERSHOWITZ, ET AL.,

*Plaintiffs-Appellants,*

v.

ADRIAN FONTES, ET AL.,

*Defendants-Appellees.*

On Appeal from the United States District Court for the
District of Arizona
No. 2:22-cv-00677-JJT
Hon. John J. Tuchi

## BRIEF OF MARICOPA COUNTY DEFENDANTS-APPELLEES

Emily Craiger (Bar No. 021728)
THE BURGESS LAW GROUP
3131 East Camelback Road, Suite 224
Phoenix, Arizona  85016
Telephone: (602) 806-2100
emily@theburgesslawgroup.com

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

Thomas P. Liddy
Joseph J. Branco
Joseph E. La Rue

        Deputy County Attorneys
MARICOPA COUNTY ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
225 W. Madison Street
Phoenix, AZ 85003
ca-civilmailbox@mcao.maricopa.gov

*Attorneys for Maricopa County Defendants-Appellees*

January 29, 2024

## Table of Contents

Table of Authorities ................................................................. iv

Introduction .............................................................................1

Statement of Jurisdiction..........................................................2

Statement of the Issues.............................................................2

Statement of the Case and Facts ...............................................3

Summary of the Argument........................................................12

Standard of Review ..................................................................13

Argument..................................................................................14

I.    The District Court properly sanctioned Challengers' Attorneys pursuant to Rule 11. ...................................................................................14

    A. Challengers' Attorneys falsely asserted that Arizona's electronic voting systems are not secure, transparent or reliable, in violation of Rule 11........16

    B. Challengers' Attorneys falsely asserted Arizona voters do not vote on paper ballots, in violation of Rule 11. ........................................................18

    C. Challengers' Attorneys falsely asserted that Arizona's tabulation machines are not independently tested by experts, in violation of Rule 11..22

II.    The Opening Brief fails to set forth any basis for setting aside the sanctions ordered against Dershowitz...........................................................23

    A. Rule 11 applies to attorneys who sign pleadings, regardless of their self-proclaimed titles...........................................................................24

    B. Dershowitz could have consulted on this case without signing the pleadings, but he chose not to.........................................................29

    C. Allegations falsely alleging Arizona's Tabulation Equipment is not subject to neutral testing was one of the primary bases for the award of sanctions…………………………………………………………….....30

    D. Deterring baseless litigation is required, not forbidden, by Rule 11........33

    E. The First Amendment does not include the right to maintain groundless litigation. ....................................................................................35

Conclusion ...............................................................................38

Statement of Related Cases......................................................39

Certificate of Compliance ........................................................40

Certificate of Service ...............................................................41

# Table of Authorities

**Cases**

*Bender v. Williamsport Area Sch. Dist.*,
475 U.S. 534, 541–42 (1986.) ........................................................................2

*Bill Johnson's Restaurants, Inc. v. NLRB*,
461 U.S. 731 (1983)........................................................................36

*Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*,
498 U.S. 533 (1991)........................................................................24

*Christian v. Mattel, Inc.*,
286 F. 3d 1118 (9th Cir. 2022) ........................................................25

*Conn v. CSO Borjorquez*,
967 F.2d 1418 (9th Cir. 1992.) ................................................. 15, 36

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990)........................................................... *passim*

*Curling v. Raffensperger*,
No. 1:17-CV-2989-AT (N.D. Ga. Feb. 3, 2022) ........................................21

*Ex parte Young*,
209 U.S. 123 (1908)…………………………………………………………3

*Gentile v. State Bar of Nevada*,
*501 U.S. 1030 (1991)* ........................................................... 37

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323, 340 (1974) .................................................. 36, 37

*Gertz v. State Bar of Nevada*,
501 U.S. 1030 (1991)…………………………………………………37

*Goodyear Tire and Rubber Co. v. Haeger*,
581 U.S. 101 (2017)........................................................... 32, 33

*Havensight Capital L.L.C. v. Nike, Inc.*,
891 F.3d 1167  (9th Cir. 2018) ........................................................13

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)........................................................................33

*Herbert v. Lando*,
441 U.S. 153 (1979)........................................................................36

*Holgate v. Baldwin*,
425 F.3d 671 (9th Cir. 2005) ........................................................17

*Itel Securities Litigation*,
791 F.2d 672 (9th Cir. 1986) ........................................................36

*Jenkins v. Methodist Hospitals of Dallas, Inc.*,
478 F.3d 255 (5th Cir. 2007) ........................................................25

*King v. Whitmer,*
  556 F. Supp.3d 680 (E.D. Mich. 2021) .........................................................33
*King v. Whitmer,*
  71 F. 4th 511 (6th Cir. 2023) ........................................................ 26, 32, 36
*Lake v. Fontes,*
   83 F.4th 1199 (9th Cir. 2023.)................................................... *passim*
*Lake v. Hobbs,*
  623 F.Supp.3d 1015 (D. Ariz.2022.) ...................................... *passim*
*Lake v. Hobbs,*
  643 F.Supp.3d 989 (D. Ariz. 2022.) ...................................... *passim*
*Larsen v. Comm'r,*
  765 F.2d 939, 941 (9th Cir. 1985) ...............................................35
*Mine Workers v. Bagwell,*
  512 U.S. 821 (1994)......................................................................32
*NPF Franchising, LLC v. SY Dawgs, LLC,*
  37 F.4th 369 (6th Cir. 2022) .......................................................27
*Pavelic & LeFlore v. Marvel Ent. Grp.,*
  493 U.S. 120 (1989)........................................................ 24, 25, 30
*Primus Auto. Fin. Servs., Inc. v. Batarse,*
   115 F.3d 644 (9th Cir. 1997)......................................................13
*Rager v. C.I.R.,*
  775 F.2d 1081 (9th Cir. 1985) ...................................................35
*Schutts v. Bentley Nevada Corp.,*
  966 F. Supp. 1549 (D. Nev. 1997) .............................................24
*Smith v. Ricks,*
  31 F.3d 1478 (9th Cir. 1994) ............................................... 24, 28
*Townsend v. Holman Consulting Corp.,*
  929 F.2d 1358, 1366 (9th Cir. 1990) ...................................... 13,15
*Truesdell v. S. Cal. Permanente Med. Grp.,*
  209 F.R.D. 169 (C.D. Cal. 2002.)................................................14
*Unioil, Inc. v. E.F. Hutton & Co., Inc.,*
  809 F.2d 548  (9th Cir. 1986) ....................................................26
*Zaldivar v. City of L.A.,*
  780 F.2d 823 (9th Cir. 1986) .....................................................15

## Constitutional Provisions

Ariz. Const. art. II, § 4 .......................................................................4
U.S. Const. amend I………………………………………………….*passim*
U.S. Const. amend XI  .......................................................................6
U.S. Const. amend. XIV, § 1………………………………………………4

U.S. Const. art. III ............................................................ 2, 32

**Statutes**

28 U.S.C. §1927…………………………………………………passim
28 U.S.C. § 2201…………………………………………………………4
42 U.S.C. § 1983………………………………………………………3, 4
Ariz. Rev. Stat. § 11-251………………………………………………4, 5
Ariz. Rev. Stat. § 16-442 …………………………..…………………16, 22
Ariz. Rev. Stat. § 16-442(B) ……………………………..…………3, 16
Ariz. Rev. Stat. §16-445(D) …………………………………………………3
Ariz. Rev. Stat. § 16-446(B)…………………………………………3, 16
Ariz. Rev. Stat. § 16-449 …………………………..…………………22
Ariz. Rev. Stat. §16-452(A)…………………………………………3, 4
Ariz. Rev. Stat. §16-452 (B)…………………………………………..…3
Ariz. Rev. Stat. §16-452 (D),……………………………………….....3
Ariz. Rev. Stat. §16-552…………………………………………………22

**Rules**

9th Cir. R. 30-1 ...................................................................5
Fed. R. App. P. 28(b)(1)..........................................................2
Fed. R. Evid. 201(b)(2) ........................................................16
Fed. R. Civ. P. 11 ..................................................... *passim*
Fed. R. Civ. P. 12(b)(1)......................................................1, 6
Fed. R. Civ. P. 12(b)(6)......................................................5, 6

## Introduction

Plaintiffs-Appellants Kari Lake and Mark Finchem ("Challengers") filed a frivolous lawsuit and the District Court dismissed it pursuant to FRCP 12(b)(1) for lack of standing, finding that their conjectural allegations of potential injuries were insufficient to confer subject-matter jurisdiction. The court then awarded sanctions against Andrew D. Parker ("Parker") of Parker Daniels Kibort LLC, Kurt Olsen ("Olsen") of Olsen Law, P.C. and Alan Dershowitz ("Dershowitz") (collectively "Challengers' Attorneys"), finding that they made false, misleading, and unsupported factual assertions and that the asserted claims for relief did not have an adequate factual or legal basis grounded in a reasonable pre-filing inquiry.

Challengers appealed the dismissal of their lawsuit. Challengers' Attorneys also appealed the award of sanctions against them, with Parker and Olsen filing one appeal, No. 23-16022, and Dershowitz filing this one. Dershowitz's argument, in a nutshell, is that (1) because he considered himself to be "of counsel," not "counsel," he is not subject to Rule 11's requirements, even though he signed the sanctionable filings (and was listed as "counsel" on some of them), and (2) the First Amendment prevents courts from issuing sanctions for frivolous court filings in any event. But, as explained below, that is not how Rule 11 works.

This Court affirmed the dismissal of Challengers' claims. *Lake v. Fontes*, 83 F.4th 1199, 1201 (9th Cir. 2023). This Court should now affirm the District Court's sanctions award against Dershowitz.

## Statement of Jurisdiction

Maricopa County disagrees with the Opening Brief's jurisdictional statement. First, Dershowitz asserts that the District Court has subject matter jurisdiction. (Opening Brief ("O.B.") at 1); Fed. R. App. P. 28(b)(1.) This is wrong. The District Court dismissed the Challengers' First Amended Complaint (the "FAC") because they lack Article III standing, and this Court has already affirmed that ruling. *Lake v. Fontes*, 83 F.4th 1199, 1201 (9th Cir. 2023.) A lack of Article III standing entails a lack of subject matter jurisdiction. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541–42 (1986.)

Second, Dershowitz asserts the underlying claims are brought under federal law. (O.B. at 1.) Not so. The Challengers' claims turn on the application of Arizona state law notwithstanding their efforts to cloak state law claims in federal garb. (ER-326.) And again, the District Court lacked subject matter jurisdiction for want of standing. *Lake v. Fontes*, 83 F.4th 1199 (9th Cir. 2023.)

## Statement of the Issues

Rule 11 states, in pertinent part, that when an attorney presents a signed paper to a court, that person is certifying that to the best of his or her "knowledge,

information, and belief, formed after an inquiry reasonable under the circumstances,—"

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for the extending, modifying, or reversing of existing law or for establishing new law; [and]

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11. Did the District Court err when it imposed sanctions against Challengers' Attorneys pursuant to Fed.R.Civ.P. 11(b)(2) and (b)(3)?

## Statement of the Case and Facts

Challengers filed their original Complaint on April 22, 2022 and the FAC on May 4, 2022. The FAC claimed violations of federal and state statutory and constitutional law. Challengers brought this action under 42 U.S.C. § 1983 and *Ex parte Young*, 209 U.S. 123 (1908), and its progeny to challenge government officers' alleged "ongoing violation of federal law and [to] seek[] prospective relief" under the equity jurisdiction conferred on federal district courts by the Judiciary Act of 1789. (ER-335, ¶ 48.) Specifically, they alleged that the Arizona Secretary of State (the "Secretary") violated A.R.S. § 16-452(A), (B), and (D); 16-446(B); 16-445(D); and § 16-442(B). (ER-365-366, ¶¶ 156–61.) They also alleged that Maricopa and

Pima Counties (the "Counties") violated A.R.S. §§ 11-251 and 16-452(A). (ER-366-367, ¶¶ 162–65.) Challengers further alleged that the Secretary and Counties violated the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution and Article 2, Section 4 of the Arizona Constitution; the Equal Protection Clause of the Fourteenth Amendment; and the fundamental right to vote as protected by the U.S. Constitution. (ER-369-372.)

Challengers sought declaratory and injunctive relief against the Secretary and Counties pursuant to 42 U.S.C. § 1983 and a declaratory judgment pursuant to 28 U.S.C. § 2201. (ER-372-374, ¶¶ 196–99, 207–11.) Specifically, the FAC requested that the District Court: (1) "declare it unconstitutional for any public election to be conducted using any model of electronic voting system to cast or tabulate votes"; (2) issue a "preliminary and permanent injunction prohibiting [Appellees] from requiring or permitting voters to have votes cast or tabulated using an electronic voting system"; (3) enter an order requiring Appellees to conduct the Midterm Election consistent with "summary procedures" provided by Challengers; and (4) award attorney fees, costs and "damages suffered by [Challengers], to be determined at trial." (ER-374-375.)

On May 20, 2022, by written correspondence, Appellee Maricopa County Board of Supervisors' ("Maricopa County" or "County") counsel alerted Challengers' Attorneys of Maricopa County's intention to file a Motion to Dismiss

and seek Rule 11 sanctions. (SER-5, Ex. 1, May 20, 2022 Correspondence.) Maricopa County sent this correspondence to Messrs. Parker, Olsen and Dershowitz. (SER-5, Ex. 1, May 20, 2022 Correspondence.) On May 27, 2022, Maricopa County's counsel, having received no response, sent e-mail correspondence to Challengers' Attorneys requesting a meet and confer. (SER-5, Ex. 2, May 27, 2022 Correspondence.)

On May 31, 2022, counsel for the Parties participated in a telephonic meet and confer. At that time, Challengers' Attorneys stated they had not considered whether amending the FAC could remedy the issues raised in the County's May 20, 2022, correspondence. (SER-5.) Accordingly, the Parties filed a stipulated request for extension of Defendants' responsive pleading deadline, so that Challengers' Attorneys could consider the issues raised by Maricopa County's counsel nearly two weeks prior. (Doc. 24.)[1] On June 6, 2022, the Parties participated in a second meet and confer in which Challengers' Attorneys stated that they "disagreed" with the County's position and would not amend or dismiss the FAC, except that they would no longer pursue Challengers' claims based on A.R.S. § 16-442. (SER-5.)

The following day, June 7, 2022, the County filed its Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that: (1) Challengers' claims were

---

[1] The cites to "Doc." refer to documents in the District Court's CM/ECF docketing system, used for briefs, other memoranda of law, or orders that are not included in the SER but may be helpful as purely background information consistent with Ninth Circuit Rule 30-1.

untimely; (2) Challengers failed to allege sufficient factual allegations; and (3) Challengers failed to allege a cognizable legal theory. (SER-38.) The Secretary separately filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that: (1) Challengers lack standing; (2) the Eleventh Amendment bars Challengers' claims; and (3) Challengers failed to state a cognizable constitutional claim. (SER-59.)

One day later—and nearly seven weeks after filing their original complaint—Challengers lodged a Motion for Preliminary Injunction ("MPI") that exceeded the page limits on June 8, 2022; it was filed June 15, 2022. (SER 78(Doc. 50).) On July 18, 2022, Maricopa County's counsel served the proposed motion for sanctions on Challengers' attorneys. Challengers' attorneys did not respond to receipt of the proposed motion. On July 21, 2022, the District Court held an evidentiary hearing on Challengers' request for preliminary injunction, as well as hearing argument on the County and Secretary's Motions to Dismiss. At the July 21, 2022, hearing, Parker announced that Dershowitz, "counsel in this case, is also on the listen-only [telephone] line." (Doc. 98 at 12:14-15.)

On August 10, 2022, Maricopa County filed its Motion requesting sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927 (the "Sanctions Motion") (SER-3.) As set forth in the Sanctions Motion, Maricopa

County gave ample notice of its intention to file for sanctions and opportunity for Challengers and Challengers' Attorneys to remedy the concerns raised. (SER-5.)

After the County filed its Sanctions Motion, Challengers' Attorneys filed a Response on August 24, 2022, each of Challengers' Attorneys, including Dershowitz, affixed his electronic signature to the Response under "Attorneys for Plaintiffs." (SER-134.)

On August 26, 2022, the District Court issued its Order dismissing Challengers' action in its entirety and denying Challengers' request for a preliminary injunction. (ER-58.) On December 1, 2022, the District Court granted Maricopa County's request for sanctions and ordered briefing on the amount to be awarded. (ER-28.) On December 15, 2022, Maricopa County filed its Motion for Attorney Fees. (ER-261.)

On December 29, 2022, Dershowitz filed a "Motion for Order to Show Cause by Interested Party Alan Dershowitz" and a "Response to the Motion for Attorney Fees" on his own behalf. (ER-248; ER-240.) Dershowitz requested, among other things, that the District Court order the Maricopa County Defendants "to show cause as to why an award of sanctions should be entered against Mr. Dershowitz personally or his consulting firm." (ER-248). That same day, Parker and Olsen filed a Response to the Motion for Attorney Fees on behalf of Mark Finchem and Kari Lake. (Ser-135.)

On May 24, 2023, the District Court held an oral argument on Maricopa County's Application for Attorneys' Fees and an evidentiary hearing on Dershowitz' Application for Order to Show Cause. Dershowitz testified or submitted declarations asserting the following:

- He formulated Paragraph 8 of the FAC alleging that voting machine companies "refuse to disclose their software and system components and subject them to neutral expert evaluation." (ER-174:20-23; ER-250-251.)

- His involvement in this case was limited to the alleged constitutional issue concerning voting machines. He was paid for his time—which he approximated at three or four hours—at his normal hourly rate. (ER-195:5–196:4.)

- He had no input on the decision to bring suit and has no opinion on whether voting machines are vulnerable to hacking, which was one of the central claims underlying this case. (ER-168:10-11; ER-169:17-19.)

- He was not retained to investigate the facts and asserted he did not participate in drafting the FAC other than as it related to voting machine companies' alleged refusal to disclose their software. (ER-258 at ¶ 4.)

- He authorized his signature on the filings in the case, including the Complaint, FAC and MPI, as "of counsel" for Plaintiffs. (ER-228 at ¶ 2.)

- He did not move to correct the filings that failed to include the "of counsel" designation and suggested he did not review them. (ER-180:11-181:23; ER-186:18-ER-188:19; ER-250-251; ER-258-259.)

- He applied "reluctantly" for *pro hac vice* admission in the District of Arizona at the Clerk's office request.[2] (ER-178:13-22.)

_____

[2] Dershowitz had previously submitted, by declaration, that he had applied for *pro hac vice* admission at Parker's request. (ER-258 at ¶ 4.)

- He believed the "of counsel" designation adequately advised the court of his limited role as a legal consultant and delimited his ethical obligations accordingly. (ER-168:1-16.)

- He believed this role to be distinct from that of "counsel," who must conduct the reasonable pre-filing inquiry required by Rule 11. (ER-170:11-24.) Specifically stating, "I did not believe that agreeing to be an 'of counsel' legal consultant places any obligation on me to evaluate factual allegations." (ER-259 at ¶ 4.)

- He did not rely on specific authority supporting this use of the "of counsel" designation, but noted he and others have used it on "many, many briefs" before. (ER-168:1; ER-171:20-24.) Specifically testifying:

  > "I never familiarized myself with the practice or the traditions of what of counsel means. I just operated on what I had been doing for almost ten years in the honest belief that that was the most candid way of communicating the actual role that I was intending to play and did play."

  > (ER-171:20-24.)

- He did not recall receiving the safe harbor letter sent by Maricopa County Counsel. When asked whether he participated in the subsequent meet and confer telephonic conference with Defendants' counsel, he testified that he did remember listening to one conversation "in a very passive way" but could not recall the subject matter. (ER-185:22-186:3.)[3]

- Regarding the subject matter of the phone call, he recalled "after the fact that my issue did not come up and that's why I think I left the phone call part of the way through. That's my current recollection, that I didn't stay for the whole phone call when it was clear that it would (sic) raise the issue that I had participated in drafting." (ER-190:19-23.)

---

[3] In the Opening Brief, Dershowitz states he "passively attended a safe harbor telephone conference with Defendants' counsel." (O.B. at 11, n. 2.)

Parker also was questioned during the evidentiary hearing.  He stated and submitted

a declaration asserting the following:

- Dershowitz authorized his signature on the filings in the case, including the Complaint, FAC and MPI, as "of counsel" for Plaintiffs and the filings that indicated Dershowitz was "counsel" and not "of counsel" were the result of an administrative oversight.  (ER-230 at ¶ ¶ 3 & 4.)

- He disputed Dershowitz's contention that Dershowitz had not reviewed the filings containing his signature in the matter, stating he included Dershowitz's name:

    > [o]nly after Mr. Dershowitz sent an email saying, 'Very Good." "Excellent work." "Yes, let's go," and I had assumed reviewed all of the filings that we sent to him. And, in fact, when it comes to the complaint or the first amended complaint, there are a number of edits that were made throughout and we counseled. He did an excellent job of counseling with us on the Constitutional issues that we had retained him for.

    > (ER-199:15-ER-200:3.)

- He informed Dershowitz that he would need to be admitted *pro hac vice* on May 10, 2022. Specifically, stating:

    > I asked that Mr. Dershowitz complete the *pro hac vice* information. He did question why is that necessary if I'm not going to be handling proceedings. I indicated that, well, you're on the pleadings and that's part of our retention and so you need to do that.

    > He then agreed. It took an extended period of time to get that accomplished and by May 18, . . . the Clerk issued an order removing him as counsel in the case, of counsel in the case.

Mr. Dershowitz and I then worked through getting him—getting the proper papers completed.

(ER-197:24-ER-198:10.)

- He requested Dershowitz apply for *pro hac* admission because:

  [I]t's my understanding, and I guess I could be mistaken but I don't believe I am, that whether you're counsel or of counsel, if you are on pleadings, which Mr. Dershowitz was and which in writing we had confirmed he would be, whether counsel or of counsel, you need to be admitted to the jurisdiction because once you sign on to a pleading, I don't know of a quasi-Rule 11 or 1927 or any other obligation. I understand that if you are signed on to pleadings—and this was my understanding—you need to be admitted in the jurisdiction. *Pro hac vice* is the way to do that.

  (ER-197:10-20.)

On July 14, 2023, the District Court issued its order on the Sanctions Motion holding Parker and Olsen jointly and severally liable for Maricopa County's attorneys' fees reasonably incurred in the case in the total amount of $122,000.00. (ER-27.)

As to Dershowitz, the District Court reduced his share of responsibility to ten percent of the total fee award because, "[a]ttorneys must be reminded that their duties are not qualified in the way [Mr. Dershowitz] suggests and that courts are entitled to rely on their signatures as certifications their filings are well-founded." (ER-27.) The District Court explained the reduction in fees awarded against Dershowitz was based on: (1) finding  his "involvement in this case was indeed

11

limited and he made an effort – albeit a misguided one – to communicate his limited role"; (2) finding some credibility in Dershowitz contentions that he had made an honest mistake, he apologized and avowed to not make the same mistake again; (3) finding some credibility in Dershowitz's statements that he was not contemporaneously aware that others held him out as having a substantial role in the case; and (4) ensuring the monetary sanction imposed not be "so significant as to dissuade other legal experts from providing advice or assistance in litigation out of fear of sanctions, provided they abide by the requirements of the rules in signing filings and entering appearances in those matters." (ER-25-27.)

## Summary of the Argument

Challengers—through their Attorneys' conduct—sought court intervention to implement their preferred method of ballot tabulation based purely on speculation, conjecture, and unwarranted suspicion. Challengers' original and amended complaints set forth no actual facts or evidence to support their assertion that tabulation equipment ever has or will incorrectly count ballots in Arizona; Challengers' claims were dismissed for lack of standing.

Because Challengers' Attorneys brought a frivolous lawsuit in violation of Rule 11 and needlessly multiplied the proceedings by seeking a preliminary injunction, the District Court sanctioned the Challengers' Attorneys' conduct. Dershowitz signed the Complaint, the First Amended Complaint and Motion for

Preliminary Injunction, in addition to numerous other filings. The crux of the Opening Brief is Dershowitz's assertion that simply declaring he is "of counsel" absolves him of all Rule 11 obligations. Dershowitz offers only his own personal opinion and his recollection of advice he received more than 50 years ago from another attorney to support this contention. It contradicts the plain meaning of Rule 11 and, if adopted by this Court, would render the requirements of Rule 11 meaningless.

## Standard of Review

This Court reviews the District Court's rulings on Rule 11 issues under an "abuse of discretion" standard. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1366 (9th Cir. 1990) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)). This Court defers "to the trial court's factual findings as to whether a litigant's filings are sufficiently frivolous or abusive such that Rule 11 sanctions would appropriately deter future malfeasance." *Havensight Capital L.L.C. v. Nike, Inc.*, 891 F.3d 1167, 1173 (9th Cir. 2018); *see also Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644,649 (9th Cir. 1997) (noting that "[t]he district court has broad fact-finding powers with respect to sanctions, and its findings warrant great deference") (citation and internal quotation marks omitted).

**Argument**

I.  **The District Court properly sanctioned Challengers' Attorneys pursuant to Rule 11.**

Rule 11 of the Federal Rules of Civil Procedure "is designed to deter attorneys and unrepresented parties from violating their certification that any pleading, motion or other paper presented to the court is supported by an objectively reasonable legal and factual basis." *Truesdell v. S. Cal. Permanente Med. Grp*., 209 F.R.D. 169, 173 (C.D. Cal. 2002).

Rule 11 states, in pertinent part, that when an attorney presents a *signed* paper to a court, that person is *certifying* that to the best of his or her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—"

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery ...

Fed. R. Civ. P. 11(b) emphasis added.

Rule 11 permits a court to impose a sanction for *any* violation of these certification requirements, either upon the attorney or the party responsible for the

violation. Fed. R. Civ. P. 11(c)(1). Rule 11 is governed by an objective standard of reasonableness. *See, e.g., Conn v. CSO Borjorquez*, 967 F.2d 1418, 1421 (9th Cir. 1992). The court considering a request for Rule 11 sanctions should consider whether a position taken was "frivolous," "legally unreasonable," or "without factual foundation, even though the paper was not filed in subjective bad faith." *Zaldivar v. City of L.A.*, 780 F.2d 823, 831 (9th Cir. 1986); *see also Townsend*, 929 F.2d at 1362–65.

Further, a sanction should be "what suffices to deter repetition of the conduct or comparable conduct . . . ." Fed. R. Civ. P. 11(c)(4). Indeed, "the central purpose of Rule 11 is to deter baseless filings in District Court." *Cooter*, 496 U.S. at 393. Thus, "[e]ven if the careless litigant quickly dismisses the action, the harm triggering Rule 11's concerns has already occurred[,]" and "the imposition of such sanctions on abusive litigants is useful to deter such misconduct." *Id*. at 398.

Challengers' Attorneys repeatedly violated the certification requirements of Rule 11. They asserted constitutional claims that had no basis because they failed to identify a particularized injury. And, they repeatedly made false allegations that Arizona does not use paper ballots or test its tabulation machines.

### A. Challengers' Attorneys falsely asserted that Arizona's electronic voting systems are not secure, transparent or reliable, in violation of Rule 11.

In dismissing this case, the District Court found no factual basis for the allegations in the FAC that Arizona's electronic voting systems do not provide a secure, transparent, or reliable vote count as alleged in the FAC. *See Lake v. Hobbs,* 623 F.Supp.3d 1015 (D. Ariz. 2022). The District Court made its determination based on publicly available information that is "not subject to reasonable dispute pursuant to Fed. R. Evid. 201(b)(2.)" *Lake*, 623 F. Supp. 35 at 1023, n.5. Indeed, the District Court held that there was no plausible basis for Challengers' claims that Arizona's ballot tabulation equipment is vulnerable to security failures, specifically finding:

> Defendants have taken numerous steps to ensure such security failures do not exist or occur in Arizona or Maricopa County. As the Court chronicled in painstaking detail in Section I.B., every vote cast can be tied to a paper ballot (see A.R.S. §§ 16-442.01; § 16-446(B)(7); 2019 EPM at 80), voting devices are not connected to the Internet (*see* Doc. 29, Ex. 6) any ports are blocked with tamper evidence seals (*see* Tr. 177:5-20), and access to voting equipment is limited (*see* Tr. at 179:15-20.)

*Lake*, 623 F. Supp. 35 at 1028, n.13. And this Court adopted these same findings in its opinion detailing how voting occurs in Maricopa County. *Lake,* 83 F.4th at 1201, n. 3.

Had Challengers' Attorneys engaged in the bare minimum that Rule 11's factual and legal investigation requirements demand, they would have come to the

same conclusion. Thus, they either failed to do so—or, they did the proper investigation, but improperly pursued their claims anyway. Under either scenario, they violated Rule 11.

> As the District Court stated:
>
> > any objectively reasonable investigation of this case would have led to publicly available and widely circulated information contradicting Plaintiffs' allegations and undercutting their claims. Thus, Plaintiffs either failed to conduct the reasonable factual and legal inquiry required under Rule 11, or they conducted such an inquiry and filed this lawsuit anyway. Either way, no reasonable attorney, "after conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded." *Holgate*, 425 F.3d at 677 (citation omitted).

*Lake*, 643 F.Supp.3d at 1009.

Worse, in their May 20, 2022 correspondence, Maricopa County's counsel raised these concerns with Challengers' Attorneys at the outset of this case, giving Challengers' Attorneys ample opportunity to either amend or withdraw the FAC. (SER-5, Ex. 1, May 20, 2002, Correspondence.) Among other things, Maricopa County's counsel explained that the County "disputes these unfounded assertions regarding the unreliability of machine counting and that the Amended Complaint contains a single plausible factual allegation that supports the existence of these vulnerabilities in Maricopa County." *Id*. The County also provided the link to the publicly available final report of the Special Master, arranged for by the Arizona Senate and Maricopa County, that had previously examined numerous claims about

Maricopa County's elections procedures, including many of the baseless allegations repeated by Challengers' Attorneys in the FAC, and debunked them. *Id*. Nevertheless, Challengers' Attorneys chose to pursue these frivolous claims.

Challengers Attorneys violated Rule 11 and Dershowitz makes no effort to address these violations in his Opening Brief, instead erroneously asserting that because he was "of counsel" the District Court's findings do not apply to him. He continues to take no responsibility for his role. But, because he signed the pleadings and filings in this matter, Dershowitz was required to follow Rule 11. He did not; and, the District Court appropriately sanctioned him as a result of his misconduct. This Appeal is a further waste of valuable time, taxpayer money, and judicial resources.

### B. Challengers' Attorneys falsely asserted Arizona voters do not vote on paper ballots, in violation of Rule 11.

Both the FAC and MPI repeatedly and falsely asserted that Arizona voters do not vote by hand on paper ballots. (ER-328, 336, 363-364, ¶¶ 7, 58-60, 153; SER-78.) In their Response to the Motion for Sanctions, signed by Attorney Dershowitz, Challengers Attorneys asserted that "the Amended Complaint presumed that Arizona Uses Paper Ballots." (SER-124.) A review of FAC Paragraph 153 alone belies this assertion; it states, "Plaintiffs seek for the Court to Order, an election conducted by paper ballots, as an *alternative* to the current framework." (ER-363-364,¶ 153 (emphasis added).) This sentence could not be

clearer. Further, if, in fact, Challengers' Attorneys requested relief—requiring paper ballots—that they knew already existed and was legally required in Arizona, the County is hard-pressed to find a more frivolous claim for relief or larger waste of judicial resources.[4]

Indeed, as the District Court stated in addressing Challenger's Attorneys assertions that the FAC "presumed" the use of paper ballots:

> These statements are wrong. The FAC did not presume that Arizona uses paper ballots and, in fact, alleged and implied the contrary. This is clear from the outset. Paragraph 7 of the FAC summarizes the case:
>
>> Through this Action, Plaintiffs seek an Order that Defendants *collect and count* votes through a constitutionally acceptable process, which relies on tried and true precepts that mandates [sic] integrity and transparency. *This includes votes cast by hand on verifiable paper ballots that maintains voter anonymity*; votes counted by human beings, not by machines; and votes counted with transparency, and in a fashion observable to the public.
>
> (FAC ¶ 7 (emphasis added).) Paragraph 153 is more explicit, stating that "Plaintiffs seek for the Court to Order, an election conducted by paper ballot, as an alternative to the current framework." (*Id.* ¶ 153.) An "alternative" framework is necessarily one not currently used.
>
> Plaintiffs argue that "none of these paragraphs say that Arizona does not use paper ballots." (Resp. at 7–8.) That is true only in the most facile sense. A more reasonable reading of these paragraphs—the only reasonable reading—is that Plaintiffs requested that the Court order

---

[4]   This Court acknowledged the futility of Challengers' requested relief, noting, "[d]espite the state-law requirement that voters mark paper ballots, the operative complaint requested that the district court mandate use of 'paper ballots' in the 2022 general election." *Lake*, 83 F.4th at 1202, n.4.

19

Arizona to do something that they contend it is not currently doing: to use paper ballots. Moreover, even if Plaintiffs' characterization of these paragraphs were correct, it would only serve to establish that a central component of Plaintiffs' request for injunctive relief—requiring Arizona to use paper ballots—was entirely frivolous because Defendants are already doing what Plaintiffs want them to do.

*Lake*, 643 F.Supp.3d at 998.

The District Court likewise addressed the paper ballots issue in the context of

the MPI:

An introductory paragraph of the MPI reads:

Experience has now shown the move to *computerized voting* in Arizona was a mistake—an unnecessary, unsecure change that opened election results to manipulation by unauthorized persons. This is not a partisan issue. Experts across the political spectrum have long sounded the alarm about the inherent insecurity and lack of transparency in *computerized voting systems* such as those used in Arizona. It is time to reverse this mistake. The right to vote is constitutionally guaranteed. *Computerized voting systems* leave an open door for votes to be changed, deleted, or fabricated in violation of constitutional requirements. *A return to the tried-and-true paper ballots of the past— and of the present, in countries like France, Taiwan, and Israel—is necessary.*

(MPI at 2 (emphasis added).)

In their Response, Plaintiffs argue that their use of the term "computerized voting" is accurate because "[Arizona's] is a computerized voting system, notwithstanding the role that paper ballots play in it, because the *outcomes of the election contests* are determined by what computers *do* with the paper ballots." (Resp. at 14 (emphasis in original).) Even viewing the term "computerized voting" in isolation, the Court is not persuaded. In any event, the MPI does not use the term in isolation. The preceding paragraph contrasts "electronic, computerized voting systems" with the prior practice by which "American voters recorded their votes by hand on paper ballots that were

counted by human beings." (MPI at 1.) Moreover, the MPI directly states that a "return to . . . tried-and-true paper ballots . . . is necessary" (*id.* at 2), clearly implying that Arizona does not currently use paper ballots. If it did, then this statement would be meaningless and therefore a central component of Plaintiffs' request for injunctive relief would be frivolous.

*Lake*, 643 F.Supp.3d at 1000-1001.

Moreover, Challengers' misrepresentations regarding Arizona's use of paper ballots were central to their claims. As the District Court stated:

> [b]y alleging and implying that Arizona does not currently have an auditable paper-ballot system, Plaintiffs set up a strawman, constructed in substantial part based on the *Curling* case and concerns about voting machines in other jurisdictions. But the strawman was just that. Arizona already follows the course to "eliminate or greatly mitigate" the risks of manipulation and interference that Prof. Halderman recommended in the *Curling* litigation: It uses paper ballots and reserves BMDs for the small number of voters who need or request them. (*See* Dismissal Order at 8–9 & n.7, quoting Halderman Dec. 33, Doc. 1304-3, *Curling v. Raffensperger*, No. 1:17-CV-2989-AT (N.D. Ga. Feb. 3, 2022).) And again, even those BMD-assisted voters produce a paper ballot or voter-verifiable paper audit trail. (*Id.*)

*Lake*, 643 F.Supp.3d at 1001-1002.

Challengers' claims rested on the false assertion that Arizona voters do not vote on paper ballots. Either Challengers' Attorneys did not know this fact, easily learned by doing the most *de minimis* factual investigation required by Rule 11(b)—namely, talking to their own clients[5] who have each voted on paper ballots for nearly

---

[5] Incredibly, Dershowitz states he "was not retained by Gubernatorial candidate Kari Lake or Mark Finchem, who was running for the Secretary of State position, and has never met or spoken with either of them…" (O.B. at 6.)

20 years—or they requested relief that they knew already existed. Under either scenario, Challengers' Attorneys violated Rule 11 and this Court should affirm the Sanctions Order.

### C. Challengers' Attorneys falsely asserted that Arizona's tabulation machines are not independently tested by experts, in violation of Rule 11.

Paragraph 20 of the FAC alleges that the Secretary's "certification of the Dominion Democracy Suite 5.5b voting system, as well as its component parts, was improper, *absent objective evaluation.*" (ER-330, ¶ 20 (emphasis added).) Paragraph 57 alleges that "Arizona intends to rely on electronic voting systems to record some votes and to tabulate *all* votes cast in the State of Arizona in the 2022 Midterm Election, *without disclosing the systems and subjecting them to neutral, expert analysis.*" (ER-336, ¶ 57 (first emphasis in original and second emphasis added)).

Both statements are false. As this Court found:

> Before being certified for use in elections, the tabulation machines are tested by an accredited laboratory and the Secretary of State's Certification Committee. Ariz. Rev. Stat. § 16-442; see also § 16-552 (identical testing requirement for tabulation of early ballots). The certified machines are then subjected to pre-election logic and accuracy tests by the Secretary of State and the election officials of each county. Ariz. Rev. Stat. § 16-449; Ariz. Sec'y of State, 2019 Election Procedures Manual ("2019 EPM") at 86.

*Lake,* 83 F.4th 1199 at 1202.

Challengers' Attorneys attempted to characterize these paragraphs as merely *questioning* the objectivity, neutrality, and expertise of the testing. (SER-125-128.) Not so:

> These are allegations that Arizona's electronic voting systems have not been subjected to objective evaluation or neutral, expert analysis. And they are wrong . . . . [T]he FAC does not merely allege that testing of Arizona's equipment is insufficient or unreliable; it alleges that the equipment has not been subjected to objective evaluation or neutral, expert analysis, which is not true. Plaintiffs and their experts may be entitled to opine about the sufficiency of the testing that Arizona's machines undergo, but they are not entitled to allege that no such testing takes place.

*Lake*, 643 F.Supp.3d at 1002-1003.

## II. The Opening Brief fails to set forth any basis for setting aside the sanctions ordered against Dershowitz.

The Opening Brief requests the Court "reverse the District Court's erroneous finding that [Dershowitz] violated Rule 11 and… reverse the sanctions the District Court imposed on him." (O.B. at 50.) He asserts that he "did nothing for which sanctions should be awarded," because: (1) his signature block (on some pleadings and filings) indicated "*of counsel*" and he played a limited role in the litigation, so he is not required to comply with Rule 11; and (2) the District Court impermissibly considered alleged public policy and violated the First Amendment. (*Id*.) As addressed below, these assertions are factually and legally inaccurate.

## A. Rule 11 applies to attorneys who sign pleadings, regardless of their self-proclaimed titles.

"Rule 11 imposes a duty on attorneys to certify *by their signature* that (1) they have read the pleadings or motions they file and (2) the pleading or motion is 'well-grounded in fact,' has a colorable basis in law, and is not filed for an improper purpose." *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994)(emphasis added) (citing Fed.R.Civ.P. 11 and *Cooter*, 110 S.Ct. at 2454). "The issue in determining whether to impose sanctions under Rule 11 is whether a reasonable attorney, having conducted an objectively reasonable inquiry into the facts and law, would have concluded that the offending paper was well-founded." *Schutts v. Bentley Nevada Corp.*, 966 F. Supp. 1549, 1562 (D. Nev. 1997) (citation omitted.) Where such a violation is found, Rule 11 authorizes sanctions against persons—attorneys, law firms, or parties—responsible. *See Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 120 (1989).

As addressed by the District Court:

> "Rule 11(b) expressly includes the act of signing a filing in its definition of 'presenting' a filing…no provision of Rule 11 limits the court's authority to sanction multiple attorneys if each of them voluntarily signed an inadequate filing or is otherwise responsible for the violation. Nor does the text of the rule qualify the import of a signature based on the designation used by the signer."

(ER-16.)

The Opening Brief does not cite to a single case in support of Dershowitz's contention that an attorney who signs as "of counsel" is not required to follow Rule 11, because no such case law or authority exists. To the contrary, the authority addressing the application of Rule 11 makes clear that the act of signing "lies at the heart of Rule 11... 'the purpose of Rule 11 as a whole is to bring home to the individual signer his personal, nondelegable responsibility'". *Id*. at 17 citing *Pavelic & LeFlore v. Marvel Ent. Grp*., 493 U.S. 120, 126 (1989); s*ee also, Business Guides, Inc. v. Chromatic Communications Enterprises, Inc*., 498 U.S. 533, 544-48 (1991) ("[t]he essence of Rule 11 is that signing is no longer a meaningless act; it denotes merit. A signature sends a message to a district court that this document is to be taken seriously"); *Christian v. Mattel, Inc*., 286 F. 3d 1118, 1127 (9th Cir. 2022) (an attorney's signature is "tantamount to a warranty that the complaint is well grounded in fact and 'existing law' (or proposes a good faith extension of the existing law) and that it is not filed for an improper purpose.")

Dershowitz's assertion that he "reasonably assumed that lead counsel would be investigating the underlying facts, without having to conduct his own independent investigation into the facts he was relying on," is wholly unsupported by the plain text of the Rule and the relevant case law. (O.B. at 7.) In particular, case law that the District Court relied upon, yet the Opening Brief makes no mention of nor makes any attempt to distinguish. *See e.g., Jenkins v. Methodist Hospitals of*

*Dallas, Inc*., 478 F.3d 255, 264-66 (5th Cir. 2007) (affirming sanctions against an attorney who signed a brief drafted primarily by his associate and cite-checked by two other partners, and which he merely proofread and signed); *Unioil, Inc. v. E.F. Hutton & Co., Inc*., 809 F.2d 548, 558 (9th Cir. 1986) (holding that Rule 11 does not preclude the signer from any reliance on information from other persons, but "[i]n relying on another lawyer…counsel must acquire knowledge of facts sufficient to enable him to certify that the paper is well-grounded in fact.")

Because he elected to sign his name to the pleadings and filings at issue, Dershowitz was required to follow Rule 11. His co-counsel acknowledged this fact:

> "if you are on pleadings, which Mr. Dershowitz was and which in writing we had confirmed he would be, whether counsel or of counsel, you need to be admitted to the jurisdiction because once you sign on to a pleading, I don't know of a quasi-Rule 11 or 1927 or any other obligation."

(ER-197:10–20.)

Further, the Opening Brief's assertions that the Sixth Circuit in *King v. Whitmer*, 71 F.4th 511 (6th Cir. 2023), found the "of counsel" distinction persuasive in overturning sanction awards and that courts must engage in a "factor analysis to determine the appropriateness of sanctions as to individual involvement on a case-by case analysis" are entirely inaccurate. (O.B. at 31.)

In *King* five attorneys, *who had not signed the complaint*, but were listed on the pleading, were sanctioned by the district court. *Id*. On appeal, three of the

attorneys listed as "of counsel" and who had *not signed* the complaint asserted that their involvement in the case was too minimal to warrant sanctions. *Id*. at 531. In partially overruling the decision, the Sixth Circuit agreed with two of those attorneys, but not the third, as explained below. This finding was not, however, based on their designation as "of counsel", as implied in the Opening Brief.

As to the third attorney, Lin Wood, who was also listed as "of counsel", the Sixth Circuit largely affirmed the sanction award even though he did not sign the complaint. *Id*. at 531-532. Mr. Wood had claimed "that someone placed his name on the complaint without his consent and that he knew nothing about this case until he 'saw something in the newspaper about being sanctioned.'" *Id*. The district court found him not credible and the Sixth Circuit found no error in this conclusion. *Id*. In addition, the Sixth Circuit rejected Mr. Wood's argument that the district court was "required to undertake 'an individual analysis' of his conduct before it could sanction him." *Id*. (*citing NPF Franchising, LLC v. SY Dawgs, LLC*, 37 F.4th 369, 380–81 (6th Cir. 2022)). The court therefore affirmed sanctions against him, even with his limited role, the "of counsel" designation and even though he had not signed the actual pleading. In evaluating the monetary sanctions imposed, the Sixth Circuit largely affirmed based on the frivolous allegations in the complaint, but reduced the amount based on its conclusion that several of the plaintiffs' claims, unlike the instant action, were non-frivolous. *Id*. at 532-533.

Moreover, Dershowitz's belief that signing as "of counsel" signified a limited role in the case or that he did not intend to endorse the false narrative regarding the reliability of elections are not relevant considerations. (O.B. at 16.) Compliance with Rule 11 is generally measured by an objective standard. *See Smith v. Ricks,* 31 F.3d 1478, 1488 (9th Cir. 1994).

Further, as pointed out by the District Court, "to the extent he asserts he never reasonably expected to be subject to the sanctions related to those claims, the Maricopa County Defendants followed the notice requirements under Rule 11(c)." (ER-23.) But, inexplicably, Dershowitz decided to only "passively" listen to the safe harbor phone call and summarily concluded it did not apply to him, so he hung up. (ER-190:19-23.) He did no further investigation or analysis once these issues were raised, which is the entire purpose of the safe harbor provisions. Instead he waited until after the Motion for Sanctions had been fully briefed, including Challengers' Attorneys filing a Response to the Motion that he signed, and after the District Court issued the Sanctions Order to do anything at all to address the issues that had been raised by the County months before. Then, bizarrely, he requested the District Court order Maricopa County to articulate why he should not be subject to sanctions. Seemingly requiring Maricopa County to read his mind about his limited role, his personal interpretation of the "of counsel" designation, and to know the exact sections of the pleadings he did or did not assist in drafting. Dershowitz's

actions were wholly unreasonable, added unnecessary fees to the defense of this matter and had absolutely no reasonable basis under any existing authority.

### B. Dershowitz could have consulted on this case without signing the pleadings, but he chose not to.

The Opening Brief asserts that the effect of the sanction award in this case would not "deter the baseless filings already deterred; it would only serve to deter professors and retired judges and lawyers with expertise in a specific area from appearing in cases and all and being of assistance therein for fear of being sanctioned for factual allegations beyond the admitted scope of their limited services." (O.B. at 25.) Again, Dershowitz appears to concede that the filings in this case were, in fact "baseless", he just should not be responsible for them.

Moreover, the District Court summarily addressed this strawman argument finding:

> The Court recognizes the contributions to be made by attorneys with specific expertise who lack the time or capacity to conduct the reasonable prefiling investigation Rule 11 requires. But an attorney in this situation may make his or her limited contributions without signing the pleadings. When an attorney makes the election to sign, his or her obligations under Rule 11 are not ambiguous and the Court must enforce them. *See Bus. Guides, Inc.*, 498 U.S. at 549 ("Once we conclude that Rule 11 speaks to the matter at issue, our inquiry is complete."). Moreover, these policy arguments only go so far. A contrary ruling here could diminish the significance of attorney signatures and cause courts to question whether they can be relied upon with confidence. It would offer safe harbor to attorneys who designate themselves "of counsel" no matter the inadequacy of the filings they sign. Taken to its conclusion, it could undermine the purposes of Rule 11 "to deter baseless filings," *Cooter & Gell v. Hartmarx Corp.*, 496

U.S. 384, 393 (1990), and "to bring home to the individual signer his personal, nondelegable responsibility." *Pavelic & LeFlore*, 493 U.S. at 460.

(ER-24.)

### C. Allegations falsely alleging Arizona's Tabulation Equipment is not subject to neutral testing was one of the primary bases for the award of sanctions.

The Opening Brief asserts that Dershowitz should not be subject to sanctions because the limited issue upon which he advised was not one of the bases for the sanction award. First, as addressed above, Rule 11 contains no such limitation on attorneys who sign pleadings. But even assuming, *arguendo*, such a limitation existed, the allegation for which Dershowitz maintains responsibility is directly related to one of the primary bases for the sanctions award. Dershowitz contends his "primary drafting contribution was Paragraph 8 of the First Amended Complaint", which states in pertinent part,

It is important to note that this Complaint is not an attempt to undo the past. Most specifically, it is not about undoing the 2020 presidential election. It is only about the future—about upcoming elections that will employ voting machines designed and run by private companies, performing a crucial governmental function, *that refuse to disclose their software and system components and subject them to neutral expert evaluation*. It raises the profound constitutional issue: can government avoid its obligation of democratic transparency and accountability by delegating a critical governmental function to private companies?

*(O.B. at. P. 10 )(emphasis added.)*

This paragraph asserts a factual contention that the voting machines that would be used in future elections in Arizona, are "designed and run by private companies…that refuse to disclose their software and system components and subject them to neutral expert evaluation." *Id*. The Opening Brief asserts that Dershowitz had no obligation to determine whether this fact was accurate, which it is not. He claims his "work was not to determine whether such work had been done. It was his stated task to explore that issue form his expertise, not to determine exactly what the company had done or would do." (O.B. at 11.) This is preposterous. Rule 11(b)(3) provides that when an attorney signs a pleading, he is certifying, "the factual contentions have evidentiary support". Regardless of Dershowitz's "stated task", he is governed by the Rules.

Moreover, the District Court awarded sanctions, in part, based on this exact false contention - that Arizona's voting systems are not subject to expert, neutral evaluation. "Plaintiffs and their experts may be entitled to opine about the sufficiency of the testing that Arizona's machines undergo, but they are not entitled to allege that no such testing takes place." *Lake*, 643 F.Supp.3d at 1002-1003.

The Opening Brief's "but for" causation contentions are similarly specious. (O.B. at 45-49.) The Opening Brief asserts that an attorney, who signs a pleading may, after the fact, designate only those subject areas for which he believes he was responsible and then assert that because opposing counsel's billing entries did not

specifically call out the work done related to those subject areas, sanctions for misconduct cannot be awarded. Dershowitz's reliance on *Goodyear Tire and Rubber Co. v. Haeger*, 581 U.S. 101 (2017) for this proposition is, to say the least, unfounded. In *Goodyear* the Supreme Court held a "fee award may go no further than to redress the wronged party 'for losses sustained'; it may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Id*. at 108 citing, *Mine Workers v. Bagwell,* 512 U.S. 821, 826–830 (1994). As the Court explained, in cases where specific conduct is being sanctioned, for instance for a discovery violation, or when certain claims are determined to be frivolous, while others are not, the court may only award fees related to the misconduct. *Id*. at 109.

Here, the <u>entire case</u> was dismissed for lack of Article III standing. Maricopa County moved for dismissal immediately. All fees incurred were the result of defending the FAC that was thrown out, in its entirety, because there was no plausible basis for the claims asserted. *See e.g. King v. Whitmer*, 71 F. 4th at 532 ("[w]hen a filing is entirely baseless, sanctionable conduct causes every expense reasonably incurred in responding," (citing *Cooter*, 496 U.S. at 406-07)). In addition, the District Court did not award all the fees requested by the County and reduced the sanction award against Dershowitz based on his contention that he should not be held fully responsible, even though he signed all the pleadings. As the Supreme Court articulated, such judgments, in light of the trial court's "superior

understanding of the litigation," are entitled to substantial deference on appeal. *Goodyear,* 581 U.S. at 110, citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

### D. Deterring baseless litigation is required, not forbidden, by Rule 11.

"The central purpose of Rule 11 is to deter baseless filings in district court." *Cooter*, 496 U.S. at 393. Rule 11 expressly states, the "sanction imposed . . . must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Indeed, as the court rightly stated in *King v. Whitmer*, in awarding sanctions for a factually deficient election-related challenge, "[w]hile there are many arenas—including print, television, and social media—where protestations, conjecture, and speculation may be advanced, such expressions are neither permitted nor welcomed in a court of law." 556 F. Supp. 3d 680, 689 (E.D. Mich. 2021).

The Opening Brief disingenuously attempts to frame the District Court's ruling as improperly motivated to deter *all* litigation regarding Arizona's election framework. Dershowitz baselessly asserts that, "the District Court imposed sanctions in this case to 'send a message' to those litigants who would question the legitimacy of elections" (O.B. at 42), and the "District Court's Court imposed sanctions to send a political message and express dislike of a certain idea." (O.B. at 43.)

These absurd and baseless assertions present a prime example of the conduct that got the Challengers' attorneys sanctioned in the first place. The District Court issued a 30-page order meticulously addressing, among other things, every speculative, conclusory, misleading, and unfounded allegation in the FAC and MPI. As discussed in detail above, in reaching its conclusion that Challengers' Attorneys filed a frivolous lawsuit that violated their obligations under Rule 11 and § 1927, the District Court specifically addressed the FAC's and MPI's numerous speculative and conjectural allegations and their erroneous allegations regarding paper ballots and testing of Arizona election equipment. *See Lake v. Hobbs,* 643 F.Supp.3d 989 (D. Ariz. 2022).

The entire foundation of Challengers' case was a claimed immediate need for court intervention to implement their preferred method of ballot tabulation because they feared unknown potential manipulation of voting systems in Arizona. But, "Plaintiffs never put forth sufficient allegations about Arizona's election systems—let alone sufficient evidence to support any such allegations—to demonstrate a likelihood that Arizonans' votes would be incorrectly counted in the 2022 midterm election due to manipulation." *Lake*, 643 F.Supp.3d at 1006. Instead, Challengers' claims were based solely on speculation and conjecture, "baselessly kicked up a cloud of dust" months before the 2022 General Election, and furthered "false narratives that baselessly undermine[d] public trust at a time of increasing

disinformation about, and distrust in, the democratic process." *Lake*, 643 F.Supp.3d at 1012-1013 (D. Ariz. 2022).

Worse yet, in the Opening Brief, Dershowitz makes these unsupported contentions about the District Court's motivations when this Court has already affirmed this very issue: "[i]n the end, none of Plaintiff's allegations supports a plausible inference that their individual votes in future elections will adversely be affected by the use of electronic tabulation, particularly given the robust safeguards in Arizona law, the use of paper ballots, and the post-tabulation retention of those ballots." *Lake*, 83 F.4th at 1204.

The Districts Court's award of sanctions to deter such future baseless and frivolous litigation is not only appropriate, but also required.

### E. The First Amendment does not include the right to maintain groundless litigation.

The Opening Brief engages in a lengthy explanation of the First Amendment that has absolutely nothing to do with whether Rule 11 applies to Dershowitz's conduct. None of the cases cited address or are remotely related to an award of sanctions for violations of Rule 11 and noticeably absent are the cases that address erroneous assertions of First Amendment protection for filing frivolous and baseless lawsuits. The case law is clear, "the right to petition protected by the First Amendment does not include the right to maintain groundless litigation." *Rager v. C.I.R.*, 775 F.2d 1081, 1083 (9th Cir. 1985); *see also Larsen v. Comm'r*, 765 F.2d 939, 941 (9th Cir.

1985) ("the right to petition protected by the First Amendment does not include the right to maintain groundless proceedings.") "Just as false statements are not immunized by the First Amendment right to freedom of speech, *see Herbert v. Lando,* 441 U.S. 153, 171, (1979); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 340 (1974), baseless litigation is not immunized by the First Amendment right to petition." *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983). Indeed, "[t]the power of the federal courts to sanction attorney misconduct, be it frivolous litigation or contemptuous behavior, is beyond doubt." *In re Itel Securities Litigation*, 791 F.2d 672, 676 (9th Cir. 1986).

The Opening Brief's reliance on *King v. Whitmer*, 71 F.4th 511, 520 (6th Cir. 2023) is again misguided. There, the Sixth Circuit disagreed with the district court's imposition of sanctions pursuant to Rule 11(b)(1)[6], which is not at issue here. And, as discussed above, the *King* court upheld sanctions issued pursuant to Rule 11(b)(2) and (3), as is the case in this matter. In upholding the sanction award, the Sixth Circuit affirmed, among other things, that the plaintiffs' allegations about the vulnerabilities of Michigan's voting machines were "baseless" and that their "legal

---

[6] Dershowitz asserts he "acted in good faith with no intent to overthrow or overhaul our system of government, which appears to be the main reason the court felt sanctions be imposed on him." (O.B. at 33.) Dershowitz's "good faith" belief is not relevant as "Rule 11 is governed by an objective standard of reasonableness." *Conn*, 967 F.2d at 1421. Moreover, this interpretation of the District Court's reasoning, as addressed above, is baseless. This is especially clear given the District Court declined to issue sanctions pursuant to Rule 11(b)(1), for "improper purpose." *Lake*, 643 F.Supp.3d at 1010.

claims - an equal-protection claim, a due-process claim, and a claim under the Michigan Constitution - relied exclusively on frivolous allegations of widespread voter fraud." *Id*. at 522-523.

Finally, to the extent the Opening Brief is claiming an attorney can claim First Amendment protection on his own behalf for his filing motions and making statements in the courtroom, the Supreme Court has not squarely addressed this question, but it has noted, in dicta, that "[i]t is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed." *Gertz v. State Bar of Nevada, 501 U.S. 1030, 1071 (1991).* Moreover, Dershowitz claims in his Opening Brief that the District Judge corruptly only ruled in the manner he did for a singular purpose: to "send a message" to litigants questioning the accuracy and legitimacy of the election. (O.B. at 14-16.) While Dershowitz's premise is untrue, he admits he is not a member of the class of alleged litigants he erroneously asserts the District Court is attempting to silence. Dershowitz "strongly believe[s] that the 2020 election was fair and resulted in the correct outcome" and "has never challenged the outcome of any 2020 election or elsewhere." (O.B. at 16.) Dershowitz testified that he "rooted" for Challenger Lake's opponent and was happy she won." (*Id*.)

But, more to the point, here the District Court appropriately imposed sanctions, "to send a message to those who might file similarly *baseless* suits in the future"

(ER-58) not as, falsely asserted, "to deter cases based on their election-based content". (O.B. at 43.) As such, the District Court proscribed precisely the conduct Rule 11 is designed to address. *See Cooter*, 110 S. Ct 2454 ("the central purpose of Rule 11 is to deter baseless filings in District Court").

## Conclusion

For the foregoing reasons, this Court should affirm.

Respectfully submitted,

THE BURGESS LAW GROUP

By:   /s/*Emily Craiger*

Emily Craiger
3131 East Camelback Road, Suite 224
Phoenix, Arizona  85016
Telephone: (602) 806-2100
emily@theburgesslawgroup.com

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

By:   /s/*Thomas P. Liddy*

Deputy County Attorneys
MARICOPA COUNTY ATTORNEY'S OFFICE
CIVIL SERVICES DIVISION
225 W. Madison Street
Phoenix, AZ 85003
brancoj@mcao.maricopa.gov
ca-civilmailbox@mcao.maricopa.gov

*Attorneys for Maricopa County
Defendants-Appellees*

January 29, 2024

**Statement of Related Cases**

Pursuant to Ninth Circuit Rule 28-2.6, I certify that:

[ ]     I am unaware of any related cases currently pending in this court.

[ ]     I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[X]     I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:


*Kari Lake, et. al. and Andrew Parker, et. al v. Fontes, et. al*., No. 23-16022 – Separate appeal of sanctions award filed by Attorney Andrew Parker, *et. al*.

Respectfully submitted,


THE BURGESS LAW GROUP

By:     /s/*Emily Craiger*

Emily Craiger
3131 East Camelback Road, Suite 224
Phoenix, Arizona  85016
Telephone: (602) 806-2100
emily@theburgesslawgroup.com

January 29, 2024

## Certificate of Compliance

This brief contains 10,787 words excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6). I certify that this brief:

[X]  complies with the word limit of Cir. R. 32-1.

[ ]  is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

[ ]  is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ]  is for a death penalty case and complies with the word limit of Cir. R. 32-4.

[ ]  complies with the longer length limit permitted by Cir. R. 32-2(b) because

    [ ] it is a joint brief submitted by separately represented parties;

    [ ] a party or parties are filing a single brief in response to multiple briefs; or

    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ]  complies with the length limit designated by court order dated _____.

[ ]  is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Respectfully submitted,

THE BURGESS LAW GROUP

By:  */s/Emily Craiger*

Emily Craiger
3131 East Camelback Road, Suite 224
Phoenix, Arizona  85016
Telephone: (602) 806-2100
emily@theburgesslawgroup.com

January 29, 2024

## Certificate of Service

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

[X]    I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**

[ ]    I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants (list each name and mailing/email address):

Respectfully submitted,

THE BURGESS LAW GROUP

By:    /s/ *Emily Craiger*

Emily Craiger
3131 East Camelback Road, Suite 224
Phoenix, Arizona  85016
Telephone: (602) 806-2100
emily@theburgesslawgroup.com

January 29, 2024.