No. 23-16023

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

Kari Lake and Mark Finchem,

*Plaintiffs*,

vs.

Kathleen Hobbs, in her official capacity
as Arizona Secretary of State, et al.

*Defendants*

Alan Dershowitz

*Non-Party/Appellant*

Appeal from the United States District Court
for the District of Arizona, Phoenix

D.C. No. 2:22-cv-00677-JJT

## NON-PARTY/APPELLANT'S OPENING BRIEF

Dennis I. Wilenchik, Esq. (ABN 005350)
John D. Wilenchik, Esq. (ABN 029353)
Garo Moughalian, Esq. (ABN 038315)
**Wilenchik & Bartness, P.C.**
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com
Telephone: (602) 606-2810
Attorneys for Non-Party/Appellant

February 27, 2024

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ iv

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF THE CASE .............................................................2

I.      Dershowitz was retained solely to provide constitutional law advice..........5

II.     Dershowitz solely authorized an "of counsel" signature..............................7

III.    Dershowitz properly appeared pro hac vice. ..............................................10

IV.     Throughout the case, Dershowitz played a limited role regarding only the
        constitutional issues of concern. ..............................................................10

V.      Dershowitz challenges both the court's original sanctions order and the
        separate order finding him liable in part. ..................................................13

VI.     The District Court targeted Plaintiffs' case for sanctions because it believed
        the case expressed the viewpoint that the elections were conducted
        improperly. ...............................................................................................14

VII.    Dershowitz did not even have the viewpoint the court issued sanctions
        over. ..........................................................................................................15

VIII.   The record does not establish a necessary causal connection between the
        work Dershowitz performed and the fees for which he was sanctioned. ....16

SUMMARY OF THE ARGUMENT ....................................................19

ARGUMENT ...................................................................................21

IX.     Dershowitz did not commit any sanctionable conduct under Rule 11
        standards. ..................................................................................................21

   A.   Dershowitz is not liable under Rule 11. ..................................................21

        1.   Rule 11 does not impose strict or vicarious liability on "of counsel" for
             the acts of others outside of counsel's scope of representation. ...........21

        2.   Sound policy advises against holding "of counsel" strictly or
             vicariously liable for the acts of others outside of counsel's scope of
             representation. ......................................................................................26

        3.   Dershowitz was not involved in any of the conduct the District Court
             found sanctionable. ..............................................................................28

B.    Even if sanctions were otherwise appropriate under Rule 11, no sanctions are appropriate as to Dershowitz given his complete lack of involvement in any sanctionable conduct. ...................................................30

X.   The District Court's sanctions order violates the First Amendment. ..........37

  A.    Government cannot target a subset of unprotected speech for its content or due to its disagreement with the viewpoint expressed. .......................37

  B.    The District Court's sanctions order violates the First Amendment b because it discriminates on the basis of viewpoint. .................................42

XI.  The District Court's sanctions orders must be reversed because they fail to apply "but for" causation and the mandatory requirements for imposing Rule 11 sanctions articulated by the Supreme Court in *Goodyear Tire & Rubber Co. v. Haege*r, 581 U.S. 101, 109–10 (2017). .................................45

CONCLUSION ..................................................................................................49

STATEMENT OF RELATED CASES .................................................................51

CERTIFICATE OF COMPLIANCE ...................................................................52

CERTIFICATE OF SERVICE..............................................................................53

# TABLE OF AUTHORITIES

## Cases

*Bush v. Gore*, 531 U.S. 98 (2000)...............................................................45

*California Scents v. Surco Products, Prod., Inc.*, 406 F.3d 1102 (9th Cir. 2005) ..21

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC,* 596 U.S. 61 (2022) .........41

*City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986) ....................... 41, 44

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)............................... passim

*Cox v. Louisiana*, 379 U.S. 536 (1965) ............................................... 41, 43

*Foti v. City of Menlo Park*, 146 F.3d 629 (9th Cir. 1998)...............................40

*Fox v. Vice*, 563 U.S. 826 (2011)...................................................................46

*Frederick Douglass Foundation, Inc. v. District of Columbia*, No. 21-7108, 2023
   WL 5209556 (D.C. Cir. Aug. 15, 2023) .................................... 39, 41, 43

*Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531 (9th Cir. 1986) .36

*Gonzales v. Parks*, 830 F.2d 1033 (9th Cir. 1987) .................................. 30, 32

*Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017) ........... 45, 46, 47, 48

*Holgate v. Baldwin*, 425 F.3d 671 (9th Cir. 2005) ........................................25

*Hoye v. City of Oakland*, 653 F.3d 835 (9th Cir. 2011) ..................... 39, 40, 43, 44

*Iancu v. Brunetti*, 139 S. Ct. 2294 (2019)........................................... 41, 43

*Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009) ......................................37

*In re Kunstler*, 914 F.2d 505 (4th Cir. 1990).............................................25

*Jenkins v. Methodist Hospitals of Dallas, Inc.*, 478 F.3d 255 (5th Cir. 2007) ........25

*King v. Whitmer*, 71 F.4th 511 (6th Cir. 2023)...................................... passim

*Lee v. Pow Entertainment, Inc.*, No. 20-55928, 2021 WL 5768462 (9th Cir. Dec. 6,
   2021) .................................................................. 30, 31, 32

*Lu v. United States*, 921 F.3d 850 (9th Cir. 2019)........................................47

*Mahoney v. Babbitt*, 105 F.3d 1452 (D.C. Cir. 1997) ................................. 41, 44

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719
   (2018)................................................................. 39, 40, 44

*Matter of Welfare of R.A.V.*, 464 N.W.2d 507 (Minn. 1991) .................................38

*McGuire v. Reilly*, 386 F.3d 45 (1st Cir. 2004) ...........................................39

*Menotti v. City of Seattle*, 409 F.3d 1113 (9th Cir. 2005) ........................ 39, 40, 41

*Murphy v. Texas*, 601 U.S. __, No. 23-5740 (Oct. 10, 2023)...............................13

*Nat'l Inst. of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) ........42

*Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336 (9th Cir. 1988) ........
   .................................................................. 30, 32

*Paroline v. United States*, 572 U.S. 434 (2014) ...........................................46

*Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120 (1989) .................. 24, 25, 28

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) ................................. 37, 38, 43, 44

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) ................................... 41, 43

*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980) ............................47

*Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819 (1995)..........42

*Talamini v. Allstate Ins. Co.*, 470 U.S. 1067 (1985)............................30

*Thomas v. Chicago Park Dist.*, 534 U.S. 316 (2002) ............................40

*United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009) (en banc)............48

*United States v. Kahn*, 472 F.2d 272 (2d Cir. 1973) ..............................7

*United States v. Major*, 676 F.3d 803 (9th Cir. 2012) ............................37

*United States v. Pietro Tussa*, 816 F.2d 58 (2d Cir. 1987)..........................8

*United States v. Sellers*, 906 F.3d 848 (9th Cir. 2018) ............................48

*Val-Land Farms, Inc. v. Third National Bank in Knoxville*, 937 F.2d 1110 (6th Cir. 1991) ............................................................................25

*Wayte v. United States*, 470 U.S. 598 (1985) ...................................39

*West Virginia Bd. of Ed. v. Barnette*, 319 U.S. 624 (1943) ......................40

*Wiemer v. Rubino*, Cause No. 1:16CV99-LG-RHW, 2019 WL 2461814 at *1 (S.D. Miss. June 12, 2019) ..........................................................47

## Statutes

28 U.S.C. § 1291 ................................................................1

28 U.S.C. § 1331 ................................................................1

28 U.S.C. § 1343 ................................................................1

28 U.S.C. § 1367 ................................................................1

28 U.S.C. § 1927 ..............................................................47

28 U.S.C. § 2201 ................................................................1

28 U.S.C. § 2202 ................................................................1

St. Paul Bias–Motivated Crime Ordinance, St. Paul, Minn., Legis. Code § 292.02 (1990) ........................................................................38

## Rules

Fed. R. Civ. P. 11 Advisory Comm.'s Note (1983) ................................23

Fed. R. Civ. P. 11 Advisory Comm.'s Note (1993)...................... 24, 31, 33, 34

Fed. R. Civ. P. 11 .......................................................... *passim*

Fed. R. Civ. P. 11(a)...........................................................22

Fed. R. Civ. P. 11(b) .............................................. 22, 35, 36

Fed. R. Civ. P. 11(c)(1)........................................... 21, 24

Fed. R. Civ. P. 11(c)(4)........................................................47

Fed. R. Civ. P. 37(b)(2)(c)....................................................47

v

# JURISDICTIONAL STATEMENT

### A.    District Court's Jurisdiction

The District Court had subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1343, 1367, 2201, and 2202.

### B.    Court of Appeals Jurisdiction

This Court has appellate jurisdiction under 28 U.S.C. § 1291.

### C.    Dates

The District Court issued the order granting Defendants' Motion to Dismiss and denying Plaintiffs' Motion for a Preliminary Injunction on August 26, 2022. *See* 1-ER-58. It issued the order imposing sanctions on December 1, 2022. *See* 1-ER-28. It issued its order on attorneys' fees and Dershowitz's application for an order to show cause on July 14, 2023. *See* 1-ER-2. Dershowitz appeals the latter two orders and submitted his notice of appeal on July 21, 2023. *See* 3-ER-378. Accordingly, this appeal is timely.

### D.    Finality

This appeal follows the entry of final judgment.

1

## ISSUES PRESENTED FOR REVIEW

1.    Whether the District Court erred in sanctioning Dershowitz under Rule 11 of the Federal Rules of Civil Procedure, where Dershowitz merely played a limited role as an advisor to a law firm on specific constitutional issues and expressly signed as "of counsel" to signify that limited role, and the court did not find Dershowitz's actual contributions sanctionable.

2.    Whether such sanction, imposed to discourage litigants from questioning the legitimacy of the elections, violates the First Amendment and serves no legitimate purpose for which Rule 11 was designed.

3.    Whether the District Court erred in failing to establish but-for causation from any conduct of Dershowitz to the attorneys' fees he was sanctioned.

## STATEMENT OF THE CASE

This appeal raises issues of great importance to lawyers serving as consultants and "of counsel" to law firms on limited issues. The proper role and responsibility of lawyers who are retained only to appear in a case as "of counsel," "consultant," "special counsel on constitutional issues" or other specialized areas, appears to be a matter of first impression. Are they fully responsible for the end-product filed by lead counsel, for purposes of sanctions, where their contribution is limited to the issue on which they are retained, and are they required to fully investigate all underlying facts represented by the lead counsel to avoid being jointly and severally liable for the representation of those facts?

We respectfully submit that where the facts are clear on the limited role and involvement of such a consulting lawyer, as is the case here, sanctions against the

consulting lawyer are not authorized by Rule 11, serve no legitimate purpose, and would stifle the effective and helpful use of such counsel consulting on limited and specialized areas of law.

As lawyers, judges and professors live and practice longer, many retired or semi-retired lawyers agree to provide counsel on a limited basis based on their years of expertise. They do not have the resources or ability to fully investigate the underlying facts presented to them for the purpose of analyzing complex issues of law and are not retained to do so. They are retained to provide their specialized expertise on specific legal issues. Professor Dershowitz, a nationally known authority on Criminal Law, Constitutional Law, and Ethics, subjects he taught at Harvard Law School for 50 years prior to his retirement, has been doing precisely this since at least 1973, when he first signed a brief in which he had drafted one short, limited section as "of counsel." He did this with the advice of the leading ethics expert of the time, Dean Monroe Freedman, and with the approval of a leading litigator, Robert Fiske. He has been doing so ever since the same way. He specifically listed himself here as "of counsel" to denote his limited role. Many distinguished lawyers, including Professor Freedman himself, government lawyers, professors, retired judges, and large law firm partners, sign legal documents as "of counsel" as well, without conducting independent investigations of the underlying facts they are asked to assume for purposes of rendering their expertise. Dershowitz did so in good faith, based on expert advice. Even if the court below concluded he was mistaken, the record is clear it was an honest mistake, not justifying a career-damaging sanction.

3

This Court has explained that Rule 11 is an "extraordinary remedy," that cases of first impression are inappropriate for sanctions, and that sanctions are "best reserved for the most egregious cases." *See* Part IX.B, *infra*. This is not such a case. There is no clear Rule, or even applicable precedent, that expressly governs the role of an "of counsel" consultant, or their liability in connection with that limited function. Notwithstanding this, the District Court in this case—and as far as is currently known, for the first time in Rule 11 history—sanctioned such an "of counsel" lawyer for factual parts of filings entirely outside his expert contribution. Had there been an explicit Rule governing or constraining the role of such an "of counsel" consultant, Dershowitz would have surely complied with it, as he has testified to, or been unable to render any assistance in his area of expertise and declined any involvement.

The District Court agreed that Dershowitz honestly believed he was following the rules in doing so and did limit his involvement. The District Court did not find that Dershowitz was aware of what it found were factual misrepresentations, or had any involvement in the decision to include them in the complaint. Dershowitz merely offered appropriate comments where applicable to his area of expertise, assuming the underlying facts to be as alleged. The District Court, in fact, found that Dershowitz was not aware of any misrepresentations or involved in investigating their accuracy as included in the pleadings. That is why it reduced his sanction from 100% to 10% of the total, due to his limited involvement. But, *any* sanction, regardless of how small, limits Dershowitz's ability to appear *pro hac vice* in cases around the country, including the many pro bono cases in which he is involved, and

4

was inappropriate at all as a matter of law. There was no sanctionable conduct found here, and no sanction was warranted.

The District Court further explained it imposed sanctions in this case to silence the viewpoint that there was some error in the elections process. Such viewpoint-discriminatory enforcement of Rule 11 violates the First Amendment and should be reversed.

## I.    Dershowitz was retained solely to provide constitutional law advice.

"Dershowitz is a nationally-known attorney." *See* 1-ER-5. He graduated first in his class at Yale Law School and served as Editor in Chief of the Yale Law Journal. *See* 2-ER-241. He clerked for Judge David Bazelon, Chief Judge of the DC Circuit Court, and then for Supreme Court Justice Arthur Goldberg. *Id.* He taught law as a Professor at Harvard Law School from 1964 until his retirement in 2013, when he became Professor Emeritus. *Id.* Dershowitz has written numerous books and articles and is regularly asked to speak on his constitutional expertise in the media and elsewhere. Dershowitz is currently retired from the active practice of law, in his mid-eighties, and limits his role largely to consultation with law firms and other lawyers, who primarily manage the underlying case, on specific issues based on his expertise, including constitutional issues. *See* 2-ER-257. He lacks the resources and energy to play a more involved role or to investigate all facts presented to him to render his expertise on. *See* 2-ER-259.

In his more than 60 years as a distinguished lawyer, Dershowitz has never been sanctioned, disciplined, or subjected to a Bar complaint, until now. *Id.* He had taught

legal ethics for more than 25 years at Harvard and would never knowingly violate any ethics rule. *Id.* He did not do so here.

In 2022, before being retained here, Dershowitz was retained by Plaintiffs' counsel, Andrew Parker, who was representing business executive Michael Lindell, to serve as a constitutional expert and consultant in a defamation case brought against Mr. Lindell by a company that manufactured voting machines. *See* 1-ER-5; 2-ER-169. Dershowitz's task there was, as here, to review, and argue if necessary, that when a private company is delegated an important governmental function like counting votes, it is subjected to heightened scrutiny and transparency requirements given the important governmental function it serves, and it should thereby allow full adversarial inspection of its devices. *See* 2-ER-169 to 2-ER-170. This did not require Dershowitz there, any more than here, to conduct a full examination or investigation of the voting machines, or to determine whether paper ballots are available or used, or any other underlying fact being accepted as true for purposes of his contribution or in order to render his advice and opinion on the limited subject for which he was retained. *Id*. His role was to make suggestions only regarding the Constitution based on his expertise, assuming the alleged facts to be true.

Dershowitz was retained by attorney Parker in this case as well, in the same limited role of a consulting constitutional expert. *See* 1-ER-5. Dershowitz was not retained by Gubernatorial candidate Kari Lake or Mark Finchem, who was running for the Secretary of State position, and has never met or spoken with either of them, and had no interest in whether they won their elections. In fact, politically, as he explained to the District Court, he is a lifelong liberal Democrat. *See* 2-ER-257 to 2-

ER-258. He was retained directly by Parker as "of counsel" to Parker's firm, to make suggestions and potentially argue any such constitutional issue if it arose in the case. *See* 2-ER-184. Parker was the lead and primary attorney on the case who signed the pleadings as "counsel." *E.g.*, 2-ER-376. Dershowitz reasonably assumed that lead counsel would be investigating the underlying facts, without having to conduct his own independent investigation into the facts he was relying on. To do so would not only be cost-prohibitive but would be beyond the scope of what he had agreed to be responsible for, or frankly, could be responsible for. Here, Dershowitz adapted his research from the earlier case to make a similar constitutional argument. *See* 1-ER-5. That was the scope of his representation. He made notations and comments on draft pleadings only in this regard and for that purpose. The case never progressed to discovery, to arguments, or trial, that would have required Dershowitz's further active involvement.

## II.   **Dershowitz solely authorized an "of counsel" signature.**

Professor Dershowitz has been appearing as "of counsel" for around 50 years, since at least his limited role in *United States v. Kahn*, 472 F.2d 272 (2d Cir. 1973), with the understanding that by doing so, he was limiting his role and involvement, and not responsible for determining the truth of the underlying facts. In *Kahn*, Dershowitz was retained by the distinguished litigator Robert Fiske[1] to research and write only a portion of the pleadings challenging the constitutionality of excluding

---

[1] Fiske was the United States Attorney for the Southern District of New York and special counsel on the Whitewater investigation. He was also Chair of the ABA's Standing Committee on Federal Judiciary.

eighteen-year-olds from the grand jury. *See* 2-ER-87 to 2-ER-88. He was not involved with the remaining issues in the case, or investigation of all facts assumed for his limited role. *See* 2-ER-87. Because he had not yet commenced teaching legal ethics. he consulted with the leading expert in the ethics arena, Professor Monroe Freedman, who confirmed to him that the "of counsel" designation was the most appropriate one to describe his limited role and responsibilities in such circumstances as this. *See* 2-ER-88. Fiske approved the designation as well, confirming there was a difference between appearing as "counsel" and "of counsel" in this regard. *Id.* Dershowitz recalls being admitted *pro hac vice* in that case as well. *Id.* The court, too, noted him as "of counsel" in issuing its opinion. *Id.* The Department of Justice has also used the distinction between "of counsel" and "counsel." *See, e.g.*, *United States v. Pietro Tussa*, 816 F.2d 58 (2d Cir. 1987), where Assistant United States Attorneys appeared as "of counsel" to signify their limited input and involvement.

Since that time, Dershowitz has been appearing as "of counsel" whenever he plays a limited and discrete role in researching and writing pleadings or arguing in a limited capacity within his area of expertise. *See* 2-ER-88; *see also* 2-ER-89 to 2-ER-93 (providing a non-exhaustive list of cases in which Dershowitz has similarly appeared as "of counsel"). He has never once been challenged by any court, clerk's office, or opposing counsel as being confused by his distinguishing himself from "counsel" in that manner. *See* 2-ER-88. He clearly believed here that such a notation of his limited role did not mean, or convey, he would be responsible for everything the Parker firm stated as to any fact. In fact, he had reason to believe that it would

8

actually signify just the opposite. *Id*. The ability to serve in a limited "of counsel" position is especially important to Dershowitz nowadays, as it is no doubt to others in his situation, because at his age and health, he lacks both the resources and desire to serve as full "counsel" with the responsibilities that such designation entails. *See* 2-ER-259. More than half of his practice is pro bono and most of it takes the form of limited consultation on legal issues within his area of expertise and as an appellate lawyer and constitutional scholar. *Id*.

Consistent with this practice, and to signify his limited representation and contribution in this case, Dershowitz made clear his consent to appear only as "of counsel." *See* 1-ER-6. He even questioned why he would need to be admitted *pro hac vice,* but was advised by Parker's firm that the Clerk of the Court required it despite his limited role. *Id*. He authorized his signature on filings for this purpose, but only as "of counsel," *id.,* without thereby intending to imply anything other than his limited role and capacity, and to avoid taking on the full responsibility of the retaining firm's attorneys, whom he would expect to determine the accuracy of facts presented to the court. His signature therefore appeared on the Complaint and First Amended Complaint specifically with this in mind, only as "of counsel," not "counsel." Due to a clerical error that was not his own, and was contrary to his intention and instructions, his signature in certain later filings mistakenly appeared as "counsel." *See* 1-ER-7; 2-ER-230. Dershowitz never authorized this, nor was aware of any change of his designation, and the District Court did not hold him responsible for that clerical error. *See* 1-ER-15 to 1-ER-27. In other words, the

District Court analyzed the case as though "of counsel" had been used, as intended by Dershowitz, throughout the case. *Id.*

**III.** **Dershowitz properly appeared pro hac vice.**

Because Dershowitz was not a member of the bar before the Federal District Court for the District of Arizona, he was admitted *pro hac vice*, and fulfilled his "of counsel" role in this case as a *pro hac vice* member of the bar. *See* 1-ER-8. Dershowitz originally did not move for this admission, but once the Clerk's Office clarified to him through the Parker firm the need for such admission, despite his limited role, he was admitted. *Id.* At this point, Dershowitz is no longer involved in this, or any other Arizona case, having fulfilled his limited role.

**IV.** **Throughout the case, Dershowitz played a limited role regarding only the constitutional issues of concern.**

Pursuant to the scope of his representation, Dershowitz advised on the limited issues related to constitutional principles for which he was retained. His primary drafting contribution was paragraph 8 of the First Amended Complaint, which provides an accurate summary of his concern and involvement:

> It is important to note that this Complaint is not an attempt to undo the past. Most specifically, it is not about undoing the 2020 presidential election. It is only about the future—about upcoming elections that will employ voting machines designed and run by private companies, performing a crucial governmental function, that refuse to disclose their software and system components and subject them to neutral expert evaluation. It raises the profound constitutional issue: can government avoid its obligation of democratic transparency and accountability by delegating a critical governmental function to private companies?

*See* 2-ER-260; 2-ER-174 to 2-ER-175.

Dershowitz clearly believed, and still does, that transparency and accountability when delegating governmental functions to private companies raises a constitutional issue. The "issue" whether companies, in refusing to subject their machines to adversarial expert evaluation or to disclose their software and system components for such evaluation, would raise a constitutional issue of concern. Dershowitz's work was not to determine whether such work had been done. It was his stated task to explore that issue from his expertise, not to determine exactly what the company had done or would do, let alone to determine whether Maricopa County utilized paper ballots in the past or not. He spent only approximately 3–4 hours working on this issue, as well as on the rest of the case, before it was dismissed. *See* 1-ER-5; 2-ER-228. He was not involved in the decision to bring the lawsuit, file the complaint, or move for a preliminary injunction, and was not involved in any factual investigations as to issues which appear to be the focus of the court's sanctions order, *see* 1-ER-34 to 1-ER-54, and did not develop legal arguments other than for which he was retained. *See* 1-ER-5 to 1-ER-6; 2-ER-168.[2] Consistent with the evidence, the District Court found that "Mr. Dershowitz's involvement in this case was indeed limited . . . ." 1-ER-26.

Yet, despite his limited involvement, Dershowitz's participation in the case was occasionally exaggerated in the public realm without his knowledge by others, sometimes in error, sometimes intentionally, causing him significant harm. As the

---

[2] The record also reveals Dershowitz only made high-level comments on the complaint, passively attended a safe harbor telephone conference with Defendants' counsel, and passively listened in on the joint hearing on the motions to dismiss and for a preliminary injunction. *See* 1-ER-8; 2-ER-197 to 2-ER-199.

District Court found, "[Mr. Dershowitz's] public participation appears largely to have been engineered by others." 1-ER-27; *see also* 2-ER-260 ("The media and the bar complaint have falsely attributed all of the misstatements listed in the order to me, *personally*, despite the fact that I did not participate in the drafting on the complaint other than to advise on the paragraphs pertaining to the legal claim [of Paragraph 8]."). The Clerk's Office erroneously listed Dershowitz as "lead counsel," which caused him "great damage . . . in the Court of public opinion." *See* 2-ER-172. "Harvard Law School" was listed in documents and court records in connection with Dershowitz's private practice, even though the Law School and Dershowitz both prohibit it. *See* 2-ER-168, 2-ER-187.

The publication "Law and Crime" portrayed Dershowitz as the lead attorney on the case as well, relying on the court docket. *See* 2-ER-259. AZ Law called Dershowitz Plaintiffs' "big gun." AZ Law, BREAKING: AZ Court Kicks Alan Dershowitz Out of Court; Kari Lake & Mark Finchem Lose Their Big Gun Due To "Noncompliance" (May 19, 2022), https://arizonaslaw.blogspot.com/2022/05/breaking-az-court-kicks-alan-dershowitz.html (publicizing the court's temporary rejection of Dershowitz's appearance due to an incomplete pro hac application). Plaintiff Lake mentioned Dershowitz's involvement through her Twitter account. *See* 1-ER-7. Business executive Michael Lindell called him "one of the lead attorneys on [the case]." *Id.* at ER-1-7 (citation omitted). None of this was the work of Dershowitz himself, nor was he aware of it.

Due to the court's sanctions order, Dershowitz even had two Bar complaints brought against him. *See* 2-ER-259; 2-ER-187 to 2-ER-188. In addition, the sanctions order, compounded by the bar complaints, limits Dershowitz's ability to appear *pro hac vice* in other cases, including in the various pro bono cases across the country that form half of his active caseload. *See* 2-ER-170, 2-ER-173. For example, Dershowitz could not appear *pro hac vice* in a Texas capital case in which he had intended to be involved on a pro bono basis, where the defendant was subsequently executed on October 10, 2023, without Dershowitz being able to make an appearance. *See Murphy v. Texas*, 601 U.S. __, No. 23-5740 (Oct. 10, 2023); 2-ER-171.

## V. **Dershowitz challenges both the court's original sanctions order and the separate order finding him liable in part.**

The District Court issued its original sanctions order on December 1, 2022. *See* 1-ER-28. That order, which sanctions Plaintiffs' "counsel," was unclear as to whether it extended to him, given that he never agreed to serve as "counsel," but only limited his role to "of counsel". Dershowitz moved for an Order to Show Cause hearing to clarify the ambiguity. *See* 2-ER-248; 2-ER-231; 2-ER-222. The court eventually held a partial "hearing" where Dershowitz and Parker answered the judge's and opposing counsel's questions but did not testify beyond the questions asked or examine witnesses. Parker also signed a declaration for Dershowitz's OSC Motion, confirming the latter's limited role. *See* 2-ER-229. Dershowitz moved to supplement the record. *See* 2-ER-101; 2-ER-94; 2-ER-82; 2-ER-89. The court

considered the additional information in the supplements. *See* 2-ER-80. The court found the prior sanctions order extended to Dershowitz as well, but, reduced the amount of the sanctions he would be liable for to 10% of the total sanctions found to be due, expressly considering Dershowitz's limited involvement in doing so. *See* 1-ER-28. Dershowitz appeals the finding of any sanctions as a matter of law, arguing that no sanction should be legally permissible at all based on his lack of involvement in the matters found sanctionable. *Id.*

## VI. <u>The District Court targeted Plaintiffs' case for sanctions because it believed the case expressed the viewpoint that the elections were conducted improperly.</u>

The District Court chose to impose sanctions on Plaintiffs' counsel to "send a message." *See* 1-ER-58. The court was "concern[ed]" about Plaintiffs "cast[ing] doubt on the electoral process in a manner . . . conspicuously consistent with the plaintiffs' political ends." *See* 1-ER-53. It felt the case "was about undermining the People's faith in our democracy" and "advance[d] a political narrative*." See* 1-ER-53 to 1-ER-54 (citations and quotation marks omitted).

The court obviously personally disliked this viewpoint, but with due respect to the court, that was not his role to do so, when stating, "imposing sanctions in this case . . . [i]s to make clear that the Court will not condone litigants . . . furthering false narratives that baselessly undermine public trust at a time of increasing disinformation about, and distrust in, the democratic process*." See* 1-ER-57. The Court indiscriminately chose to silence the narrative by sweeping sanctions: "[Imposing sanctions in this case] is to send a message to those who might file

14

similarly baseless suits in the future." *Id.* Again, as to Dershowitz, no such message was appropriate or necessary, and if anything, such message, given his involvement, sends nothing but a chilling one to others.

In other words, the court targeted Plaintiffs' case because the court felt the case, and the lawyers who brought it, expressed a viewpoint—that the elections were conducted improperly—with which it disagreed. The court wished to inappropriately silence that viewpoint by sanctions broadly aimed at all involved in the case, without regard to their sanctionable role even.

Here, the question is whether a case should be singled out for sanctions because of the viewpoint it advances, particularly as to one who does not even share it. The answer is, of course, no. This is not an appropriate or constitutional use of the court's sanctions authority. Whether the judge agrees or disagrees with the objective of the lawsuit, or of a litigating attorney, must be irrelevant to the decision to impose sanctions.

## VII.  <u>Dershowitz did not even have the viewpoint the court issued sanctions over.</u>

Indeed, this was not even a viewpoint Dershowitz shared, as he explained to the court. First, the lawsuit did not appear to him to attempt to overturn any election. From his view, it was designed to provide transparency for future elections. This is his view as expressed in ¶ 8 of the complaint he contributed to. *See* 1-ER-20 n.3. He wrote in the one paragraph of the complaint he helped to draft: "It is important to note that this Complaint is not an attempt to undo the past. Most specifically, it is

not about undoing the 2020 presidential election. It is only about the future . . ." *See* 2-ER-328. Second, he is a lifelong liberal Democrat who "strongly believe[s] that the 2020 election *was* fair and resulted in the correct outcome" and "has never challenged the outcome of any 2020 election in Arizona or elsewhere." *See* 2-ER-257 to 2-ER-258 (emphasis added). Dershowitz even testified that he "rooted" for Plaintiff Lake's opponent and was happy she won. *See* 2-ER-173. In fact, the only election Dershowitz has ever criticized was the 2000 election when the Supreme Court stopped the Florida recount, and about which he wrote the book *Supreme Injustice*. *See* 2-ER-257 to 2-ER-258. Therefore, the court's apparent objective of sanctioning Dershowitz over the viewpoint he was perceived as advancing of a "false narrative" truly did not apply to any deterrent purpose as to Dershowitz. A sanction against him advances no legitimate purpose of the court under Rule 11. *See* 2-ER-258 to 2-ER-259.

## VIII. <u>The record does not establish a necessary causal connection between the work Dershowitz performed and the fees for which he was sanctioned.</u>

The sanctions award must also be reversed because Maricopa County, in seeking sanctions, did not specify which legal fees it incurred in this case would not have been imposed but for Dershowitz. *See, e.g.,* 2-ER-294; 2-ER-291. The District Court, in imposing attorneys' fees as sanctions, also did not do so. *See* 1-ER-28; 1-ER-2. This alone is grounds for reversal. Instead, the District Court sanctioned Dershowitz for a percentage of all the attorneys' fees Maricopa County incurred, discounted arbitrarily to 10%, only in recognition of his limited involvement. *See* 1-

ER-28. But the District Court made no finding that limited involvement actually caused any of the attorneys' fees that were be incurred, or that but for his involvement those fees would not have been incurred. Below is a representative sample of Maricopa County's non-specific billing.

| 06/01/22 | JLR | Various work on this matter | 5.00 | 300.00 | 1500.00 |
|---|---|---|---|---|---|
| 06/08/22 | JLR | Review emails, docs filed in court in re this matter | 2.50 | 300.00 | 750.00 |
| 06/20/22 | JLR | Various work on this lawsuit | 7.00 | 300.00 | 2100.00 |
| 06/28/22 | JLR | Review some of the emails in inbox associated with this matter; review docs attached; file | 1.00 | 300.00 | 300.00 |
| 06/30/22 | JLR | Reviewing/filing emails in Inbox re this matter | 2.00 | 300.00 | 600.00 |
| 07/15/22 | JLR | Reviewing emails and docs in Inbox on this matter; filing | 0.70 | 300.00 | 210.00 |
| 07/19/22 | JLR | Reviewing emails and docs in Inbox re this matter; respond as warranted; file | 0.70 | 300.00 | 210.00 |
| 07/19/22 | JLR | Reviewing multiple docs in this matter in prep for Emily Craiger's moot court tomorrow; drafting | 7.70 | 300.00 | 2310.00 |
| 07/25/22 | JLR | R[e]view emails and docs in Inbox re this matter; respond as warranted; file | 0.50 | 300.00 | 150.00 |
| 08/04/22 | JLR | Review emails in inbox re this matter; respond as warranted; file | 1.10 | 300.00 | 330.00 |
| 08/08/22 | JLR | Review emails and docs in inbox re this matter; respond as warranted; file | 1.10 | 300.00 | 330.00 |

| 09/20/22 | JLR | Review emails and docs in Inbox re this matter; respond as warranted; file | 1.00 | 300.00 | 300.00 |

The extraordinarily generic descriptions such as "various work on this matter" fail to clarify the work performed or its relation to anything Dershowitz did. Similarly, descriptions as "[r]eviewing emails and docs in Inbox re this matter; respond as warranted" do not clarify the entry's relationship to Dershowitz. Who sent the e-mails? Who was the recipient? What were the e-mails even about?

Multiple entries for teleconferences similarly fail to specify the subject of the conference, let alone establish a connection to Dershowitz.

| 05/12/22 | TPL | Conference call re: litigation strategy | 0.40 | 300.00 | 120.00 |
| 05/12/22 | JLR | Participate in conference call re lawsuit | 5.30 | 300.00 | 1590.00 |
| 07/19/22 | JLR | Prepare for video conf w/ Tom Liddy and Emily Craiger; participate in conference | 1.00 | 300.00 | 300.00 |

In addition, Maricopa County submitted multiple bills for work responding to an amicus brief submitted by the Arizona Republican Party, without showing the amicus brief was in any way related to Dershowitz.

| 06/13/22 | EC | review e-mail from A. Kolodin re amicus [part of block bill] | 0.60 | 400.00 | 240.00 |
| 06/15/22 | EC | review amicus brief and e-mails for same [part of block bill] | 5.60 | 400.00 | 2240.00 |
| 06/17/22 | EC | e-mail correspondence responding to amicus brief [part of block bill] | 11.8 | 400.00 | 4720.00 |

18

| 06/20/22 | EC | review draft motion for leave re amicus brief and draft e-mail re same. [part of block bill] | 2.30 | 400.00 | 920.00 |
|---|---|---|---|---|---|
| 07/01/22 | EC | Review Amicus brief and draft response to same | 0.90 | 400.00 | 360.00 |
| 07/02/22 | JLR | Begin drafting our proposed response to AZGOP's amicus brief | 4.5 | 300.00 | 1350.00 |
| 07/03/22 | JLR | Continue researching and drafting Response to AZGOP's Amicus Brief | 4.3 | 300.00 | 1290.00 |
| 07/03/22 | JLR | Continue researching and drafting Response to AZGOP's Amicus Brief | 2.7 | 300.00 | 810.00 |
| 07/05/22 | EC | Finalize draft response to amicus brief | 0.40 | 400.00 | 160.00 |

The above entries are also representative of Maricopa County's extensive block billing, a practice courts malign for its lack of specificity and failure to connect the hours billed to the work done.

## SUMMARY OF THE ARGUMENT

First, Rule 11 does not impose strict or vicarious liability on "of counsel" where the pleadings are intended to be vetted factually and signed by the lead counsel. Instead, courts must examine the specific attorney's precise role in the case and actual level of involvement in sanctionable conduct to determine what sanctions, if any, are fair and appropriate to satisfy the purpose of sanctions. Here, Dershowitz signed as "of counsel," making only a limited representation to the court as to the specific issues for which he was retained to consider from his expertise, and

19

therefore is not strictly or vicariously liable for the acts of others outside his scope of representation. Further, it is uncontested Dershowitz had no actual involvement in vetting the facts the court felt were being misrepresented, and it was clear he had no such involvement in the discussion whether to bring the suit, or in any factual issue the court found sanctionable, and therefore no sanctions were appropriate against him. *See infra* Part IX.

Second, the government violates the First Amendment when it enforces an otherwise constitutional rule in a viewpoint-discriminatory manner. Here, the District Court explained that it imposed Rule 11 sanctions because it believed Plaintiffs' lawsuit cast doubt on the electoral process by its alleged misstatements of certain facts without even considering Dershowitz's actual viewpoint. This was not in any way related to the actual issue Dershowitz was involved with advancing; Dershowitz's point of view was to only *increase* public confidence in elections, not the opposite, and he made clear his argument applied only to *future* elections without challenging past ones. Further, the court, by explaining it imposed sanctions because it believed the lawsuit cast doubt on the elections process itself, could not thereby have been referring to Dershowitz's involvement because that is *not* Dershowitz's viewpoint at all. Indeed, the Court admitted in its Order, essentially, that it was committing viewpoint discrimination. The court's sanctions order thus violates the First Amendment insofar as it intended to sanction Dershowitz for this "viewpoint," which was not even his viewpoint. *See infra* Part X.

Third, the District Court, in imposing attorneys' fees as sanctions against Dershowitz, failed to apply the "but-for" test to establish that the individual fees

would not have been incurred but for Dershowitz's work. *See infra* Part XI. Applying that test would have resulted in no sanctions being found against Dershowitz.

For any of the above reasons, this Court should reverse the sanctions order against Dershowitz.

## **ARGUMENT**

## **IX. Dershowitz did not commit any sanctionable conduct under Rule 11 standards.**

### **A. Dershowitz is not liable under Rule 11.**

"This Court reviews de novo a district court's interpretation of the Federal Rules of Civil Procedure." *California Scents v. Surco Products, Prod., Inc.*, 406 F.3d 1102, 1105 (9th Cir. 2005). A court may not impose sanctions where the attorney has committed no sanctionable conduct. *See* Fed. R. Civ. P. 11(c)(1). In this case, the District Court erred as a matter of law in its interpretation of Rule 11.

> 1. Rule 11 does not impose strict or vicarious liability on "of counsel" for the acts of others outside of counsel's scope of representation.

Courts "interpret Rule 11 according to its plain meaning." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). Courts also consider the history of the rule and its purpose. *See id.* at 392–93. "It is now clear that the central purpose of Rule 11 is to deter baseless filings in district court . . . ." *Id.* at 393. "[A]ny interpretation must give effect to the Rule's central goal of deterrence. *Id.* at 393.

(Emphasis added). With this standard in mind, the sanction here serves no useful purpose as to Dershowitz.

The text of Rule 11 reveals its operational structure and purposes. "Every pleading, written motion, and other paper must be signed by *at least one attorney of record* in the attorney's name." Fed. R. Civ. P. 11(a) (emphasis added). This is to provide responsibility for the filing. Second, it requires attorneys to assume responsibility for their presentations:  "By *presenting* to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies [certain matters]." Fed. R. Civ. P. 11(b) (emphasis added).

Nothing in the history of Rule 11 sanctions requires an "of counsel" such as Dershowitz here to be held strictly or vicariously liable for the acts of others outside that counsel's scope of representation. To the contrary, the text merely requires, and its purposes are met, by holding "of counsel" responsible only for those matters within the scope of their intended work. First, by definition, where there is an of counsel designation, there is a different lead attorney of record, who assumes responsibility for the entire submission. Second, the "of counsel" designation, again by definition, does not "present" the entire paper submitted as the work of the "of counsel" lawyer. Instead, the very designation is intended to indicate that such "of counsel" is involved in a limited aspect of the case. Significantly, upon further investigation, the court here determined Dershowitz's limited engagement and role in verifying any of the underlying "facts" advanced by lead counsel with which the court took issue. Dershowitz's constitutional opinions, as expressed principally in ¶

22

8 of the First Amended Complaint, are established as a general proposition regardless of the underlying facts. Rule 11 should not hold him responsible for those aspects of the case or facts he is not engaged to determine. Where a rule of liability does not impose liability on such a person, courts may not expand liability past its express text.

The history of Rule 11 is consistent with this conclusion. Even the 1983 amendment—the primary amendment intended to expand liability under Rule 11—encourages individualized assessment of cases and attorney participation: "[I]n considering the nature and severity of the sanctions to be imposed, the court should take account of the state of the attorney's or party's actual or presumed knowledge when the pleading or other paper was signed. . . . [T]he court should have discretion to impose sanctions on either the attorney, the party the signing attorney represents, or both . . . ." Fed. R. Civ. P. 11 Advisory Comm.'s Note (1983). It has no discretion to sanction anyone who has not committed sanctionable conduct.

The District Court points to the text of the statute in its order, but then fails to identify any provision thereof that should impose strict or vicarious liability on this "of counsel". *See* 1-ER-16 to 1-ER-17. It also fails to recognize the operational structure of Rule 11 itself. There still exists a primary drafter responsible for the paper submitted to whom sanctions may be assessed if false information is supplied to the court without adequate investigation. And, of course, the "of counsel" attorney does assume responsibility for any false presentation he or she knowingly submits to the court as well. The text of Rule 11 requires nothing more.

The District Court does point to the history of Rule 11, but does not evenly consider it as applied here. *See* 1-ER-18 to 1-ER-19. In *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 121, 125–27 (1989), the Supreme Court held that Rule 11 responsibility did not extend to a law firm, only to individuals responsible. In the wake of that decision, the Advisory Committee changed the default language to impose liability on the law firm. Fed. R. Civ. P. 11(c)(1); Fed. R. Civ. P. 11 Advisory Comm.'s Note (1993). But, the District Court ignored the Advisory Committee's own explanation for this decision: "Absent exceptional circumstances, a law firm is to be held also responsible when, as a result of a motion under subdivision (c)(1)(A), one of its partners, associates, or employees is determined to have violated the rule. Since such a motion may be filed only if the offending paper is not withdrawn or corrected within 21 days after service of the motion, it is appropriate that the law firm ordinarily be viewed as jointly responsible under established principles of agency." Fed. R. Civ. P. 11 Advisory Comm.'s Note (1993). In other words, the law firm is held responsible because its individual attorneys are its agents. But the principal lawyers in this case are not Dershowitz's agents. And, while a law firm can protect itself by ordering its lawyers to withdraw the pleading during the 21-day safe-harbor period, Dershowitz had no authority to order withdrawal of any pleading.

The District Court's reference to the purposes of Rule 11 does not change the result. 1-ER-24. In fact, it makes our point that no useful purpose would be served in this case by punishing an attorney who only serves in a limited capacity. Rule 11 "deter[s] baseless filings," *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393

24

(1990), by imposing liability on all primary signers, who are on notice to determine the underlying facts and responsible for them. It also "bring[s] home to the individual signer his personal, nondelegable responsibility," *Pavelic & LeFlore*, 493 U.S. at 126, by imposing liability on him as to the truthfulness of the factual subject of his presentations to the court to the extent reasonable, and his assertions of law based on a review of that law stated fairly. Contrary to the District Court's assumption, the main effect of its expansive strict liability regime would not be to deter the baseless filings already deterred; it would only serve to deter professors and retired judges and lawyers with expertise in a specific area from appearing in cases at all and being of assistance therein for fear of being sanctioned for factual investigations beyond the admitted scope of their limited service.

None of the cases cited by the District Court lead to a contrary conclusion. *Holgate v. Baldwin*, 425 F.3d 671 (9th Cir. 2005) is inapposite because the case at bar is not about an attorney withdrawing from representation. *See* 1-ER-18. *Jenkins v. Methodist Hospitals of Dallas, Inc.*, 478 F.3d 255 (5th Cir. 2007) is inapposite because the present case is not about whether an "isolated factual error should . . . be the basis of Rule 11 sanctions." *See* 1-ER-18 to 1-ER-19. *Val-Land Farms, Inc. v. Third Nat'l Bank in Knoxville*, 937 F.2d 1110 (6th Cir. 1991) is inapposite because there is no issue in this case about whether both in state and out of state counsel can be held liable under Rule 11 or whether they can be held liable if they rely on each other. *See* 1-ER-19. *In re Kunstler*, 914 F.2d 505 (4th Cir. 1990) is inapposite because that is not a case about of counsel. *See* 1-ER-19. *King v. Whitmer*, 71 F.4th 511, 531–32 (6th Cir. 2023) is inapposite in its imposition of sanctions against the

attorney Lin Wood because that is not a strict liability case. *See* 1-ER-19 to 1-ER-20. The court there found Wood "not credible;" there was even testimony that he had "spearheaded" the lawsuit. *King*, 71 F.4th at 531. Here, the court credited Dershowitz's testimony that he did not "spearhead" the suit or serve as lead counsel.

> 2. Sound policy advises against holding "of counsel" strictly or vicariously liable for the acts of others outside of counsel's scope of representation.

Many professors and retired judges and lawyers with specific expertise offer limited consulting services within their areas of expertise to other practitioners in litigation. They offer their substantial and specialized knowledge to help develop and advance arguments. Such experts, whether due to age or other involvements, lack the capacity to act as full time or lead counsel on cases with the ensuing Rule 11 responsibility to research all factual background. Instead, they are retained for their specific area of expertise and to contribute to issues within that area. That is the case here. The predicament these experts face is how best to indicate their role to the court when no clear guidance is offered, while at the same time limiting their exposure to the full responsibilities of being lead counsel.

In the absence of any clear rule, three basic options are available to these experts. First, they could refuse involvement in the case altogether, due to the risk that other aspects of the case would violate Rule 11, and they would be held responsible, which does not advance any interest of anyone in getting the benefit of their wisdom. Second, they could play a consulting role behind the scenes, without listing themselves at all on the papers, which would hide their involvement. Third,

they could list themselves on the papers, in some way indicating their limited involvement, such as through an "of counsel" designation.[3] *See generally* 2-ER-112. There is currently no Rule or clear guidance as to these options. Dershowitz sought such guidance 50 years ago and has followed it since. And the "of counsel" designation does not necessarily preclude a sanction where the involvement of that counsel is indeed sanctionable; but where, as here, it becomes clear that the involvement does not require sanctions to serve any useful purpose, the sanction should be avoided.

Of the three available options, the third is clearly the best. That was the view of the expert from whom Dershowitz first sought guidance, and the view that he honestly—even if mistakenly—held. The first deprives the legal community of valuable expertise. The second hides the lawyer's contributions, which is undesirable, and not optimal. In the words of Professor Ronald S. Sullivan, "on a transparency register, it seems desirable that people who work on a brief should sign it." *See* 2-ER-118. The third permits the expert to contribute without subjecting them to expansive liability for doing so.

The District Court suggested there was a fourth option, whereby the expert would draft the expert's portion of the papers without signing the papers. *See* 1-ER-24. This approach, however, seems to serve no real purpose under Rule 11 and was certainly not clear to Dershowitz, who questioned why he had to be admitted *pro*

---

[3] For clarity, Dershowitz notes that certain law firms have "of counsel" on staff. That designation, like "associate" and "partner," is an internal distinction for the firm and is not at issue here. Here, "of counsel" indicates to a court the unaffiliated attorney's limited involvement in a case.

*hac vice* at all, and was informed he had to be, even if listed as "of counsel." This approach also harms the purpose of Rule 11 by permitting attorneys to avoid their "personal, nondelegable responsibility." *See Pavelic & LeFlore*, 493 U.S. at 126. Instead, by signing papers as "of counsel," these experts assume responsibility for *their* work, and their work alone, furthering the purposes of Rule 11.

In short, sound policy advises that the proper option among the various possibilities is for an "of counsel" in a limited role to sign papers as "of counsel" to signify their limited involvement without assuming the strict liability responsibility for others' work that attaches to full counsel. There should be a clear rule to provide "of counsel" guidance on this important issue in the future, while not punishing innocent lawyers in the past who clearly did not intend to violate any Rule. In the absence of a clear rule, sanctions against a lawyer who acted in good faith, even if retroactively found to have engaged in sanctionable conduct, are not legally and constitutionally permissible.

> 3.  Dershowitz was not involved in any of the conduct the District Court found sanctionable.

To be clear, Dershowitz was not involved in any sanctionable conduct that the Court found objectionable insofar as misleading the court on certain facts which the Court believed were falsely portrayed. We make no comment herein on whether that was so. But, Dershowitz is not liable under Rule 11 because, as explained above in Parts IX.A.1, 2, he is not strictly or vicariously liable for work others are relied upon to present, or for verifying facts others are expected to have vetted, and because, as

explained here, the District Court judge did not find Dershowitz's actual contributions in that regard to be sanctionable.

Dershowitz's contribution to this case was limited principally to developing a single constitutional argument as to *future* elections, and that role did not involve representation of any factual claim. His primary expert contribution was adding the point that Government should not be able to "avoid its obligation of democratic transparency and accountability by delegating a critical governmental function to private companies" and, in particular, private companies that develop voting machines should not be able to "refuse to disclose their software and system components and subject them to neutral expert evaluation." *See* 2-ER-328; 2-ER-174 to 2-ER-175. These propositions were not dependent on any factual investigation by Dershowitz as part of his limited function. *See* 1-ER-24; 2-ER-174 to 2-ER-175.

Dershowitz's contribution has no relation to the fact issues found sanctionable by the court, or to past elections. In particular, as part of the facts the District Court took issue with in the First Amended Complaint and the motion for a preliminary injunction was Plaintiffs' suggestion, in the court's view, that Arizona did not use paper ballots. *See* 1-ER-34 to 1-ER-40. Dershowitz had nothing to do with advancing that alleged fact to the court. Next, the court found that the assertion of fact that Arizona's election equipment is not independently tested (1-ER-41 to 1-ER-42) was not true, again, something that Dershowitz never said or implied by any comment to the pleadings or in his general position relying on these assertions of fact by others. Next, the court found at 1-ER-41 to 1-ER-42 that Plaintiffs failed to

29

allege adequate facts regarding Arizona elections to justify the relief requested. *See* 1-ER-46 to 1-ER-50. Again, that was not something Dershowitz opined on, investigated, or was hired to advance or determine. And finally, the court found at 1-ER-46 to 1-ER-50, that based on the foregoing, counsel failed to investigate these facts prior to filing the complaint. *See* 1-ER-50 to 1-ER-52. But again, this was not something Dershowitz was hired to do, or reasonably expected to do. *Id*.

Thus, none of these issues has any relation to Dershowitz's intended work or scope of involvement. Dershowitz has not violated Rule 11. He was not retained to investigate, research, or write about these facts the court felt were misstated and false. Nor did he reasonably believe he had the obligation or authority to perform such investigative work given his limited role.

### B. Even if sanctions were otherwise appropriate under Rule 11, no sanctions are appropriate as to Dershowitz given his complete lack of involvement in any sanctionable conduct.

"[T]he strong presumption is against the imposition of sanctions. . . ." *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988) (quoting *Talamini v. Allstate Ins. Co.*, 470 U.S. 1067, 1071–72 (1985) (Stevens, J., concurring)). "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Id.* at 1345. It is reserved for "rare and exceptional case[s]." *Id.* at 1344. Cases of first impression are inappropriate for sanctions. *See Gonzales v. Parks*, 830 F.2d 1033, 1037 (9th Cir. 1987). "[A]warding sanctions . . . is best reserved for the most egregious cases . . . ." *Lee v. Pow Entertainment, Inc.*, No. 20-55928, 2021 WL 5768462 at *2 (9th Cir. Dec. 6, 2021). This "extraordinary remedy" has

unintentional and collateral consequences, including subjecting the attorney to bar complaints and *pro hac vice* denials, even in pro bono cases. The most recent substantive amendment to Rule 11 "places greater constraints on the imposition of sanctions" and is intended to "reduce the number of motions for sanctions." Fed. R. Civ. P. 11 Advisory Comm's Note (1993).

Given this cautionary instruction, courts engage in a factor analysis to determine the appropriateness of sanctions as to individual involvement on a case-by-case analysis. The Advisory Committee recommends courts consider "[w]hether the improper conduct was willful or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; [and] what amount is needed to deter similar activity by other litigants." Fed. R. Civ. P. 11 Advisory Comm's Note (1993).

*King v. Whitmer*, 71 F.4th 511 (6th Cir. 2023) is illustrative. There, the Sixth Circuit reversed sanctions against two attorneys for their limited role. *King*, 71 F.4th at 531. One lawyer, Emily Neumann, "had played only a limited role in the litigation," but the district court "found that Neumann was responsible for the complaint because it listed her as 'Of Counsel.'" *Id.* The Sixth Circuit reversed, explaining that the district court "found Neumann responsible more as a matter of form than as a matter of real responsibility." *Id.* Another lawyer, Stephanie Junttila,

"personally decline[d the] defendants' request for a voluntary dismissal." *Id.* The Sixth Circuit reversed the district court's sanctions against her as well, because notwithstanding she declined the defendants' request, "she lacked the authority to agree to a voluntary dismissal." *Id.*

Here, far from showing this to be one of "the most egregious cases," *Lee*, 2021 WL 5768462 at *2, that justifies the "extraordinary remedy" of sanctions, *Operating Engineers Pension Trust*, 859 F.2d at 1345, the record shows that Dershowitz did nothing for which the court found reason for sanctions. Many factors weigh against imposing sanctions against Dershowitz given this record.

1.   The District Court's rule imposing sanctions against "of counsel" for others' work outside of counsel's scope of representation is unprecedented. It is an issue of first impression in this jurisdiction as noted by the court and counsel below. Neither Plaintiffs nor Defendants, nor the District Court, cited a single case on similar facts imposing similar sanctions. The novelty of the District Court's position, admitted by the court, is sufficient to reverse the sanctions. *See Gonzales*, 830 F.2d at 1037.

2.   Dershowitz was not involved in any conduct the court actually found sanctionable insofar as misrepresenting facts to the court. As Harvey A. Silvergate, Esq., notes, "[a] major underpinning of our legal system is that people are responsible for only their own actions, not the actions of others except in the instance of a conspiracy." *See* 2-ER-116.  Like Emily Neumann in *King*, Dershowitz "played only a limited role in the litigation and" was noted to be only "of counsel"; just as

the sanctions in *King* against Neumann were improper, so are the sanctions here against Dershowitz.

3. Dershowitz acted in good faith with no intent to overthrow or overhaul our system of government, which appears to be the main reason the court felt sanctions must be imposed on him, albeit in a much lesser amount, even though Dershowitz espouses no such viewpoint at all. As a former Professor of ethics, he would have no such motivation. He had no intent to violate the Rules, much less possess an "inten[t] to injure," Fed. R. Civ. P. 11 Advisory Comm's Note (1993). Given his reliance, and other lawyers', on the use of the "of counsel" designation, and the long history of using the "of counsel" designation, he had a reasonable basis for believing in the rectitude of his limited actions in defining issues, not the underlying facts of them. To the extent he may be considered, notwithstanding this lack of any intent, to have inadvertently violated the rules, Dershowitz duly apologized to the court, and avowed not to repeat the mistake again, having been put on notice of the alleged offense. *See* 1-ER-26 to 1-ER-27. The District Court wrongfully imposed the 10% sanction after hearing Dershowitz testify under oath as to his limited role and his understanding of the "of counsel" designation and accepting his testimony as true. Appellate guidance from this Court is necessary, and would be welcome, on the issue of how to approach the situation in the future to render assistance to other lawyers and participate in issues of expertise without assuming full responsibility for others' work. *Id*.

4.   Dershowitz assumes responsibility for his own work, including Rule 11 responsibility, which involved only identification in general of the constitutional issue that was his principal task to define and shape. *E.g.*, 2-ER-258; 2-ER-328 ¶ 8.

5.   The purpose of Rule 11, which is "to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons," Fed. R. Civ. P. 11 Advisory Comm's Note (1993), is not served in any way here by a sanction imposed under these circumstances against Dershowitz and is strictly punitive in nature. The sanctions on Dershowitz do not "give effect to the Rule's central goal of deterrence," *Cooter & Gell*, 496 U.S. at 393, because Dershowitz was not involved in the decision to bring this case, file the complaint, or move for a preliminary injunction, or to investigate the facts, and because it was previously unknown that "of counsel" could be held liable for others' work product outside of counsel's scope of representation.  Like Stephanie Junttila in *King*, Dershowitz lacked the authority to decline Defendants' request for a voluntary dismissal. Such matters as bringing the complaint and agreeing to a voluntary dismissal and assertion of facts applicable to the case itself were outside Dershowitz's scope of representation or authority. As the sanctions in *King* against Junttila were improper, so are the sanctions here against Dershowitz.

Dershowitz has been using the designation "of counsel" for decades without reason for any reprimand, as have other lawyers. In the words of Professor Sullivan, "to the degree that a Court finds that a separate 'Of Counsel' designation is ambiguous as regards the lawyer's participation in the Brief, the values that underwrite the rule on lenity should be deployed to resolve the ambiguity in

34

Professor Dershowitz's favor. In light of his long-standing use of the term to point to a level of participation, a sanction for unintentional conduct seems too over-correct." *See* 2-ER-118. The sanctions the court imposed, with the concomitant Bar complaints generated as a result, and the inability of Dershowitz to appear *pro hac vice* in cases, including in the pro bono cases that constitute half his caseload and serve the public interest, certainly constitute an unnecessary over-correction.

6. The District Court accepted Dershowitz's use of the "of counsel" designation when the papers were submitted to the court and required a *pro hac vice* admission. The distinction between "counsel" and "of counsel," accepted by the court itself, therefore should not be treated as mere verbiage. As Harvey A. Silvergate, Esq., explains, "a lawyer who signs onto a brief in an 'of counsel' capacity indicates that he/she has assumed a very limited role in the case and . . . he/she is only responsible for the point on which that lawyer has chosen to opine." *See* 2-ER-116.

7. The policy reasons advising against holding "of counsel" strictly liable for the acts of others outside of counsel's scope of representation also advise against imposing sanctions against of counsel. *See* Part IX.A.2, *supra*.

In response to all these factors weighing in favor of Dershowitz, the District Court in its factor analysis instead primarily focused on the fact that Dershowitz simply electronically signed the papers, ignoring the limitation he placed on doing so. *See* 1-ER-27. But, whether an attorney signature is affixed is typically only a prerequisite to a sanctions analysis in the first instance, not the end of the analysis. *See* Fed. R. Civ. P. 11(b). The District Court notes the public aspect of Dershowitz's

35

involvement (1-ER-26) but recognizes on the very next page that Dershowitz did not orchestrate this public aspect, or promote it, and was not even aware of its existence. *See* 1-ER-27. He certainly made no extra-judicial comment known to us promoting the viewpoint decried by the court in its ultimate analysis of the need to sanction Dershowitz at all. To the contrary, all of his public statements were to the effect that the elections of 2020 and 2022 were fair. *See* 1-ER-27.

Finally, the District Court claimed that Dershowitz disregarded "th[e c]ourt's rules regarding *pro hac vice* admission." *See* 1-ER-26. But the record is clear that Dershowitz did not do so, and instead moved to be admitted *pro hac vice* as soon as instructed to do so.[4] Indeed, this ruling is ironic insofar as Dershowitz only questioned his need for such admission given his expressed limited function and role in the matter.

The conclusion from the factor analysis is clear. Given Dershowitz's complete lack of involvement in any conduct the District Court found, or could have found, sanctionable as to any misleading fact, Dershowitz was simply not involved in any misrepresentation to the court. The novelty of the District Court's rule finding "of counsel" liable for others' conduct unrelated to of counsel's scope of representation should give this Court pause insofar as sanctioning a distinguished attorney of many years, and former Professor of Law, given the clear fact that Dershowitz was simply not doing anything one would anticipate a sanction for. There is simply no reason to

---

[4] In any event, failure to follow *pro hac vice* rules is not Rule-11-sanctionable conduct. Fed. R. Civ. P. 11(b) (listing the types of sanctionable conduct); *see also Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1541–42 (9th Cir. 1986) (reversing a sanctions finding for lack of connection to Rule 11).

impose sanctions in this case on Dershowitz, and it is actually contrary to the purpose of sanctions to do so. The "strong presumption" against sanctions should apply here. The District Court erred in sanctioning Dershowitz.

## X.     <u>The District Court's sanctions order violates the First Amendment.</u>

This Court reviews questions of law, including the constitutionality of a District Court's order, de novo. *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1131 (9th Cir. 2009); *United States v. Major*, 676 F.3d 803, 807 (9th Cir. 2012).

### A.     **Government cannot target a subset of unprotected speech for its content or due to its disagreement with the viewpoint expressed.**

The sanctions award is also without foundation under the Constitution. "The First Amendment generally prevents government from proscribing speech . . . because of disapproval of the ideas expressed. Content-based regulations are presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). Even where certain speech may be proscribed, "the First Amendment imposes . . . a 'content discrimination' limitation upon [the government's] prohibition of [the] proscribable speech." *Id.* at 387. This rule applies with even greater force where the regulation of speech is viewpoint-discriminatory. *See id.* at 391–92.

Thus, in *R.A.V.*, the Supreme Court struck down an ordinance intended to reach a subset of fighting words. *R.A.V.*, 505 U.S. at 381. The ordinance targeted those fighting words based on race, color, creed, religion or gender:

> "Whoever places on public or private property a symbol, object, appellation, characterization or graffiti, including, but not limited to, a burning cross or Nazi swastika, which one knows or has reasonable grounds to know arouses anger, alarm or resentment in others on the

> basis of race, color, creed, religion or gender commits disorderly
> conduct and shall be guilty of a misdemeanor."

*Id.* at 380–81 (quoting St. Paul Bias–Motivated Crime Ordinance, St. Paul, Minn.,

Legis. Code § 292.02 (1990)).

The Court held that even though fighting words could generally be proscribed,

*see id.* at 383–86, the ordinance at issue was unconstitutional because it targeted

those "'fighting words' that insult[ed], or provoke[ed] violence, 'on the basis of race,

color, creed, religion or gender,'" i.e., the ordinance was content-discriminatory, *id.*

at 391 (quoting the ordinance). The Court further noted that in its practical operation

the ordinance discriminated on the basis of viewpoint, because it permitted words in

favor of tolerance and equality. *Id.* at 391–92. "What we have here, it must be

emphasized, is . . . a prohibition of fighting words that contain . . . messages of 'bias-

motivated' hatred and, as applied to this case, messages 'based on virulent notions

of racial supremacy.'" *Id.* at 392 (quoting *Matter of Welfare of R.A.V.*, 464 N.W.2d

507, 508, 511 (Minn. 1991)).

Such viewpoint discrimination favored one side of the debate over the other,

creating an unequal playing ground: "St. Paul has no such authority to license one

side of a debate to fight freestyle, while requiring the other to follow Marquis of

Queensberry rules." *Id.* at 392.

The prohibition against content-specific and viewpoint-specific

discrimination within otherwise proscribable speech extends to the enforcement of

laws: "It is fundamental to our free speech rights that the government cannot pick

and choose between speakers, not when regulating and not when enforcing the

laws." *Frederick Douglass Found., Inc. v. Dist. of Columbia*, No. 21-7108, 2023 WL 5209556 at * 9 (D.C. Cir. Aug. 15, 2023). "Courts must be willing to entertain the possibility that content-neutral enactments are enforced in a content-discriminatory manner. If they were not, the First Amendment's guarantees would risk becoming an empty formality, as government could enact regulations on speech written in a content-neutral manner to withstand judicial scrutiny, but then proceed to the regulations' content-neutral terms by adopting a content-discriminatory enforcement policy." *Hoye v. City of Oakland*, 653 F.3d 835, 854 (9th Cir. 2011).[5]

Thus, the Supreme Court has held that a state's Civil Rights Commission violates the First Amendment where it expresses hostility to a person's religious beliefs during hearings, even though the public accommodation law in question may be facially valid. *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719, 1725, 1729–31 (2018). The Court reminded that "no official, high

---

[5] While courts recognize this rule, they use various doctrinal labels to describe the lawsuits. *See generally Frederick Douglass Found.*, 2023 WL 5209556 at *11–14. This Court has used the language of an as-applied First Amendment challenge, *Menotti v. City of Seattle*, 409 F.3d 1113, 1146–49 (9th Cir. 2005), as well as of a selective enforcement Equal Protection claim, *Hoye*, 653 F.3d at 855. The First Circuit has distinguished between two types of as-applied challenges and considered selective enforcement claims of this nature to be a type of as-applied First Amendment challenge. *See McGuire v. Reilly*, 386 F.3d 45, 61–62 (1st Cir. 2004). The D.C. Circuit has used the language of a selective enforcement First Amendment claim. *Frederick Douglass Found.*, 2023 WL 5209556 at *11. One could also speak of a facial challenge to an enforcement policy. *Hoye*, 653 F.3d at 855; *see also Wayte v. United States*, 470 U.S. 598, 610–14 (1985). Regardless, as this Court has observed, where there is clear language of content discrimination, the various approaches "converge," and any difference is "semantic rather than substantive." *Hoye*, 653 F.3d at 855–56. For simplicity, and following the theoretical observation in *Hoye*, this Opening Brief refers directly to a First Amendment violation.

or petty, can prescribe what shall be orthodox in politics," *id.* at 1731 (quoting *West Virginia Bd. of Ed. v. Barnette*, 319 U.S. 624, 642 (1943)), and held that the plaintiff "was entitled to a neutral decisionmaker who would give full and fair consideration to his religious objection as he sought to assert it in all of the circumstances in which this case was presented, considered, and decided." *Id.* at 1732; *see also Thomas v. Chicago Park Dist.*, 534 U.S. 316, 325 (2002) (observing that "[g]ranting waivers [licenses] to favored speakers (or, more precisely, denying them to disfavored speakers) would of course be unconstitutional . . . .").

This Court has held that government "unconstitutionally suppresses speech based on the content of its message" when it enforces a neutral "no-solicitation" buffer around abortion clinics only against those who express pro-life positions and not those who express pro-choice positions. *Hoye*, 653 F.3d at 843. It explained that "distinguishing between speech that facilitates access to clinics and speech that discourages access is not content-neutral. It is the epitome of a content-based speech restriction." *Id.* at 851. This violates the principle that "government may not favor speakers on one side of a public debate." *Id.* at 849.

Similarly, where the government arrests only protestors against the World Trade Organization in a zone restricted due to a conference, it engages in "discriminatory enforcement of a speech restriction amount[ing] to viewpoint discrimination in violation of the First Amendment." *Menotti v. City of Seattle*, 409 F.3d 1113, 1146–48 (9th Cir. 2005) (quoting *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998)). "[T]he 'fundamental principle' behind content analysis is that 'government may not grant the use of a forum to people whose views it finds

40

acceptable but deny use to those wishing to express less favored or more controversial views.'" *Id.* at 1128–29 (quoting *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48–49 (1986)).

More recently, the D.C. Circuit held that government may violate the First Amendment when it enforces an otherwise neutral defacement ordinance against those who painted "Black Pre-Born Lives Matter" but not those who painted "Black Lives Matter." *Frederick Douglass Found.*, 2023 WL 5209556 at *1. "[S]elective enforcement of a neutral and facially constitutional law may run afoul of the First Amendment if the government's prosecutorial choices turn on the content or viewpoint of speech. It is well established the government may not regulate speech based on its substantive content or the message it conveys." *Id.* at *9 (cleaned up). "Restrictions based on viewpoint are especially invidious; viewpoint discrimination is 'poison.'" *Id.* (quoting *Iancu v. Brunetti*, 139 S. Ct. 2294, 2302 (2019) (Alito, J., concurring)). "[T]he government has no authority to license one side to fight freestyle, while forbidding the other to fight at all." *Id.* (quoting *Mahoney v. Babbitt*, 105 F.3d 1452, 1454 (D.C. Cir. 1997)).

"The pervasive restraint on freedom of discussion by the practice of the authorities under the statute is not any less effective than a statute expressly permitting such selective enforcement." *Cox v. Louisiana*, 379 U.S. 536, 557 (1965). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *accord*, *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 74–75 (2022).

The Supreme Court has held that cases involving "professional speech" are also governed by "ordinary First Amendment principles" that govern content-based regulations. *Nat'l Inst. of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018). The Court noted that it had "not recognized 'professional speech' as a separate category of speech" subject to lower scrutiny. *Id.* at 2371. And, of course, discrimination based on political viewpoint is an *egregious* type of First Amendment violation. *See Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995) ("Viewpoint discrimination is . . . an egregious form of content discrimination.").

## B. The District Court's sanctions order violates the First Amendment because it discriminates on the basis of viewpoint.

As explained in Part VI, *supra*, the District Court imposed sanctions in this case to "send a message" to those litigants who would question the legitimacy of elections. This was an error. Preliminarily, the District Court erred in attributing that viewpoint to this case or to Dershowitz. This case was not about overturning election results or sowing doubt about election integrity insofar as Dershowitz is concerned. *See* 1-ER-20 n.3; 2-ER-258 to 2-ER-259. Quite to the contrary, it was about future elections, and seeking only to increase public confidence in elections by a fairer or more transparent process. The patent inapplicability of the District Court's stated reason for imposing sanctions is reversible error.

However, even assuming for purposes of argument that the case sought to question the legitimacy of elections, the District Court's sanctions orders discriminate based on viewpoint and still violate the First Amendment. The orders

target cases based on their elections-based content. *See Reed*, 576 U.S. at 163. In other words, within the realm of Rule 11-sanctionable cases, the District Court targeted a particular subset: elections cases. Like the regulation in *R.A.V.*, which was unconstitutional because it targeted a content-specific subset of otherwise proscribable fighting words, the District Court's sanctions orders violate the First Amendment. *See R.A.V.*, 505 U.S. at 381. "Courts must be willing to entertain the possibility that content-neutral enactments are enforced in a content-discriminatory manner." *Hoye,* 653 F.3d at 584. "The pervasive restraint on freedom of discussion by the practice of the authorities under the statute is not any less effective than a statute expressly permitting such selective enforcement." *Cox*, 379 U.S. at 557.

Indeed, like the regulation in *R.A.V.*, not only are the court's orders content-based, but they are also viewpoint-discriminatory: They target specifically those cases that challenge the legitimacy of the elections. *See R.A.V.*, 505 U.S. at 391–92. Such discrimination is particularly "especially invidious;" it is "poison." *Frederick Douglass Found.*, 2023 WL 5209556 at *9 (quoting *Iancu*, 139 S. Ct. at 2302 (Alito, J., concurring)).

In short, the District Court imposed sanctions to send a political message and express dislike of a certain idea: "undermining People's faith in our democracy" and "false narratives that baselessly undermine public trust at a time of increasing disinformation about, and distrust in, the democratic process." *See* 1-ER-54 to 1-ER-55, 1-ER-57. But "no official, high or petty, can prescribe what shall be orthodox in politics." *Barnette*, 319 U.S. at 642. "[G]overnment may not grant the use of a forum [such as courts] to people whose views it finds acceptable but deny use to

43

those wishing to express less favored or more controversial views." *Renton*, 475 U.S. at 48–49.

The District Court's obvious discriminatory intent is not in dispute: The court's purpose is given through the very words of its order: "[Imposing sanctions in this case] is to send a message to those who might file similarly baseless suits in the future." *See* 1-ER-57. This is not a case where one needs to determine discriminatory purpose through discriminatory impacts. *See Hoye*, 653 F.3d at 855–56. The District Court's admission is starkly clear on this point.

The District Court was the governmental organ enforcing Rule 11 as a sanction for what it believed, and against what it perceived, the lawyers here advanced contrary to the court's belief. The unconstitutionality thereof is not in serious dispute based on the stated purpose of the sanction, and the very statements made by the court itself in ordering the sanctions here removes any doubt about its intended purpose. Plaintiffs "w[ere] entitled to a neutral decisionmaker who would give full and fair consideration to [their case] as [they] sought to assert it in all of the circumstances in which this case was presented, considered, and decided." *Masterpiece Cakeshop*, 138 S. Ct. at 1732. The court could "not favor speakers on one side of a public debate," *Hoye*, 653 F.3d at 849, which was precisely what it sought to do. The government "has no such authority to license one side of a debate to fight freestyle, while requiring the other to follow Marquis of Queensberry rules." *R.A.V.*, 505 U.S. at 392; *see also Mahoney*, 105 F.3d at 1454.

Nor is the District Court's rationale that Plaintiffs "advance[d] a political narrative" a constitutionally permissible basis for imposing sanctions even were it

true, which it is not. Many cases advance political narratives and seek to achieve political objectives. The court's own ruling here may be classified in this vein. Civil Rights cases, environmental cases, police brutality cases and, of course, election cases seek both justice for the plaintiffs and to achieve political objectives. *Bush v. Gore*, 531 U.S. 98 (2000), is one such case but there are many others with which this Court is familiar. Imposing sanctions, or imposing more severe sanctions, because those who bring a case are seeing to advance a political narrative would chill advocacy in many areas of the law where the objective of the lawsuit goes well beyond providing relief for individual plaintiffs. As the Sixth Circuit recently held in *King v. Whitmer*, 71 F.4th 511, 520 (6th Cir. 2023), "another word for 'framing a public narrative' is speech; and Rule 11 cannot proscribe conduct protected by the First Amendment." *Id.* at 7.

Therefore, the District Court's sanctions order as to Dershowitz discriminates based on viewpoint—a viewpoint the court mistakenly attributed to Dershowitz—and violates the First Amendment. The order must be reversed.

## XI. The District Court's sanctions orders must be reversed because they fail to apply "but for" causation and the mandatory requirements for imposing Rule 11 sanctions articulated by the Supreme Court in *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109–10 (2017).

In *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017), the Supreme Court required district courts to establish a causal connection between the individual actions of a sanctioned attorney and the specific fees the other side incurred, whereby

"but for" the attorney's specific actions, the other side would not have incurred the fees imposed as sanctions:

> A fee award is so calibrated if it covers the legal bills that the litigation abuse occasioned. But if an award extends further than that— to fees that would have been incurred without the misconduct—then it crosses the boundary from compensation to punishment. Hence the need for a court, when using its inherent sanctioning authority (and civil procedures), to establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing party.
>
> That kind of causal connection, as this Court explained in another attorney's fees case, is appropriately framed as a but-for test: The complaining party . . . may recover "only the portion of his fees that he would not have paid but for" the misconduct. *Fox v. Vice*, 563 U.S. 826, 836, 131 S.Ct. 2205, 180 L.Ed.2d 45 (2011); *see Paroline v. United States*, 572 U.S. [434, 449–50], 134 S. Ct. 1710, 1722, 188 L.Ed.2d 714 (2014) ("The traditional way to prove that one event was a factual cause of another is to show that the latter would not have occurred 'but for' the former").

*Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. at 108–09.

It is clear the court below engaged in no such analysis. It is equally clear, the same fees awarded would have been incurred regardless of anything Dershowitz did. Courts engage in an individualized assessment of each fee, rejecting any that fail this test, then sum up the remaining fees: "The court's fundamental job is to determine whether a given legal fee—say, for taking a deposition or drafting a motion—would or would not have been incurred in the absence of the sanctioned conduct. The award is then the sum total of the fees that, except for the misbehavior, would not have accrued. *See* [*Fox*, 563 U.S. at] 837–838, 131 S. Ct. 2205 (providing illustrative examples)." *Id.* at 110.

Thus, a "court can shift only those attorney's fees incurred because of the

misconduct at issue. Compensation for a wrong, after all, tracks the loss resulting from that wrong." *Id.* at 108. Otherwise, "a court would need to provide procedural guarantees applicable to criminal cases," *id.*, which were not followed and are not at issue here.

The *Goodyear* but-for standard applies to sanctions imposed under Rule 11, as well. As the Court stated:

> Rule-based and statutory sanction regimes similarly require courts to find such a causal connection before shifting fees. For example, the Federal Rules of Civil Procedure provide that a district court may order a party to pay attorney's fees "caused by" discovery misconduct, Rule 37(b)(2)(c), or "directly resulting from" misrepresentations in pleadings, motions, and other papers, Rule 11(c)(4). And under 28 U.S.C. § 1927, a court may require an attorney who unreasonably multiplies proceedings to pay attorney's fees incurred "because of" that misconduct. Those provisions confirm the need to establish a causal link between misconduct and fees when acting under inherent authority, given that such undelegated powers should be exercised with especial "restraint and discretion." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)."

*Goodyear*, 581 U.S. at 108 n.5.

This Court also recognized the "but for" standard is mandatory under Rule 11:

> As explained in the context of Rule 11 sanctions, the expenses incurred in defending a sanctions award on appeal 'are directly caused by the district court's sanction and the appeal of that sanction, not by the plaintiff's' bad faith conduct in the district court. *Cooter & Gell*, 496 U.S. at 407, 110 S. Ct. 2447. Thus, if the appeal itself is not frivolous, then a fee award is generally not appropriate. *See id.* This conclusion is consistent with the *Goodyear* standard, which requires a direct, but-for relationship between the bad faith conduct and the fees.

*Lu v. United States*, 921 F.3d 850, 864 (9th Cir. 2019); *see also Wiemer v. Rubino*, Cause No. 1:16CV99-LG-RHW, 2019 WL 2461814 at *1 (S.D. Miss. June 12, 2019)

("The Supreme Court has made clear that the party seeking sanctions 'may recover "only the portion of his fees that he would not have paid '*but for*' the misconduct."'"). The test was not employed here, and would have resulted in an award of no sanctions as to Dershowitz had it been used.

This Court reviews de novo whether the District Court applied the correct standard. *Cooter & Gell*, 496 U.S. at 405; *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc); *United States v. Sellers*, 906 F.3d 848, 851 (9th Cir. 2018).

In Dershowitz's case, the absence of any "but for" showing, including no mention in the District Court's orders of any fee or service Dershowitz "but for" caused, was a fatal flaw in the court's assessment of sanctions to Dershowitz and requires reversal. Application of the *Goodyear* standard shows no designation by the District Court that Dershowitz injured the defendants for any specific fee. There was no basis for sanctions against Dershowitz, and the District Court's imposition of a "guilt by association" sanction was ill taken without basis in law or fact.

Maricopa County's generic fee entries such as "various work on this matter," "reviewing emails and docs in Inbox re this matter," and "drafting" do not establish but-for causation from any work Dershowitz performed, do not specify the subject matter of the work to start with, and often fail to even specify what work was done. Attorneys review emails and file documents every day and all day, and that review cannot be attributed to Dershowitz without foundational facets showing his responsibility. A reasonable billing would have identified who sent them and who received them. But no such information was identified here. Similarly ambiguous

48

conference call entries, such as "participate in conference call re lawsuit," fail to provide the subject matter of the calls. The District Court could not possibly conduct an independent review of the fees and articulate its reason for the award with sufficient specificity to permit appellate review. There is no possible way to know what Dershowitz did that "but for" his conduct would not have incurred the bill.

Maricopa County's block billing makes it impossible to determine how much time was spent on each task, while the tasks fail to specify a connection to Dershowitz. Maricopa County's many entries for responding to the Arizona Republican Party's amicus brief provide a clear example of an entire subject of entries that lacks any demonstrated connection to Dershowitz's work.

In short, the District Court's orders failed to engage at all in the "but for" test required to show that but for any actions taken specifically by Dershowitz, Maricopa County would have incurred any attorneys' fees sought. The vague, non-specific and block billing which characterized the county's request for sanctions against Dershowitz makes it impossible to tell not only what was done, but how Dershowitz caused any of the work. Here the lack of specificity of the billing deprived Dershowitz of due process of law. The order sanctioning Dershowitz must be reversed.

## **CONCLUSION**

Given Dershowitz's complete lack of involvement in any investigation or advancement of any fact the District Court found sanctionable, which the District Court itself recognized, sanctions against him were improper and entirely inappropriate in any amount, let alone an amount arbitrarily determined here, without

49

the requisite analysis of what fees awarded were caused by Dershowitz that would not otherwise have been incurred. That analysis would have resulted in no fees awarded in this case, beyond the sanctions awarded serving no useful deterrent purpose as to Dershowitz. They were only awarded ultimately to advance the court's viewpoint, which is a constitutional violation of free speech. This is simply not a proper purpose, and is an egregious use of the sanctions power, particularly as to Dershowitz. The District Court's attempt to send a political message through a sanction, however sincerely felt by the District Court, silences a viewpoint in opposition, and thus violates the First Amendment. To the extent the Court may have believed Dershowitz did anything to actually advance any "false statements" of fact, the record is devoid of his having done so. Dershowitz did nothing for which sanctions should be awarded, and for reasons stated above, he respectfully requests the Court to reverse the District Court's erroneous finding that he violated Rule 11, and to reverse the sanctions the District Court imposed on him.

**RESPECTFULLY SUBMITTED** this 27th day of February, 2024.

**WILENCHIK & BARTNESS, P.C.**

/s/ *Dennis I. Wilenchik*
Dennis I. Wilenchik, Esq.
John D. Wilenchik, Esq.
Garo Moughalian, Esq.
2810 North Third Street
Phoenix, AZ 85004
admin@wb-law.com
*Attorneys for Non-Party/Appellant*

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to the Ninth Circuit Rule 28-2.6, Appellant certifies that the following case is pending before this Court: *Kari Lake, et al. v. Bill Gates, et al.*, Docket No. 23-16022. The related appeal arises from the same case in the Federal District Court for the District of Arizona—D.C. No. 2:22-cv-00677-JJT—and is the separate appeal of sanctions by the plaintiffs and their other counsel. The two appeals present different issues for review.

**RESPECTFULLY SUBMITTED** on February 27, 2024.

WILENCHIK & BARTNESS, P.C.

/s/ *Dennis I. Wilenchik*
Dennis I. Wilenchik, Esq.
John D. Wilenchik, Esq.
Garo Moughalian, Esq.
2810 North Third Street
Phoenix, AZ 85004
admin@wb-law.com
*Attorneys for Non-Party/Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

1. This brief contains 13,814 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

**RESPECTFULLY SUBMITTED** on February 27, 2024.

**WILENCHIK & BARTNESS, P.C.**

/s/ *Dennis I. Wilenchik*
Dennis I. Wilenchik, Esq.
John D. Wilenchik, Esq.
Garo Moughalian, Esq.
2810 North Third Street
Phoenix, AZ 85004
admin@wb-law.com
*Attorneys for Non-Party/Appellant*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically served the foregoing with the Clerk of the Court for United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 27, 2023.

I further certify that all participants in this case are registered CM/ECF system users and that service will be accomplished by the appellate CM/ECF system to the following participants:

**DATED** on February 27, 2024.

**WILENCHIK & BARTNESS, P.C.**

/s/ *Dennis I. Wilenchik*
Dennis I. Wilenchik, Esq.
John D. Wilenchik, Esq.
Garo Moughalian, Esq.
2810 North Third Street
Phoenix, AZ 85004
admin@wb-law.com
*Attorneys for Non-Party/Appellant*