No. 23-16023

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

Kari Lake and Mark Finchem,

*Plaintiffs*,

vs.

Kathleen Hobbs, in her official capacity
as Arizona Secretary of State, et al.,

*Defendants,*

Alan Dershowitz,

*Non-Party/Appellant.*

Appeal from the United States District Court
for the District of Arizona, Phoenix

D.C. No. 2:22-cv-00677-JJT

## NON-PARTY/APPELLANT'S REPLY BRIEF

Dennis I. Wilenchik, Esq. (ABN 005350)
John D. Wilenchik, Esq. (ABN 029353)
Garo V. Moughalian, Esq. (ABN 038315)
**Wilenchik & Bartness, P.C.**
The Wilenchik & Bartness Bldg.
2810 North Third Street
Phoenix, Arizona 85004
Email: admin@wb-law.com
Telephone: (602) 606-2810
Attorneys for Non-Party/Appellant

March 15, 2024

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................. ii

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION ..................................................................................... 1

JURISDICTIONAL STATEMENT ........................................................ 5

STATEMENT OF THE CASE................................................................. 5

STANDARD OF REVIEW ...................................................................... 13

LEGAL ARGUMENT.............................................................................. 15

I.       No sanctions against Dershowitz were appropriate under Rule 11. ............ 15

    A.   Rule 11 does not impose strict or vicarious liability on "of counsel" for the acts of others outside of counsel's scope of representation. .................... 15

    B.   Sound policy would instruct against holding of counsel strictly or vicariously liable for the acts of others outside of counsel's scope of representation. ................................................................................................. 19

    C.   Sanctions are inappropriate as to Dershowitz under the factor analysis. ....20

II.     The District Court's sanctions order violates the First Amendment. ..........23

III.    The District Court's sanctions order must be reversed because it fails to apply required "but-for" causation. ..................................................................25

CONCLUSION ..........................................................................................28

CERTIFICATE OF COMPLIANCE ......................................................29

CERTIFICATE OF SERVICE ...............................................................30

# TABLE OF AUTHORITIES

## Cases

*America Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021) ...................25

*California Scents v. Surco Products, Inc.*, 406 F.3d 1102 (9th Cir. 2005).............14

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)...................... 14, 15, 16, 21

*Gonzales v. Parks*, 830 F.2d 1033 (9th Cir. 1987) ........................................ 13, 17

*Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017) ........... 14, 25, 26, 27

*Ileto v. Glock, Inc.*, 565 F.3d 1126 (9th Cir. 2009) ................................................14

*Jenkins v. Methodist Hospitals of Dallas, Inc.*, 478 F.3d 255 (5th Cir. 2007) ........18

*King v. Whitmer*, 71 F.4th 511 (6th Cir. 2023)............................. 20, 21, 22, 23, 27

*Lee v. Pow Entertainment, Inc.*, No. 20-55928, 2021 WL 5768462 (9th Cir. Dec. 6, 2021) ....................................................................................................13

*Lu v. United States,* 921 F.3d 850 (9th Cir. 2019)..................................... 25, 27

*Moran v. Screening Pros, LLC*, 943 F.3d 1175 (9th Cir. 2019)..............................13

*Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336 (9th Cir. 1988) .............................................................................................................. 13, 20

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) ........................................ 12, 23, 24

*Talamini v. All-State Ins. Co.*, 470 U.S. 1067 (1985)....................................... 13, 20

*Townsend v. Holman Consulting Corp.*, 929 F.2d 1358 (9th Cir. 1990) (en banc)....................................................................................................18

*Unioil, Inc. v. E.F. Hutton & Co., Inc.*, 809 F.2d 548 (9th Cir. 1986) ...................18

*United State v. Kahn*, 472 F.2d 272 (2d Cir. 1973) ...............................................6, 7

*United States v. Dreyer*, 804 F.3d 1266 (9th Cir. 2015) (en banc).........................13

*United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009) (en banc)......................14

*United States v. Major*, 676 F.3d 803 (9th Cir. 2012) ...........................................14

*United States v. Sellers*, 906 F.3d 848 (9th Cir. 2018) ..........................................14

**Other Authorities**

Burger, Warren E., Chief Justice, U.S. Supreme Court, *The Necessity for Civility*, 52 F.R.D. 211 (1971) .............................................................26

Lachlan Markay & Jonathan Swan, *High-Powered Group Targets Trump Lawyers' Livelihoods*, AXIOS (Mar. 7, 2022) .......................................10

The 65 Project, *Ethics Complaint Against Alan Dershowitz*, THE 65 PROJECT (Dec. 9, 2022) ...........................................................................9, 10

**Rules**

Fed. R. App. P. 28(b)(3) ..............................................................................13

Fed. R. Civ. P. 11 Advisory Comm.'s Note (1993)................................ 19, 20, 21

Fed. R. Civ. P. 11(a)....................................................................................16

Fed. R. Civ. P. 11(b) .............................................................................. 15, 18

**Constitutional Provisions**

U.S. Const., amend. XIV .............................................................................5

# INTRODUCTION

Sanctions should not be ordered against a lawyer who sincerely and reasonably believes he was acting appropriately in signaling his limited involvement in a case by designating himself as "of counsel"; nor should he be held responsible in sanctions for the acts of the principal attorneys who retained him for his expertise on a limited issue. Neither should sanctions be imposed on such an attorney where the sanctions are the result of facts asserted by the principal attorneys the court finds sanctionable under Rule 11, where the "of counsel" attorney is not expected to be able to investigate whether the facts the principal attorneys asserted were thoroughly vetted. And sanctions should not be awarded to chill First Amendment rights. Even where a reasonable, good-faith mistake is made as to the relevance of the "of counsel" designation, it is a matter of first impression inappropriate for sanctions.[1]

Despite the County's efforts to cling to the sanction award as being justified here, it is not. And the County's insinuations of sanctions even for this appeal is further evidence of how it seeks to chill fair debate through threats of sanctions, regardless of whether they are warranted. The best proof of the County's double-standard is in the County's Response Brief, which is riddled with its own mistakes,

---

[1] This is especially warranted since Professor Dershowitz has apologized for any possible mistake about the limiting implications of his signing a pleading as "of counsel" and has promised to comply in the future with any judicial guidance on this issue. No sanctions were warranted for such a good faith interpretation.

mischaracterizations, and misstatements that truly would be sanctionable as purposeful, if anything here is sanctionable. Just a few examples of the County's improper advocacy, which crosses over the line of fairness and truth will suffice to make the point about its unreasonable double-standard.

1)    On page 13, the County alleges that "[D]ershowitz offers his own personal opinion [about the use of the 'of counsel' designation] and his recollection of advice he received more than 50 years ago from another attorney to support this contention." Professor Dershowitz testified that he sought out and received expert advice from the leading ethics expert of the day, Professor Monroe Freedman, and that he confirmed the advice with a leading and distinguished litigator of the day, Robert Fiske. He also testified that he and other lawyers have been following that advice consistently, without question, for more than 50 years. The trial judge accepted this testimony. That is a far cry from the County's mischaracterization on page 13.

2)    The County further claims (Response at 8) that Professor Dershowitz is "alleging" that voting machine companies "refuse to disclose their software and system components and subject them to neutral expert evaluation." But that is not at all what Professor Dershowitz alleged. To the contrary, he explicitly sought to clarify, in the one paragraph he wrote pursuant to the issue for which he was hired, that the Complaint was not about what voting machine companies now do or have

done in the past, but rather, what they might do in the future. He explicitly stated that "it is important to note that this complaint is not an attempt to undo the past." He advised the Court that it is "only about the future—about upcoming elections that will employ voting machines designed and run by private companies, performing a crucial governmental function, which refuse to disclose their software and system components and subject them to neutral expert evaluation." It could not have been clearer that Professor Dershowitz made no factual statement about what such companies in the past had done. Advocating procedures that ensure integrity in voting tabulation in future elections is nothing but a worthy goal to be achieved. It deserved no sanctions.

3) A related mischaracterization appears on page 22, where the County claims that the "sanctioned attorneys" falsely asserted that Arizona tabulating machines "are not independently tested by experts . . . ." But that was not anything Professor Dershowitz asserted at all, let alone falsely. In any event, as we understand it, the machines were previously tested by *the state's experts*, but were not subjected to *adversarial* testing, because, as far as we understand, the state "refuse[s] to disclose their software and system components" to the plaintiffs' experts for neutral evaluation.

4) The County asserts (at 37) that "[D]ershowitz claims in his Opening Brief that the District Judge corruptly ruled in the manner he did for a singular purpose: to

'send a message' to litigants questioning the accuracy and legitimacy of the election."   But Dershowitz did not claim that the District Court did anything "corruptly."  Mendaciously claiming that was designed for no reason other than to prejudice the Court.

5)    On page 29, the County states that "[D]ershowitz appears to concede that the filings in this case were in fact, 'baseless.'"  But this, too, is false and misleading; Dershowitz has made no such concession.  His position has been that, given his limited involvement, which he tried to flag by his insistence on the "of counsel" designation, he did not seek to confirm every factual position asserted by primary counsel who retained him for his constitutional expertise on a limited issue; nor could he reasonably be expected to have done so under the limited terms of his engagement. Sanctions here serve no purpose where the primary authors of the questioned facts are available for sanctions if warranted and are appealing their sanctions.

6)    On page 21, footnote 5, the County questions Professor Dershowitz's credibility, despite the District Court's explicit findings to the contrary and their failure to challenge that after being provided the opportunity to cross-examine him during the proceeding.  Here is what the County stated: "[I]ncredibly, Dershowitz states that he 'was not retained by gubernatorial candidate Kari Lake or Mark Finchem . . . and has never met or spoken with either of them . . . .'"  The County's

suggestion that Professor Dershowitz's absolutely true statement is incredible is improper. That statement was asserted under oath without contradiction. Professor Dershowitz was retained as an expert and a limited consultant by the law firm of Parker Daniels Kibort LLC, and all communications were with them alone.

## JURISDICTIONAL STATEMENT

The County initially challenges Professor Dershowitz's jurisdictional statement but does not state anything pertinent to a jurisdictional statement. The Court has jurisdiction to hear this appeal.[2]

## STATEMENT OF THE CASE

Professor Dershowitz has been largely retired from the active practice of law since before this case. 2-ER-257. He limits his work to consultation on specific issues within his areas of expertise, such as constitutional law. *Id*. He consults, mostly *pro hac vice* and pro bono throughout the country, but on a limited basis.

---

[2] The County does suggest (at 2) that the underlying case did not raise a federal question. But that suggestion is frivolous. Count I of the First Amended Complaint alleged violation of the Due Process Clause of the Fourteenth Amendment. 2-ER-369 to -370. Count II alleged violation of the Equal Protection Clause. 2-ER-370 to -371. Count III alleged violation of the fundamental right to vote. 2-ER-371 to -372. Whether the District Court had jurisdiction, it *did* impose sanctions, and this Court certainly has jurisdiction to review the sanctions, if only to vacate the order on jurisdictional or substantive grounds. Otherwise, this would present an untenable situation where a district court without jurisdiction could enter a sanctions order that could not be challenged on appeal.

Accordingly, he was retained here by Attorney Parker in the limited role of a consulting constitutional expert. 1-ER-5.

In his more than 60 years of distinguished practice, Professor Dershowitz has never been sanctioned, disciplined, or subjected to a bar complaint. 2-ER-259. He also has taught legal ethics at Harvard for more than 25 years and would never knowingly violate any ethics rule. *Id*.

Dershowitz's primary contribution was drafting paragraph 8 of the First Amended Complaint. 2-ER-174 to -175, -198 to -199. He also made a few high-level comments from the same constitutional perspective and concern. *Id*. Paragraph 8 raises a purely legal issue of constitutional law:

> It is important to note that this Complaint is not an attempt to undo the past. Most specifically, it is not about undoing the 2020 presidential election. It is only about the future—about upcoming elections that will employ voting machines designed and run by private companies, performing a crucial governmental function, that refuse to disclose their software and system components and subject them to neutral expert evaluation. It raises the profound constitutional issue: can government avoid its obligation of democratic transparency and accountability by delegating a critical governmental function to private companies?

2-ER-328.

Dershowitz has been appearing in cases as "of counsel" for approximately 50 years, since his limited role in *United State v. Kahn*, 472 F.2d 272 (2d Cir. 1973), where he was retained to write only a portion of the pleadings challenging the constitutionality of excluding eighteen-year-olds from the grand jury. 2-ER-87 to -

88.  He did not investigate the other complex issues in the case.  He signed the brief as "of counsel" with the advice of the leading ethics expert of the time, Professor Monroe Freedman, and the approval of the distinguished litigator Robert Fiske, who retained him in the case.  *Id.*  The intent of the "of counsel" designation was to inform the parties and court that the attorney was playing a limited role, contributing only specific areas within the attorney's expertise and not generally responsible for the prosecution or defense of the entire case.

The court in *United States v. Kahn* noted Dershowitz as "of counsel" in its opinion.  The United States Department of Justice has also used the term "of counsel," as have other attorneys.  *See generally* Opening Brief at 7–9.  In the over 50 years using this designation, Dershowitz has never been challenged or questioned by any court, clerk's office, or opposing counsel regarding the significance of the phrase or distinction between "of counsel" and "counsel," until this case.  The ability to serve as "of counsel" is particularly important to Dershowitz nowadays, because, at his age and health, like many other retired professors or judges, he lacks the ability and/or desire to serve as primary "counsel" with the incumbent responsibilities of the position.  2-ER-259.

Consistent with this practice, and to signify his limited role, Dershowitz only authorized the use of an "of counsel" signature.  1-ER-6.  Accordingly, his signature appeared on the Complaint and First Amended Complaint as "of counsel."  *See, e.g.*,

2-ER-376.   While his signature in certain later filings mistakenly appeared as "counsel," the District Court credited Dershowitz's testimony that he never authorized that signature, and that the signature was rather the result of an administrative error from someone at the Parker Daniels Kibort law firm. 1-ER-15 to -27.   In fact, Dershowitz was not even aware then of the erroneous change in his requested designation. Thus, the District Court did not hold him responsible for that clerical error and analyzed the case as though "of counsel" had been used throughout, as Dershowitz had intended.  *Id.*

The District Court's findings were consistent with the facts above and cannot be challenged by the County, who filed no cross appeal and presented no rebuttal facts below.  The District Court found that "Mr. Dershowitz's involvement in this case was indeed limited . . . ."  1-ER-26.  "He made an effort . . . to communicate his limited role."  *Id.*  "He did so . . . after discussing the issue with other attorneys and scholars."  *Id.*  "He therefore claims, with some credibility, to have committed nothing more than an 'honest mistake.'"  *Id.*  "The specific deterrence concerns in this case are diminished . . . ."  1-ER-27.  These findings do not justify a career-damaging sanction.

But the District Court then sanctioned Dershowitz simply because he had signed the pleadings, even though it accepted that Dershowitz's involvement was intended to be and was in fact limited to his specific role, and that Dershowitz was

not involved in any of the factual issues the court expressed concern were false.[3]

The District Court explained that it chose to impose the monetary sanctions on Plaintiffs' counsel, albeit substantially reduced as to Professor Dershowitz, to "send a message." 1-ER-57. The court expressed it was "concern[ed]" about Plaintiffs "cast[ing] doubt on the electoral process in a manner . . . conspicuously consistent with the plaintiffs' political ends." 1-ER-53. However, Dershowitz did not share the viewpoint about which the court was concerned. *See* 1-ER-20 n.3; 2-ER-173, -257 to -258, -328.

As we explain in our Opening Brief (at 13), the sanction has curtailed Dershowitz's ability to appear *pro hac vice* in other cases, including in the pro bono cases that form half his active caseload. Furthermore, it has resulted in Bar complaints being brought against him wrongly claiming he instituted the action below for improper purposes, and wrongfully targeting him for having represented Donald Trump before the United States Senate. 2-ER-173, -187 to -188.[4]

---

[3] The District Court also mentioned that Professor Dershowitz had not followed the *pro hac vice* rules. 1-ER-25. But he did, when informed that the clerk took the position that of counsel must also *pro hac* into the District. In any event, any failure to follow *pro hac vice* rules, as we explained in our Opening Brief, is not sanctionable conduct under Rule 11. Opening Br. at 36 n.4. The County does not challenge this. *See* Answering Br. at 1–38.

[4] The Massachusetts bar complaint was brought by the 65 Project, the goal of which, according to David Brock, one of its advisors, is "threatening their livelihood" and damaging their "reputations in their local communities," referring to "deter[ring] right wing talent from signing on to any future GOP efforts to overturn elections . .

The parties in this appeal are, for the most part, in accord on the relevant facts. *Compare* Non-Party/Appellant's Opening Br. ("Opening Brief") at 2–19, *with* Br. Maricopa Cty. Defs.-Appellees ("Response Brief") at 3–11. But the County interprets those facts in ways and makes various other allegations that are simply not justifiable.

First, the County errs in suggesting (at 8, 30–31) that Professor Dershowitz made factual allegations in Paragraph 8 of the Complaint that are sanctionable. There are no such facts contained therein. The paragraph lays the groundwork for the legal argument Professor Dershowitz was retained to consult on and argues that if such conduct were to occur in prospective elections it would not be constitutionally sound for reasons stated. *See* 2-ER-328. Professor Dershowitz had not examined, was not retained to examine, and was making no allegation, whether these companies had previously done so in Arizona. 2-ER-258 to -259 ("[M]y role was limited to consulting on constitutional or other *legal* issues . . . I was not retained to participate in any investigation regarding the underlying factual basis for the complaint." (emphasis added)). Therefore, the County's assertion that Professor

---

. ." Lachlan Markay & Jonathan Swan, *High-Powered Group Targets Trump Lawyers' Livelihoods*, Axios (Mar. 7, 2022), https://www.axios.com/2022/03/07/trump-election-lawyers-disbar; *see also* The 65 Project, *Ethics Complaint Against Alan Dershowitz*, The 65 Project (Dec. 9, 2022), *available at* https://the65project.com/ethics-complaint-against-alan-dershowitz/ (providing the Massachusetts bar complaint).

Dershowitz had made an incorrect statement of fact in Paragraph 8 is, itself, incorrect. Moreover, the County does not challenge Professor Dershowitz's legal argument.

Second, the County appears to suggest (at 7, 23) that Professor Dershowitz somehow acted as lead counsel in this case because his signature mistakenly appeared as "counsel" on certain documents. However, the County knows this is not the case, and that the District Court did not find this to be the case. The District Court did not err in crediting his testimony that this was an administrative oversight for which Dershowitz should not be held responsible.

Third, the County errs in suggesting (at 10) that Professor Dershowitz had reviewed all the filings in this case. The testimony by Attorney Parker on which the County relies pertains only to the complaint. See Response Br. at 10. Professor Dershowitz may have made some other minor comments on the complaint from his vantage point as an expert to make sure his position was consistent. *See* Opening Br. at 11 n.2. The County knows that Professor Dershowitz did not and could not have reviewed all the filings in this case, because he testified that he only spent a total of 3–4 hours working on the entire case. And to the extent he did review the complaint, it was in the context of offering and supporting his legal contributions pertaining to ¶ 8 of the complaint, not any assessment of factual allegations he was not retained to investigate.

Fourth, ignoring the text of the District Court's Order, the County also erroneously claims (at 33, 37) that the District Court did not target this case for expressing the "viewpoint" that the elections were conducted improperly. But, contrary to this assertion, the District Court itself stated that it was targeting the case for that very viewpoint. The court was "concern[ed]" about Plaintiffs "cast[ing] doubt on the electoral process in a manner . . . conspicuously consistent with the plaintiffs' political ends." 1-ER-53. There can be no doubt as to the District Court's expressed concern. It felt the case "was about undermining the People's faith in our democracy" and "advance[d] a political narrative." 1-ER-53 to -54 (citations and quotation marks omitted). Ignoring the court's statements entirely, the County instead criticizes Dershowitz and his counsel (at 33, 37) for correctly stating that the District Court wanted to "send a message," when, in fact, this was the very language the District Court used: "[Imposing sanctions in this case] is to *send a message* to those who might file similarly baseless suits in the future." 1-ER-57 (emphasis added). As we explain further in Part II below, this is precisely why the sanctions orders here are proscribed by *R.A.V.*

Fifth, the County does not even refer, let alone respond to, the deficiencies in its billing practices we detailed on pages 16–19 of our Opening Brief. *See* Response Br. at 3–12. By failing to address these well-supported arguments, the County has forfeited any claim that its billings charged to Professor Dershowitz were sufficient

to pass muster as submitted.  *See* Fed. R. App. P. 28(b)(3) (requiring the appellee to present a statement of the case if the appellee is dissatisfied with the appellant's statement); *Moran v. Screening Pros, LLC*, 943 F.3d 1175, 1180 (9th Cir. 2019) ("Generally, an appellee waives any argument it fails to raise in its answering brief" (quoting *United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015) (*en banc*)).).  The amount awarded based on these deficient filings by the County should be reversed as conceded by the County by its failure to contest Dershowitz's well-supported objections.[5]

## STANDARD OF REVIEW

To begin, "the strong presumption is against the imposition of sanctions . . . ." *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988) (quoting *Talamini v. All-State Ins. Co.*, 470 U.S. 1067, 1071–72 (1985) (Stevens, J., concurring)).  "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Id*. at 1345.  It is reserved for "rare and exceptional case[s]." *Id*. at 1344.  Cases of first impression are inappropriate for sanctions. *See Gonzales v. Parks*, 830 F.2d 1033, 1037 (9th Cir. 1987).  "[A]warding sanctions . . . is best reserved for the most egregious cases . . . ." *Lee v. Pow Entertainment, Inc.*, No. 20-55928, 2021 WL 5768462 at *2 (9th Cir. Dec. 6, 2021).

---

[5] Dershowitz is not seeking a reduction in the amount of the sanction.  He is seeking reversal of the sanction, because any sanction damages his ability to appear *pro hac vice*.

All three issues Dershowitz raises on appeal are reviewed *de novo*.

"This Court reviews *de novo* a District Court's interpretation of the Federal Rules of Civil Procedure." *California Scents v. Surco Products, Inc.*, 406 F.3d 1102, 1105 (9th Cir. 2005).

This Court reviews questions of law, including the constitutionality of a district court's order, *de novo*. *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1131 (9th Cir. 2009); *United States v. Major*, 676 F.3d 803, 807 (9th Cir. 2012).

This Court reviews *de novo* whether the District Court applied the correct standard. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990); *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (*en banc*); *United States v. Sellers*, 906 F.3d 848, 851 (9th Cir. 2018). Thus, for example, this Court reviews *de novo* the District Court's failure to apply, or even note, the *Goodyear* standard in its award of fees.

The County cites (at 13) the abuse of discretion standard, but that standard does not apply to the three issues Dershowitz raises, which are all issues of law.

## LEGAL ARGUMENT[6]

### I.    No sanctions against Dershowitz were appropriate under Rule 11.

#### A.    Rule 11 does not impose strict or vicarious liability on "of counsel" for the acts of others outside of counsel's scope of representation.

Courts "interpret Rule 11 according to its plain meaning." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). Courts also consider the history of the rule and its purpose.

By its plain text, Rule 11 imposes liability only on what an attorney "presents" to the court: "By presenting to the court a pleading, written motion, or other paper— whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies [certain matters]." Fed. R. Civ. P. 11(b) (emphasis added). An attorney who signs a paper as "of counsel" communicates to the court, by long-standing tradition, that the attorney is not responsible for the entirety of the pleading, but only for those portions to which he has actually contributed.

The history of Rule 11 supports this conclusion. As we explain in our Opening Brief (at 23), even the primary amendment to the rule that was intended to expand

---

[6] The County spends the entire first part of its Argument on the irrelevant proposition that the underlying lawsuit was groundless. *See* Response Br. Part I. But Attorneys Parker and Olsen are challenging the groundlessness determination in their separate appeal, No. 32-16022. All three issues Dershowitz raises in his appeal warrant reversal *regardless* of whether the underlying lawsuit was groundless. In the interests of judicial economy, we do not address the merits of the underling lawsuit, leaving that appeal to those directly involved in them.

liability encourages individualized assessment of cases and attorney participation. There is no basis for any sanction imposed on Dershowitz in particular, and no interpretation of the Rule advances any legitimate purpose of the sanction imposed on him.

This interpretation is also consistent with the purpose and operational mechanism of Rule 11. Rule 11 "deters baseless filings," *Cooter & Gell*, 496 U.S. at 393, by imposing liability on primary signers or those who directly advance a specious assertion. It therefore operates by requiring at least one primary signer who can assume responsibility for the filing: "Every pleading, written motion, and other paper must be signed by *at least* one attorney of record in the attorney's name." Fed. R. Civ. P. 11(a) (emphasis added). When there is an "of counsel" in a case, there is, by definition, at least one other attorney who is a primary attorney on the case and assumes primary responsibility for a filing. And matters outside an attorney's limited scope of representation are also outside his responsibility as to the filing. Thus, the primary impact of holding "of counsel" responsible for the work of others outside of counsel's scope of representation is not to deter baseless filings already deterred; it is to discourage experts from appearing in cases in the first instance.

The County's various arguments on this issue fail. First, the County states (at 24) that Dershowitz is simply utilizing a "self-proclaimed title." But this is not a "self-proclaimed title" since it is employed by others routinely in practice.

Dershowitz utilized this appellation after consulting leading attorneys of the time, and he and others have been using it without issue since. Further, this is not merely a "title"; it is an appellation that informs the court that the attorney is performing a specialized role within the attorney's area of expertise, and that the attorney has a limited scope of representation.

Second, the County claims (at 23) that Dershowitz is arguing "he is not required to comply with Rule 11." That is not true either. Dershowitz does assume responsibility, including Rule 11 responsibility, for his work; but he is not in a position to assume responsibility for others' work. That is why Professor Dershowitz was willing to sign the pleadings, but wanted assurance he was doing so only as "of counsel." The County is not challenging any of the work Professor Dershowitz actually performed and for which he takes responsibility.

Third, the County claims (at 25) that "[t]he Opening Brief does not cite a single case in support of Dershowitz's contention . . . ." But we noted in our Opening Brief that neither side cited cases directly controlling the issue, nor did the District Court. See Opening Br. at 4. The County cannot admit this point because it understands that issues of first impression are inappropriate for sanctions awards. *See, e.g.*, *Gonzales*, 830 F.2d at 1037.

Fourth, the County erroneously claims (at 25–26) that we did not distinguish the cases on which the District Court generally relied. But we did distinguish those

cases.  *See* Opening Br. at 25–26.  At risk of being repetitive, *Jenkins v. Methodist Hospitals of Dallas, Inc.*, 478 F.3d 255 (5th Cir. 2007), is inapposite because this is not a case about whether "an isolated factual error should . . . be the basis of Rule 11 sanctions," which was the issue therein.  *See id.* at 265.  Moreover, the attorney in that case was the lead attorney, not "of counsel."  Similarly, *Unioil, Inc. v. E.F. Hutton & Co., Inc.*, 809 F.2d 548 (9th Cir. 1986), *overruled on other grounds by Townsend v. Holman Consulting Corp.*, 929 F.2d 1358 (9th Cir. 1990) (*en banc*), is also inapposite, because the attorney therein was the lead attorney, not "of counsel," and was thereby the one presenting the suspect information.

Fifth, the County suggests that Professor Dershowitz should have performed "an inquiry reasonable under the circumstances."  Response Br. at 14 (quoting Fed. R. Civ. P. 11(b)).  But the standard only applies to what an attorney actually "presents" to a court, and Dershowitz here takes full responsibility for his contributions.  Furthermore, even if this standard were now held to apply, it would not have been reasonable for him to engage in such an inquiry with that knowledge at the time.  Lawyers designated "of counsel" cannot, and should not, waste time and client funds researching underlying factual matters that are not within their limited scope of representation.

Sixth, the County complains (at 26) that courts must engage in a factor analysis to determine the appropriateness of sanctions.  But the factor test is set forth

in the Advisory Committee notes to Rule 11 so again, the County's position is entirely misplaced. *See* Fed. R. Civ. P. 11 Advisory Comm.'s Note (1993).

**B.** **Sound policy would instruct against holding of counsel strictly or vicariously liable for the acts of others outside of counsel's scope of representation.**

As we explain in our Opening Brief (at 26–28), professors, retired judges, and lawyers with expertise in a specific area, who offer their wisdom and knowledge to practitioners in the legal community, have four options when presented with a request to participate in a case: refuse to participate, participate without placing one's name on the pleadings, place one's name on the pleadings without signing, or place one's name on the pleadings and sign. Dershowitz chose the fourth option, as he has for half a century, believing it to be the most beneficial to the court and counsel in defining his limited participation, and he has done so for years without incident. We submit it is the best option.

The County has no response to this policy argument, other than to state that the third option we set out is possible. Response Br. at 29–30. As we have already explained, the third option is inferior. It would seek to avoid responsibility for that which is admittedly the direct contribution of the expert legal scholar, for which he should be held responsible.

**C. Sanctions are inappropriate as to Dershowitz under the factor analysis.**

"[T]he strong presumption is against the imposition of sanctions . . . ." *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988) (quoting *Talamini v. All-State Ins. Co.*, 470 U.S. 1067, 1071–72 (1985) (Stevens, J., concurring)). "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Id.* at 1345. It is reserved for "rare and exceptional case[s]." *Id.* at 1344. The most recent substantive amendment to Rule 11 "places greater constraints on the imposition of sanctions" and is intended to "reduce the number of motions for sanctions." Fed. R. Civ. P. 11 Advisory Comm's Note (1993). Thus, courts engage in a factor analysis to determine the appropriateness of sanctions as to individual involvement on a case-by-case basis. *See id.* (providing factors). Here, to the extent sanctions were imposed for any factual inaccuracies, those did not pertain to any conduct of Dershowitz, and as the record stands, awarding sanctions of any kind as to this against him would serve no useful purpose.

*King v. Whitmer*, 71 F.4th 511 (6th Cir. 2023) is illustrative. There, the Sixth Circuit reversed sanctions against attorney Emily Newman because "she played only a minimal role in the litigation." *Id.* at 531. Although her name was on the pleadings as "of counsel," imposing liability on her because of that fact was "more . . . a matter of form than . . . a matter of real responsibility." *Id.* We submit the same is precisely the situation here. Similarly, the Sixth Circuit reversed sanctions against attorney

Stephanie Junttila because although she personally declined a request for a voluntary dismissal, she lacked authority to do otherwise. *Id*. The Sixth Circuit thus made it clear that personal responsibility, not mere formal involvement, is the benchmark of Rule 11 sanctions.

The factors in this case make clear that Dershowitz was not primarily responsible for determining or investigating the facts set forth in the complaint with which the court took issue. This is an issue of first impression as to an "of counsel's" liability. Professor Dershowitz was not involved in the allegedly misleading facts with which the District Court took issue. He acted in good faith with no intent to violate the rules. He assumes responsibility for his work, including Rule 11 responsibility. The stated purpose of Rule 11 is "to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons," Fed. R. Civ. P. 11 Advisory Comm's Note (1993), or to "give effect to the Rule's central goal of deterrence," *Cooter & Gell*, 496 U.S. at 393. A sanction here serves no deterrent effect. The Court should set forth the rule for "of counsel" lawyers to be clear, and Professor Dershowitz expressed his desire to follow it. The District Court accepted Professor Dershowitz's good faith use of the "of counsel" limiting designation, and the phrase should not be treated as mere verbiage. The policy reasons advising against holding of counsel strictly liable, *see* Part I.B, *supra*, also instruct against imposing liability for such innocent conduct.

Offsetting these factors, the only factor on which the court below, and the County here, ultimately can rely is that Professor Dershowitz signed the pleadings. But the court below accepted that he did so as "of counsel" to signal a limitation in his participation. He has accepted responsibility if in error and was apologetic. As we explain in Part I.A, *supra*, that is not wrongful or sanctionable conduct, and certainly not worthy of sanctions against a lawyer who has never previously been sanctioned, even if he may have made an innocent mistake. And, as we explain in Part I.B, *supra*, it should not be deemed wrongful conduct worthy of a sanction. But even if it were to somehow, in itself, be deemed wrongful conduct, the conclusion from the factor test is clear that Professor Dershowitz should not be sanctioned here, and justice is not served by it. As with sanctions against Neuman in *King*, sanctions against Professor Dershowitz would be "more . . . a matter of form than . . . a matter of real responsibility." They would serve no legitimate purpose and actually deter legitimate and helpful participation and assistance by legal scholars to the legal community and courts and require them to essentially be insurers of all factual assertions by others, which would prove too cost-prohibitive and dangerous to warrant their involvement. The sanction here serves no useful policy purpose and is merely punishment for an innocent mistake at worst.

The County also claims (at 26–27) that the Sixth Circuit in *King* did not consider factors and attorney involvement, but in doing so ignores the text in the

opinion itself. As detailed above, the Sixth Circuit did consider factors and the attorneys' actual involvement in *King*. It reversed sanctions against two attorneys because they were not involved in the sanctionable conduct regardless of whether they signed onto papers, and because they were not the decision-makers in the lawsuit, as is the case with Professor Dershowitz here. As for attorney Lin Wood, whom the County discusses at page 27 of its brief, the Sixth Circuit affirmed sanctions only because there was sufficient evidence he had personally spearheaded the lawsuit. *King*, 71 F.4th at 531–32. To equate Professor Dershowitz's conduct here with that of Lin Wood in *King* is nothing but an absurd interpretation.

## II. The District Court's sanctions order violates the First Amendment.

We detail in our Opening Brief (at 37–42) the law that a government cannot target a subset of a set of unprotected speech due to the viewpoint expressed by that subset. For example, while government can proscribe fighting words, it cannot target the subset of fighting words based on race, color, creed, religion, or gender. *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992). Similarly, while government can proscribe baseless lawsuits, it cannot target for sanctions the subset of baseless lawsuits expressing the viewpoint that elections were conducted improperly. This constitutes impermissible viewpoint discrimination under the First Amendment.

Here, the District Court—a governmental actor— clearly targeted, within the set of what it believed were baseless lawsuits, this particular lawsuit because the

lawsuit expressed the idea that there was an error in the elections. *See* Opening Br. at 14–15. Unfortunately, Professor Dershowitz was wrongfully caught in that net. Under *R.A.V.*, this viewpoint discrimination violates the First Amendment and must be reversed. The County cannot refute this point.

The County's arguments in response miss the point entirely. The County erroneously claims (at 35–37) that we are arguing the First Amendment immunizes groundless litigation. But that is not our position. Instead, we are arguing that the District Court committed viewpoint discrimination by targeting this case, within the set of what it believed to be groundless lawsuits, to "send a message" against lawsuits challenging the legitimacy of elections.

Second, the County erroneously asserts (at 33–35) that the District Court did not target this case for its elections-based content. But, as we explained in our Statement of the Case, *supra*, that is simply incorrect, and ignores the District Court's explicitly stated motivations in its own words.

To the extent the County is suggesting the District Court targeted this case for the combined reason of baselessness and expressing the viewpoint that there was an error in the elections, it is precisely this combination that brings the District Court's order within the constitutional violation identified in *R.A.V.*

Curiously, the County claims (at 37) that sanctions were somehow appropriate because Professor Dershowitz claims he does not maintain the viewpoint for which

the District Court sanctioned the attorneys. We find this confusing, but it does not matter because the District Court erred in sanctioning an attorney for a viewpoint of which it disapproved. Because it could not have constitutionally sanctioned any attorney for holding a viewpoint with which it simply disagreed, sanctioning an attorney who actually did not hold that viewpoint makes the order even more senseless.

III. **The District Court's sanctions order must be reversed because it fails to apply required "but-for" causation.**

In *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017), the Supreme Court required district courts to establish a causal connection between the individual actions of a sanctioned attorney and the specific fees the other side incurred, whereby a showing that "but-for" the attorney's specific actions, the other side would not have incurred the fees imposed as sanctions.

The District Court here did not engage in this required analysis—or even mention *Goodyear* in its award against Professor Dershowitz or how it arrived at the sanction it imposed as argued in our Opening Brief. *See also Lu v. United States, 921 F.3d 850, 858 (9th Cir. 2019)* ("*Goodyear* shed a new light on the framework for awarding attorneys' fees as sanctions . . . ."); *America Unites for Kids v. Rousseau*, 985 F.3d 1075, 1092 (9th Cir. 2021).

Maricopa County's generic fee entries such as for "various work on this matter," "reviewing emails and docs in Inbox re this matter," and "drafting" do not

establish any but-for causation from any work Dershowitz performed, or caused the County to otherwise do, do not specify the subject matter of the work to start with, and often fail to even specify what work was actually done. Examples of such generic or unconnected entries included "[v]arious work on this matter" and entries related to responding to the AZ GOP's amicus brief. The number of imprecise billing entries is too large to recount herein, but the Opening Brief lists (at 17–19) representative samples. The Court should reverse the sanctions order for failure to establish but-for causation between any of the sanctioned fees awarded and conduct specifically resulting from anything Dershowitz did in this case.

The County, instead of any coherent response, again simply criticizes us (at 31–32) for referring to the required "but-for" causation test at all. But the County refuses to recognize the pertinent text of cases requiring this analysis in doing so. In *Goodyear*, the Supreme Court itself stated the test it was establishing was a "but-for" test. *See Goodyear*, 581 U.S. at 109. We are reminded here of the words of Chief Justice Burger: "[A]ll too often, overzealous advocates seem to think the zeal and effectiveness of a lawyer depends on how thoroughly he can disrupt the proceedings or how loud he can shout or how close he can come to insulting all those he encounters . . . ." Warren E. Burger, *The Necessity for Civility*, 52 F.R.D. 211, 213 (1971). The County's criticisms of this required analysis add nothing but noise.

The County then claims that the sanctions were appropriate because "[w]hen a filing is entirely baseless, sanctionable conduct causes every expense reasonably incurred in responding." Response Br. at 32 (quoting *King*, 71 F.4th at 532). But the rule the County cites is not an exception to the but-for requirement; the County's position is entirely misplaced. Professor Dershowitz clearly was not responsible for the filing of the action or investigating all its facts, and that fact is not in dispute at this point following the evidentiary hearing and findings of the District Court. Like Attorney Junttila in *King*, who had no authority over whether to dismiss that case, Dershowitz's contribution was specific and minimal and he had no authority as lead counsel over the case; no evidence was presented by the County to the contrary, and certainly none to advance the notion that he was in control over the litigation and whether it would still be advanced without him. The County simply has not shown anything Professor Dershowitz did was a but-for cause of any expense incurred by the County; thus, any award against him was, per se, erroneous under *Goodyear*, *Lu*, and *Rousseau*.

## CONCLUSION

Professor Dershowitz respectfully requests this Court reverse the sanctions orders of the District Court against him.

**RESPECTFULLY SUBMITTED** on March 15, 2024.

WILENCHIK & BARTNESS, P.C.

/s/ *Dennis I. Wilenchik*
Dennis I. Wilenchik, Esq.
John D. Wilenchik, Esq.
Garo V. Moughalian, Esq.
2810 North Third Street
Phoenix, AZ 85004
admin@wb-law.com
*Attorneys for Non-Party/Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

1. This brief contains 6,735 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

**RESPECTFULLY SUBMITTED** on March 15, 2024.

WILENCHIK & BARTNESS, P.C.

/s/ *Dennis I. Wilenchik*
Dennis I. Wilenchik, Esq.
John D. Wilenchik, Esq.
Garo V. Moughalian, Esq.
2810 North Third Street
Phoenix, AZ 85004
admin@wb-law.com
*Attorneys for Non-Party/Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically served the foregoing with the Clerk of the Court for United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 15, 2024.

I further certify that all participants in this case are registered CM/ECF system users, and that service will be accomplished by the appellate CM/ECF system to the following participants:

**DATED:** March 15, 2024.

WILENCHIK & BARTNESS, P.C.

/s/ *Dennis I. Wilenchik*
Dennis I. Wilenchik, Esq.
John D. Wilenchik, Esq.
Garo V. Moughalian, Esq.
2810 North Third Street
Phoenix, AZ 85004
admin@wb-law.com
*Attorneys for Non-Party/Appellant*