

Dennis I. Wilenchik
diw@wb-law.com

**WILENCHIK & BARTNESS**
— A PROFESSIONAL CORPORATION —
ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street, Phoenix Arizona  85004

Licensed in
Arizona, Texas
and New York and
District of Columbia

Telephone:  602-606-2810     Facsimile:  602-606-2811

May 9, 2024

**VIA CM/ECF**

Molly Dwyer, Clerk of the Court
Office of the Clerk
U.S. Court of Appeals for the Ninth Circuit
95 7th Street
San Francisco, CA 94103

**Re: Lake et al. v. Hobbs et al., No. 23-16023**

Dear Ms. Dwyer:

Appellant Alan Dershowitz submits this letter pursuant to Federal Rule of Appellate Procedure 28(j).

On May 2, 2024, the Arizona Supreme Court issued an opinion in *Arizona Republican Party v. Richer*, in which undersigned counsel were involved.  That case discussed the impropriety of sanctioning litigants for political reasons.  Given the District Court here committed viewpoint discrimination, we find the language in that case instructive, and we cite it because it arises from the same State as the present case.

> Our courts should be cautious that, in their zeal to ensure that election challenges are properly grounded in fact and law under the guise of defending an "election's legitimacy," they do not inadvertently inflict real damage to our republic by slamming the courthouse door on citizens and their counsel legitimately seeking to vindicate rights, which is also important to maintaining public confidence in elections.

WB

WILENCHIK & BARTNESS
— A PROFESSIONAL CORPORATION —

U.S. Court of Appeals for the Ninth Circuit
Molly Dwyer, Clerk of the Court
May 9, 2024
Page 2 of 5

*Arizona Republican Party v. Richer*, No. CV-23-0208-PR, 2024 WL 1922203 at *10

¶ 44 (May 2, 2024).

The Arizona Supreme Court therefore concluded:

> "[R]aising questions" by petitioning our courts to clarify the meaning and application of our laws and noting the potential consequences of the failure to do so—particularly in the context of our elections—is never a threat to the rule of law . . . . During times of social and political contention and strife, we must be mindful that our courts provide a means of resolving such conflicts when issues are legitimately presented. By sanctioning parties and their lawyers for bringing debatable, long-shot complaints, courts risk chilling legal advocacy . . . under the guise of defending the rule of law . . . . [S]uch sanctions present a real and present danger to the rule of law.

*Id.*, 2024 WL 1922203 at *11 ¶ 49.

Here, the District Court avowedly sanctioned the case to "send a message" to litigants challenging the legitimacy of elections. But the First Amendment protects the rights of litigants to petition courts for a redress of grievances, including and especially in political contexts. Courts should not discriminate against these cases to "send a message" to litigants for doing so.



## WILENCHIK & BARTNESS
— A PROFESSIONAL CORPORATION —

U.S. Court of Appeals for the Ninth Circuit
Molly Dwyer, Clerk of the Court
May 9, 2024
Page 3 of 5

    A copy of the Arizona Supreme Court's opinion is attached.

       Sincerely,

       Dennis I. Wilenchik



U.S. Court of Appeals for the Ninth Circuit
Molly Dwyer, Clerk of the Court
May 9, 2024
Page 4 of 5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically served the foregoing with the Clerk of the Court for United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on May 09, 2024.

I further certify that all participants in this case are registered CM/ECF system users, and that service will be accomplished by the appellate CM/ECF system to the case participants.

Sincerely,

Dennis I. Wilenchik



**WILENCHIK & BARTNESS**
— A PROFESSIONAL CORPORATION —

U.S. Court of Appeals for the Ninth Circuit
Molly Dwyer, Clerk of the Court
May 9, 2024
Page 5 of 5

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing letter complies with the type-volume limitations of Fed. R. App. P. 28(j) and Ninth Circuit local rules because the body contains 350 words. The letter also complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5)(A) because the letter uses a proportionally-spaced serif face 14 points or larger, namely 14-point Times New Roman.

Sincerely,

Dennis I. Wilenchik

IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

―――――――

**ARIZONA REPUBLICAN PARTY,**
*Plaintiff/Appellant,*

*v.*

**STEPHEN RICHER, AS MARICOPA COUNTY RECORDER; AND THE MARICOPA
COUNTY BOARD OF SUPERVISORS, BY AND THROUGH, CLINT HICKMAN,
JACK SELLERS, THOMAS GALVIN, BILL GATES, STEVE GALLARDO,**
*Defendants/Appellees,*

―――――――

**ADRIAN FONTES, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE;
ARIZONA DEMOCRATIC PARTY,**
*Intervenors/Appellees.*

―――――――

No. CV-23-0208-PR
Filed May 2, 2024

―――――――

Appeal from the Superior Court in Maricopa County
The Honorable John R. Hannah, Jr., Judge
No. CV2020-014553
**REVERSED IN PART**

Opinion of the Court of Appeals, Division One
255 Ariz. 363 (App. 2023)
**VACATED IN PART**

―――――――

COUNSEL:

Dennis I. Wilenchik (argued), John D. Wilenchik, Garo V. Moughalian,
Wilenchik & Bartness, P.C., Phoenix, Attorneys for Arizona Republican
Party

Rachel H. Mitchell, Maricopa County Attorney, Joseph Branco, Deputy
County Attorney, Joseph Eugene La Rue, Deputy County Attorney,
Phoenix, Attorneys for Maricopa County Board of Supervisors, Stephen I.
Richer, Clint L. Hickman, Jack Sellers, Thomas Galvin, Bill Gates, and Steve
Gallardo

ARIZONA REPUBLICAN PARTY v. RICHER
Opinion of the Court

Kristin K. Mayes, Arizona Attorney General, Karen J. Hartman-Tellez (argued), Assistant Attorney General, Kara Karlson, Assistant Attorney General, Kyle R. Cummings, Assistant Attorney General, Phoenix, Attorneys for Adrian P. Fontes

Kory Langhofer, Thomas Basile, Statecraft PLLC, Phoenix, Attorneys for Amicus Curiae Statecraft PLLC

———————

JUSTICE LOPEZ authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES BOLICK, BEENE, MONTGOMERY, and KING joined.

———————

JUSTICE LOPEZ, Opinion of the Court:

¶1 This case arises from a lawsuit challenging the manner in which Maricopa County election officials conducted a mandatory hand count of ballots following the 2020 general election. We consider whether the trial court and the court of appeals erred in awarding attorney fees against the plaintiff, Arizona Republican Party (the "ARP"), and its attorneys, John D. Wilenchik, Lee Miller, and Wilenchik & Bartness, P.C. (collectively "Petitioners").[1] The court awarded fees under A.R.S. § 12-349(A)(1) and (F), which provides that courts "shall assess reasonable attorney fees" if an attorney or a party "[b]rings or defends a claim" that "is groundless and is not made in good faith." We hold that the attorney fees award was improper because Petitioners' claim was not groundless, thus obviating any need to determine whether the claim was made in the absence of good faith.

---

[1] Although the ARP was the plaintiff in the lawsuit and the claims belong to it, the trial court's fees award against both the ARP and its attorneys arises from the same litigation conduct. For ease of reference, we refer to both the ARP and its attorneys as "Petitioners."

ARIZONA REPUBLICAN PARTY v. RICHER
Opinion of the Court

## BACKGROUND

**¶2**　　　　Arizona requires county election officers to conduct a "hand count" following each countywide primary, special, general, and presidential preference election ("PPE").  A.R.S. § 16-602(B).  The purpose of this procedure is to ensure the accuracy of electronic voting machines and tabulators.  *See id.*  Consistent with this purpose, the hand count initially reviews the ballots from roughly two percent of the precincts in each county.  *See* § 16-602(B)(1).  The precincts to be hand counted are selected by the "county political party chairman for each political party that is entitled to continued representation on the state ballot" or such chairman's designee. *Id.* If the hand count reveals a level of accuracy within a "designated margin" chosen beforehand by the "vote count verification committee," then the hand count ends, and the electronic election results become final.  § 16-602(C), (K)(4).  If the hand count reveals inaccuracies that equal or exceed the designated margin, then the hand count expands in stages.  § 16-602(C)–(E).

**¶3**　　　　Following the 2020 general election, Maricopa County election officials conducted a hand count as prescribed by the Election Procedures Manual ("EPM") that the Arizona Secretary of State (the "Secretary") had promulgated the year prior, in December of 2019 (the "2019 EPM").  Ariz. Sec'y of State, 2019 Election Procedures Manual (2019), https://apps.azsos.gov/election/files/epm/2019_elections_procedures_manual_approved.pdf.  Although the actual hand count does not begin until after the polls have closed, the procedures preceding the hand count commence several weeks prior to the election.  For example, "[a]t least 14 days prior to a countywide primary, special, general, or PPE election, the officer in charge of elections must notify the county chairpersons of each recognized political party of the requirement to designate Hand Count Board members."  2019 EPM at 213.  Further, "[t]he political party county chairpersons must designate Hand Count Board members and alternates at least seven days before the election." *Id.* And, after "all ballots voted in the precinct polling places have been delivered to the central counting facility," "[t]he county political party chairpersons (or designees) shall take turns randomly drawing the precincts, vote centers, or consolidated polling places for the hand count." *Id.* at 215.

**¶4**　　　　In Arizona, each county's board of supervisors organizes elections by "establish[ing] a convenient number of election precincts."

ARIZONA REPUBLICAN PARTY v. RICHER
Opinion of the Court

A.R.S. § 16-411(A).  Each precinct ordinarily contains one "polling place" where the election is held.  § 16-411(B).  However, in 2011, the legislature amended § 16-411(B) to permit county boards to utilize "voting centers in place of or in addition to specifically designated polling places."  2011 Ariz. Sess. Laws ch. 331, § 3 (1st Reg. Sess.).  A voting center allows any voter in the county, regardless of the voter's assigned precinct, to cast a ballot at the center.  *See id.*  In the same act, the legislature also amended § 16-602(B) to direct that "[t]he hand count shall be conducted as prescribed by this section and in accordance with hand count procedures established by the secretary of state in the official instructions and procedures manual adopted pursuant to section 16-452."  *Id.* § 8.  But, the legislature left unchanged § 16-602(B)(1)'s requirement that the hand count sample be selected from "[a]t least two percent of the *precincts* in that county, or two *precincts*, whichever is greater."  *See* § 16-602(B)(1) (emphasis added).  Thus, despite having adopted a new practice of utilizing voting centers, § 16-602's hand count is arguably limited to precincts alone.  Indeed, "voting centers" are not mentioned in § 16-602.  Nevertheless, the 2019 EPM provides that voting centers are to be treated as precincts for the purpose of the hand count.  *See* 2019 EPM at 216.

¶5      On September 16, 2020, Maricopa County announced its intent to use voting centers in the November 3 general election.[2]  After the election, county officials conducted the hand count consistent with the 2019 EPM.  Thus, shortly after the polls closed, the Republican, Democratic, and Libertarian party county chairs selected the voting centers for the hand count.  The hand count commenced on November 7 and concluded on November 9, apparently without objection.  The process did not reveal any material inaccuracies in the electronic vote count.

¶6      On November 12, purportedly unaware that the hand count had already been completed days earlier, Petitioners sued the Maricopa County Recorder and various other county officials (collectively the "County"), seeking a declaration that the 2019 EPM violated § 16-602(B) because it permitted a sampling of voting centers instead of precincts for the hand count.  The complaint also requested mandamus relief directing the County to conduct the hand count based on precincts rather than voting centers.  One day later, the Secretary and the Arizona Democratic Party

---

[2]  Maricopa County had previously used voting centers in the March 2020 PPE and the August 2020 primary election.

4

ARIZONA REPUBLICAN PARTY v. RICHER
Opinion of the Court

filed separate motions to intervene as defendants, which the trial court granted. The County, the Secretary, and the Arizona Democratic Party each filed motions to dismiss Petitioners' complaint. In the Secretary's motion to dismiss, she argued that Petitioners' requested mandamus relief was "impossible" absent an accompanying injunction.[3] In response, Petitioners moved for a preliminary injunction, requesting that the court enjoin the certification of the election results pending the court's resolution of Petitioners' complaint on the merits. Despite Petitioners' assertion that a precinct-based hand count could be conducted prior to the canvassing deadline, *see* A.R.S. §§ 16-602(I), -642(A)(1)(b), Petitioners nonetheless requested that the court delay the official canvass if a court-ordered precinct hand count could not be completed before the canvassing deadline.

¶7 The trial court dismissed Petitioners' complaint based upon several perceived procedural defects. The court also emphasized that it had not considered the merits of Petitioners' substantive claim, writing that "[t]he question whether the Elections Procedures Manual correctly applies section 16-602(B) is not addressed, because the plaintiff did not make the showing necessary to justify that inquiry." Upon dismissal of Petitioners' complaint, the Secretary moved for an award of attorney fees. The court, finding that Petitioners' complaint was both groundless and made in "bad faith" under § 12-349(A)(1), awarded $18,237.59 in attorney fees against Petitioners, jointly and severally.

¶8 Petitioners appealed the trial court's dismissal of their claim for declaratory relief—but not their mandamus relief claim—and the attorney fees award. *Ariz. Republican Party v. Richer*, 255 Ariz. 363, 365 ¶ 1, 370 ¶ 31 (App. 2023). The court of appeals affirmed the trial court's rulings in all respects, and also awarded the Secretary's appellate attorney fees pursuant to § 12-349. *Id.* at 375–76 ¶ 60. Petitioners sought review in this Court. We accepted review of the trial court's and the court of appeals' attorney fees awards to clarify the interpretation and application of § 12-349, an issue of statewide importance. Dismissal of Petitioners' complaint is not before us. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

---

[3] Current Governor Katie Hobbs served as the Secretary of State at the time and was replaced by Adrian Fontes.

ARIZONA REPUBLICAN PARTY v. RICHER
Opinion of the Court

**DISCUSSION**

¶9        The trial court awarded fees against Petitioners pursuant to § 12-349(A)(1), which provides in relevant part:

> A. [T]he court shall assess reasonable attorney fees, expenses and, at the court's discretion, double damages . . . against an attorney or party . . . if the attorney or party does any of the following:
>
>> 1. Brings or defends a claim without substantial justification.
>> 2. Brings or defends a claim solely or primarily for delay or harassment.
>> 3. Unreasonably expands or delays the proceeding.
>> 4. Engages in abuse of discovery.
>
> . . . .
>
> F. For the purposes of this section, "without substantial justification" means that the claim or defense is groundless and is not made in good faith.

§ 12-349(A), (F).  Because the statute imposes a mandatory duty upon the occurrence of specified events, courts must issue an award of attorney fees whenever an attorney or party is proven, by a preponderance of the evidence, to have engaged in the enumerated conduct.  *Phx. Newspapers, Inc. v. Dep't of Corr.*, 188 Ariz. 237, 243–44 (App. 1997).  When issuing a fees award under § 12-349, a court must "set forth the specific reasons for the award."  A.R.S. § 12-350.

¶10       Review of an attorney fees award under § 12-349 presents a mixed question of fact and law.  We defer to a trial court's findings of fact unless clearly erroneous, but we review the court's interpretation and application of the fees statute de novo.  *Takieh v. O'Meara*, 252 Ariz. 51, 61–62 ¶ 39 (App. 2021).

¶11       We pause to clarify the relevance of the merits of Petitioners' complaint to our analysis before we address the propriety of the trial court's attorney fees award.  The trial court ostensibly dismissed Petitioners' complaint and awarded attorney fees based on alleged procedural defects.

6

ARIZONA REPUBLICAN PARTY v. RICHER
Opinion of the Court

Indeed, the court emphasized that it did not consider the merits of Petitioners' substantive claim and that the merits were irrelevant to the complaint's procedural infirmities. For example, in critiquing Petitioners' response to the Secretary's application for fees, the trial court chided Petitioners for focusing on "what section 16-602 says about hand count audit procedures" rather than addressing the "procedural defects" leading to dismissal of the complaint and the Secretary's attorney fees motion. Nonetheless, the trial court dismissively described Petitioners' interpretation of § 16-602(B) as "barely colorable" despite its avowed disinterest in the merits and lack of substantive analysis.

¶12          The trial court's sanction may reflect its disapproval of Petitioners' invocation of the hand count audit to "cross-reference or cross-check" ballots against voter registration data or use of declaratory relief and mandamus proceedings to challenge the "integrity" or "legitimacy" of the election while officials were preparing for the canvass. As the statute prescribes, the hand count audit is to ensure the accuracy of electronic voting machines and tabulators, and there was no indication that the use of voting centers instead of precincts in this case affected the election. However, if the trial court's characterization of the merits of Petitioners' legal theory as "barely colorable" contributed to its attorney fees award, it erred.

¶13          Facially, Petitioners' claim is more than "barely" colorable in this context. Petitioners correctly point out there is a plain-language conflict between § 16-602(B), which requires a precinct hand count, and the 2019 EPM, which permits a voting center hand count. To be sure, by noting the facial validity of Petitioners' claim, we do not offer an advisory opinion or otherwise address the Secretary's position that the 2019 EPM's voting-center provisions constitute a duly adopted procedure that supplements, rather than contravenes, the relevant statutes, as expressly contemplated by § 16-602(B)'s statement that "[t]he hand count shall be conducted as prescribed by this section and in accordance with hand count procedures established by the secretary of state." *See Fann v. State*, 251 Ariz. 425, 432 ¶ 11 (2021) (explaining that we exercise restraint to ensure that we do not issue advisory opinions or otherwise decide unripe issues). Because we conclude Petitioners' statutory construction argument is more than "barely colorable," and therefore could arguably form the basis of a mandamus request, we turn to the procedural issues that the trial court identified as the basis for the attorney fees award—naming the wrong party

ARIZONA REPUBLICAN PARTY v. RICHER
Opinion of the Court

in the declaratory judgment action, seeking mandamus relief that was unavailable as a matter of law, and contesting a pre-election procedure in a post-election challenge. *See* § 12-350 (requiring courts to "set forth the specific reasons for the award" pursuant to § 12-349).

## I.

**¶14**        Sections 12-349(A)(1) and (F) require a showing of both groundlessness and the absence of good faith. We first examine the trial court's groundlessness determination before turning to its "bad faith" finding.

**¶15**        In the context of § 12-349, the term "groundless" is synonymous with "frivolous." *Rogone v. Correia*, 236 Ariz. 43, 50 ¶ 22 (App. 2014). A claim is groundless "if the proponent can present no rational argument based upon the evidence or law in support of that claim." *Id.* (quoting *Evergreen W., Inc. v. Boyd*, 167 Ariz. 614, 621 (App. 1991)). However, a claim is not groundless if it is "fairly debatable," *Johnson v. Mohave County*, 206 Ariz. 330, 335 ¶ 19 (App. 2003), even if such claim constitutes a "long shot," *Goldman v. Sahl*, 248 Ariz. 512, 531 ¶ 68 (App. 2020). In other words, a claim may lack winning merit without being sufficiently devoid of rational support to render it groundless. *See City of Sedona v. Devol*, 196 Ariz. 178, 183 ¶ 27 (App. 1999). Whether a claim is groundless is viewed through an objective lens, without regard to the attorney's or party's subjective beliefs. *See Takieh*, 252 Ariz. at 61 ¶ 37.

**¶16**        Here, aside from opining that the claim was "barely colorable," the trial court ruled that Petitioners' complaint was groundless for two reasons: first, because Petitioners' requested declaratory and mandamus relief was unavailable as a matter of law; and second, because this Court's election law jurisprudence foreclosed Petitioners' post-election challenge to a pre-election procedure.

**¶17**        The court of appeals embraced the trial court's reasoning concerning the availability of remedies and the timing of election litigation, *see Ariz. Republican Party*, 255 Ariz. at 371–72 ¶¶ 38–43, but it also affirmed the trial court's groundlessness determination for a third reason, namely the trial court's antecedent laches ruling, *see id.* at 371 ¶ 37. Although the trial court dismissed Petitioners' complaint based on laches, it expressly rejected laches as a basis for its groundlessness determination.

ARIZONA REPUBLICAN PARTY v. RICHER
Opinion of the Court

Nevertheless, because an appellate court "may affirm the superior court's ruling if it is correct for any reason apparent in the record," *Takieh*, 252 Ariz. at 62 ¶ 39 (citation omitted) (internal quotation marks omitted), we will also address whether laches supports the groundlessness finding. We address in turn each of the lower courts' bases for groundlessness.

**A.**

**¶18**        The trial court deemed Petitioners' complaint groundless, in part, due to Petitioners' procedural faux pas in purportedly naming the incorrect defendant in their declaratory judgment action. Citing to *Yes on Prop 200 v. Napolitano*, 215 Ariz. 458, 470 ¶ 36 (App. 2007), the court wrote that "[a] declaratory judgment action must name as a defendant *the* entity or official responsible for implementing the law at issue." (Emphasis added.) The trial court then concluded that "[t]he Arizona state official responsible for implementing election law is the secretary of state." Thus, because Petitioners sued only the County—not the Secretary—the court determined that Petitioners' complaint was groundless.

**¶19**        *Yes on Prop 200*—the sole case on which the trial court relied—states, "[t]o successfully bring a declaratory judgment action challenging the State's implementation of Proposition 200, Plaintiffs must name as a defendant *an* entity or official that has the ability to control the implementation of that proposition. In naming the Governor, the Plaintiffs have named *an* appropriate official." 215 Ariz. at 470 ¶ 36 (citation omitted) (emphasis added). In paraphrasing *Yes on Prop 200*, the court changed the indefinite articles to definite ones, thereby incorrectly implying the existence of a single proper defendant in a procedurally valid declaratory action. But here, Petitioners arguably *did* sue the governmental entity responsible for *implementing* the challenged hand-count procedures. "For each countywide primary, special, general and presidential preference election, the *county officer* in charge of the election shall conduct a hand count at one or more secure facilities." § 16-602(B) (emphasis added). Thus, to the extent *Yes on Prop 200* is controlling here, Petitioners arguably did not sue the wrong party by failing to also name the Secretary as a defendant. In any event, the Secretary moved to intervene just one day after Petitioners filed their complaint, and Petitioners agreed to the intervention. It is untenable to invoke an alleged procedural defect like the one in this case—readily remediable and, in fact, remedied one day after the complaint was filed—to irrevocably mar a complaint as groundless. We hold that

ARIZONA REPUBLICAN PARTY v. RICHER
Opinion of the Court

Petitioners' failure to name the Secretary as a defendant, even if improper, did not render their complaint groundless. The trial court erred in finding otherwise.

¶20        Our holding that, in this context, Petitioners' omission of the Secretary as a defendant in their request for declaratory relief does not constitute groundlessness, does not require that we decide whether the Secretary was a necessary party. Obvious reasons abound why a party would include the Secretary as a defendant in a suit seeking to invalidate or enjoin an EPM provision. Indeed, Arizona's Uniform Declaratory Judgments Act requires a plaintiff seeking declaratory relief to name as parties all persons "who have or claim any interest which would be affected by the declaration." A.R.S. § 12-1841(A). The Secretary arguably has a per se "interest which would be affected by the declaration" in any lawsuit that challenges the validity or applicability of an EPM provision. Whatever the Secretary's interest in Petitioners' declaratory action, it was fairly debatable whether Petitioners' naming of the County as a defendant in their complaint was adequate, and, regardless, the parties agreed to the Secretary's intervention just one day after the complaint was filed.

**B.**

¶21        The trial court also ruled that Petitioners' claim was groundless because their requested mandamus relief—directing the County to conduct a hand count based on precincts—was unavailable as a matter of law. Citing *Adams v. Bolin*, 77 Ariz. 316, 322–23 (1954), the court observed that "a writ of mandamus cannot issue to public officials who have no legal discretion concerning the matter at issue." But, as noted, § 16-602 can be interpreted as limiting the hand count audit to precincts, thus arguably prohibiting election officials from using voting centers for the random selection. Contrary to the court's reasoning that mandamus is *unavailable* if a public officer lacks discretion in the discharge of duties, actually the converse is true—mandamus is only *available* when a public officer lacks such discretion. *See Adams*, 77 Ariz. at 322–23 ("As against public officers in particular, [the writ of mandamus] is issued only to compel the performance of an act which the law especially enjoins as a duty arising out of the office. If such officer is not specifically required to perform the duty or has any discretion as to what shall be done, the writ does not lie." (citation omitted)); *see also Sears v. Hull*, 192 Ariz. 65, 68 ¶ 11

10

ARIZONA REPUBLICAN PARTY v. RICHER
Opinion of the Court

(1998) ("Thus, the requested relief in a mandamus action must be the performance of an act and such act must be non-discretionary.").

**¶22** Thus, because the Maricopa County election officials enjoyed no discretion in the discharge of their hand-count duties—a prerequisite to mandamus relief rather than a legal disqualifier—the trial court erred.[4] Indeed, had Petitioners' claim that the challenged 2019 EPM provisions were void because they contravened § 16-602(B) been correct, their requested mandamus relief could have constituted a valid attempt to enforce a public officer's non-discretionary duty.

**¶23** Although we decline to resolve the merits of Petitioners' claim—whether the 2019 EPM conflicted with the relevant statutes, thus compelling Maricopa County election officials to execute the statutory hand count procedures in violation of the 2019 EPM—we note that mandamus relief in these circumstances is typically unavailable. The court of appeals has held that "mandamus is not an appropriate method to use to obtain a definition of duties that are otherwise subject to dispute," *Yes on Prop 200*, 215 Ariz. at 467 ¶ 26, and this Court has "described mandamus as available only 'to require public officers to perform their official duties when they refuse to act,'" *Transp. Infrastructure Moving Ariz.'s Econ. v. Brewer*, 219 Ariz. 207, 213 ¶ 32 (2008) (quoting *Sears*, 192 Ariz. at 68 ¶ 11). Thus, if a party claims "not that the Secretary refused to perform her statutory duties . . . but rather that she erred in performing them," mandamus is unavailable. *Id.*

**¶24** Our cases, however, do not clearly delineate the standard courts should use to discern when a legal duty is "subject to dispute" for purposes of a mandamus action. We caution that an approach that forecloses mandamus relief because a party simply disputes the scope of an official's duties risks vitiating the writ of mandamus. Here, however, we only hold that Petitioners' requested mandamus relief was not groundless because it was at least fairly debatable, even if a "long shot," whether the County was obligated to conduct a hand count consistent with § 16-602(B) or an arguably conflicting EPM provision. *See Goldman*, 248 Ariz. at 531

---

[4] The court of appeals repeated the trial court's error, quoting the trial court's incorrect legal proposition but also seemingly attributing the quote to this Court's holding from *Adams*. *See Ariz. Republican Party*, 255 Ariz. at 372 ¶ 42.

ARIZONA REPUBLICAN PARTY v. RICHER
Opinion of the Court

¶ 68.  Moreover, Petitioners only sought mandamus relief conditioned on a declaratory judgment that the 2019 EPM violated the statute requiring a precinct hand count.

## C.

¶25        We next consider the trial court's ruling that Petitioners' claim was groundless because their post-election challenge improperly contested a pre-election procedure.

¶26        It is well-established that a litigant must challenge pre-election procedures prior to the election.  *Kerby v. Griffin*, 48 Ariz. 434, 441–44 (1936) (examining the alleged violation of certain statutes governing the pre-election distribution of initiative publicity pamphlets); *Tilson v. Mofford*, 153 Ariz. 468, 470–71 (1987) (examining whether an initiative petition complied with certain statutes and constitutional provisions governing "the form of the initiative"); *Sherman v. City of Tempe*, 202 Ariz. 339, 340 ¶ 1, 342 ¶¶ 9–11 (2002) (examining the alleged violation of certain statutes requiring that municipalities "mail publicity pamphlets ten days before the start of early voting"); *Vangilder v. Ariz. Dep't of Revenue*, 252 Ariz. 481, 486 ¶¶ 14–15 (2022) (examining whether a county resolution calling for a countywide special election complied with the statute governing the form of such resolutions).   It is debatable, however, whether a statutory post-election hand count constitutes a "procedure[] leading up to an election" governed by the bar on post-election filings.  *See Tilson*, 153 Ariz. at 470.

¶27        In this case, the trial court merely assumed that the challenged hand count was a pre-election procedure, but it did not explain why the hand count is subject to the election-law time bar.  Instead, the court focused on Petitioners' failure to allege (1) that the hand count was fraudulent or (2) that the failure to follow proper procedures changed the result of the election, each of which constitutes a narrow exception to the election-law time bar.  *See Findley v. Sorenson*, 35 Ariz. 265, 269 (1929); *Miller v. Picacho Elementary Sch. Dist. No. 33*, 179 Ariz. 178, 179–80 (1994).  To be sure, Petitioners do not allege in their complaint that the asserted hand-count anomalies affected the outcome of the election or otherwise involved fraud.  Instead, Petitioners contend that the hand-count protocol is not a pre-election procedure and, thus, is not subject to the election-law time bar.

12

ARIZONA REPUBLICAN PARTY v. RICHER
Opinion of the Court

¶28      The court of appeals categorically rejected Petitioners' contention that a challenge to the hand count eludes the election-law time bar as a challenge to a post-election procedure. *See Ariz. Republican Party*, 255 Ariz. at 371 ¶ 39. But the court's only justification for its conclusion is that the "[h]and count procedures start no later than two weeks before election day, when the county official informs the county political party chairs how many of their respective members are needed to serve on the 'Hand Count Boards.'" *Id.* (citing 2019 EPM at 213). Although the court's characterization of the process is correct as far as it goes, the hand-count protocol continues past the election's conclusion. In fact, although the statute directs the sampling from precincts, the actual selection of polling places does not commence until *after* the election. 2019 EPM at 215 ("The selection of the precincts/polling locations shall not begin until all ballots voted in the precinct polling places have been delivered to the central counting facility."). Indeed, the 2019 EPM does not include the hand count among its pre-election procedures. *Id.* at 128, 213 (dedicating a chapter to the "Hand Count Audit" despite the existence of a separate chapter dedicated to "Pre-Election Procedures"). Thus, the hand count is not a pure pre-election procedure; rather, it straddles the election. The opposite conclusion would foreclose any challenge to the hand count, absent fraud, if the basis for the claim arose from failure to comply with post-election procedures.

¶29      The merits of Petitioners' claim are not before us; therefore, we need not determine whether, or to what extent, the election-law time bar applies to a procedure, like the hand count, that straddles the election. We merely conclude that Petitioners' post-election claim was not groundless because whether their claim was time-barred by our jurisprudential election-law procedural rule is at least "fairly debatable." *See Johnson*, 206 Ariz. at 335 ¶ 19.

**D.**

¶30      Laches is an equitable defense that serves as the "counterpart to the statute of limitations." *Sotomayor v. Burns*, 199 Ariz. 81, 82–83 ¶ 6 (2000). Additionally, it is an affirmative defense, *Flynn v. Rogers*, 172 Ariz. 62, 66 (1992), and a trial court applies laches at its discretion, *McLaughlin v. Bennett*, 225 Ariz. 351, 353 ¶ 6 (2010). Although unreasonable delay is a criterion for laches, the "laches defense, however, cannot stand on unreasonable conduct alone. A showing of prejudice is also required."

ARIZONA REPUBLICAN PARTY v. RICHER
Opinion of the Court

*Sotomayor*, 199 Ariz. at 83 ¶ 8 (citation omitted). In adjudicating laches claims, courts must focus on "fundamental fairness" and "consider all factors." *League of Ariz. Cities & Towns v. Martin*, 219 Ariz. 556, 560 ¶ 13 (2009).

¶31 The outcome of a laches inquiry is difficult to predict without considering a claim's context because it depends upon factors independent from groundlessness, including fundamental fairness and a weighing of relative prejudices. *See id.* at 560 ¶ 13. Therefore, a successful laches defense does not *ipso facto* render a claim groundless. Of course, the facts underlying a laches dismissal could also support a finding of groundlessness; for example, a lawsuit might be so unreasonably dilatory and so obviously prejudicial that it is objectively groundless ab initio. If such a case were to arise, the trial court would have to expressly "set forth the specific reasons for the award." § 12-350. But a court should not conclude that a claim is groundless simply *because* it is barred by laches.

¶32 Here, the trial court did not base its groundlessness determination on its antecedent laches ruling. The trial court dismissed Petitioners' complaint based on laches because it concluded Petitioners could, and should, have challenged the hand-count procedure earlier in 2020, as they had acquired constructive knowledge of the contested hand-count procedures when the Maricopa County Republican Party participated in voting-center hand counts in the March preference and the August primary elections leading up to the November general election. Thus, the trial court reasoned that Petitioners were unreasonably dilatory, and created prejudice, in sitting on their hands and waiting to challenge the general-election hand count until after its completion.

¶33 Even if the trial court reasonably determined that Petitioners' complaint was barred by laches, that was not the basis for imposing sanctions. And we do not concur in the court of appeals' conclusion that the prejudicial delay in filing the complaint rendered Petitioners' action objectively groundless and, therefore, sanctionable on this record. Although an appellate court may affirm a fees award under § 12-349 "if it is correct for any reason apparent in the record," *Takieh*, 252 Ariz. at 62 ¶ 39 (citation omitted), such a reason is absent from this record. Although Petitioners' challenge came months after a similar exercise of the 2019 EPM's hand-count procedures—undermining any assertion that they were unaware of the alleged violations—and after the hand count had been

ARIZONA REPUBLICAN PARTY v. RICHER
Opinion of the Court

completed, Petitioners still initiated their challenge almost two weeks before the official canvass deadline.  Consequently, although risky and a "long shot," *see Goldman*, 248 Ariz. at 531 ¶ 68, Petitioners' contention that another hand count could be conducted prior to the canvass deadline—the very relief sought in the complaint—was not untenable.  This case does not present the sort of extraordinary circumstances that would render the equitable defense of laches a source of objective legal groundlessness.

### E.

¶34      A fees award under § 12-349(A)(1) requires groundlessness *and* the absence of good faith.  Because we conclude that the trial court and the court of appeals erred in ruling that the absence of available remedies, the applicability of the election-law time bar on post-election challenges to pre-election procedures, and laches rendered Petitioners' complaint groundless, the § 12-349(A)(1) fees award against Petitioners was improper.  We therefore have no need to consider whether Petitioners' claim was "not made in good faith."  Nevertheless, because our courts' jurisprudence interpreting § 12-349(F)'s phrase "not made in good faith" lacks clarity and engenders confusion, we will address its meaning.  *See Big D Const. Corp. v. Court of Appeals*, 163 Ariz. 560, 563 (1990); *In re Pima Cnty. Mental Health No. 20200860221*, 255 Ariz. 519, 523–24 ¶ 9 (2023) (recognizing an exception to our prudential mootness doctrine when an issue is "of great public importance or one [that] is likely to recur" (alteration in original) (citation omitted)).

### II.

¶35      Arizona courts have never defined the phrase "not made in good faith" as it pertains to § 12-349(F).  *See Ariz. Republican Party*, 255 Ariz. at 372–73 ¶ 45.  Instead, our courts typically conflate the absence of good faith with the presence of bad faith.  *See, e.g.*, *Phx. Newspapers*, 188 Ariz. at 243–45.  Textually, this approach was fairly benign in the past because § 12-349's prior version defined "without substantial justification"—the basis for fees in § 12-349(A)(1)—to mean "the claim or defense constitutes harassment, is groundless and is not made in good faith."  § 12-349(F) (2011).  In other words, by including "harassment" as a definitional component of "without substantial justification," the statute moored its meaning, in part, to the presence of bad faith in the form of harassment.  However, in 2012, the legislature excised "harassment" from § 12-349(F).

15

ARIZONA REPUBLICAN PARTY v. RICHER
Opinion of the Court

*See* 2012 Ariz. Sess. Laws ch. 305, § 2 (2d Reg. Sess.). Nevertheless, despite the 2012 amendment, our courts have continued to deem the absence of good faith as synonymous with the presence of bad faith. *See, e.g.*, *White Mountain Health Ctr., Inc. v. Maricopa County*, 241 Ariz. 230, 253 ¶ 84 (App. 2016). Indeed, in this Court's only post-2012 amendment case addressing the faith prong of § 12-349(F), we continued to conflate the absence of good faith with the presence of bad faith. *See Shooter v. Farmer*, 235 Ariz. 199, 201 ¶ 6 (2014) ("Farmer requests attorney's fees, arguing that Shooter's petition forgery claim was without substantial justification, meaning that it is groundless and is not made in good faith. Because we do not conclude that Shooter acted in bad faith, we deny Farmer's request for fees." (citations omitted) (internal quotation marks omitted)).

¶36 In this case, following this Court's lead, the trial court expressly conflated the absence of good faith under § 12-349(F) with the presence of an "ulterior" and "improper" purpose under abuse-of-process jurisprudence, a hallmark of bad faith. Although the court of appeals declined to embrace the trial court's analysis, *see Ariz. Republican Party*, 255 Ariz. at 373 ¶ 47, it failed to offer an alternative paradigm.

¶37 Our courts' conflation of the absence of good faith with bad faith under § 12-349 presents an interpretative problem because it renders § 12-349(A)(1) superfluous. Sections 12-349(A)(2)–(4), respectively, mandate a fees award if a court determines that an attorney or party "[b]rings or defends a claim solely or primarily for delay or harassment," "[u]nreasonably expands or delays the proceeding," or "[e]ngages in abuse of discovery." In other words, each subsection provides a separate bad faith basis for a fees award. If we construe § 12-349(A)(1) to require groundlessness and bad faith, (A)(1) would become superfluous because (A)(2)–(4) merely require a type of bad faith. In practical terms, why would a party requesting fees under § 12-349 pursue an award under (A)(1)—requiring a showing of groundlessness *and* bad faith—when merely proving harassment, delay, or abuse of discovery would suffice? If another textually valid interpretation exists, it is preferable to the currently prevailing one that conflates the absence of good faith with the presence of bad faith. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174–79 (2012) (the surplusage canon); *Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019) ("A cardinal principle of statutory interpretation is to give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous.").

16

ARIZONA REPUBLICAN PARTY v. RICHER
Opinion of the Court

¶38        A truer textual construction of § 12-349(F)—one that ties the absence of good faith to groundlessness and gives (A)(1) independent vitality—is that a claim is "not made in good faith" if (1) it is groundless and (2) the party or attorney knows or should know that it is groundless, or is indifferent to its groundlessness, but pursues it anyway.  This conception of the absence of good faith captures the situation in which a party, absent a good faith effort to change the law, pursues a claim knowing that it lacks a legal foundation and is unlikely to succeed, even as a "long shot," or where a party pursues a claim devoid of factual support or legitimate expectation that discovery will produce the requisite factual basis.  In other words, a party's indifference to a claim's invalidity may constitute the absence of good faith even without an intent to harass or delay or other evidence of affirmative bad faith.  This definition also aligns with the statutory factors a court "may include" "in its consideration" of a potential § 12-349 fees award, including (1) "[t]he extent of any effort made to determine the validity of a claim before the claim was asserted," (2) "[t]he extent of any effort made after the commencement of an action to reduce the number of claims or defenses being asserted or to dismiss claims or defenses found not to be valid," and (3) "[t]he availability of facts to assist a party in determining the validity of a claim or defense."  *See* § 12-350(1)–(3).

¶39        Our definition of "not made in good faith" is also consistent with several recent court of appeals decisions that effectively adopt this approach.  *See Takieh*, 252 Ariz. at 62 ¶¶ 40–43 (finding the absence of good faith because the plaintiff "offered no admissible evidence that [the defendant] made defamatory statements about him, made no effort to determine whether [the defendant] actually made admissible defamatory statements about him before filing his amended complaint, and failed to withdraw his claim when confronted with his lack of evidence" (cleaned up)); *Gitman v. Simpson*, No. 1 CA-CV 21-0723, 2022 WL 4241966, at *6 ¶¶ 23–25 (Ariz. App. Sept. 15, 2022) (mem. decision) (finding the absence of good faith because the plaintiff "had no evidence of a causal link," "failed to avail himself of facts concerning the alleged causal connection," "lacked a good-faith basis for his damage allegations," "never presented any facts," brought a claim "rooted only in supposition and speculation," and "failed to conduct an adequate pre-litigation investigation" (cleaned up)).

ARIZONA REPUBLICAN PARTY v. RICHER
Opinion of the Court

¶40          Arizona courts have viewed the absence of good faith under § 12-349(A)(1) through a subjective lens while, in contrast, they have assessed groundlessness by an objective standard. *See, e.g.*, *Ariz. Republican Party*, 255 Ariz. at 372 ¶ 45 (citing *Rogone*, 236 Ariz. at 50 ¶ 22). We disavow this dichotomous approach. Courts should evaluate the absence of good faith under § 12-349(A)(1) objectively—consistent with the Arizona Rule of Civil Procedure 11 standard—which "is not based on whether an attorney subjectively pursues claims in good faith, but instead is judged on an objective standard of what a professional, competent attorney would do in similar circumstances." *See Villa De Jardines Ass'n v. Flagstar Bank, FSB*, 227 Ariz. 91, 96 ¶ 14 (App. 2011) (quoting *Standage v. Jaburg & Wilk, P.C.*, 177 Ariz. 221, 230 (App. 1993)); *accord Goldman*, 248 Ariz. at 531 ¶ 68 ("The basis for a sanction according to Civil Procedure Rule 11 is the same as A.R.S. § 12-349(A)(1)."). The "circumstances" that the analysis incorporates are of course fact-dependent, and they are likely to include the factors enumerated in § 12-350, including the "availability of facts to assist a party in determining the validity of a claim or defense" and the effort made to inform oneself of the available facts. The virtue of this approach is that it extricates our courts from the morass of attempting to discern the subjective motives of attorneys and parties in bringing a case and avoids conflating motive and the objective reasonableness of litigation conduct when considering a fees award under § 12-349(A)(1).

¶41          To clarify the scope of § 12-349(A)'s application, we note that the statute refers only to the bringing of a claim, thus implying that a party's conduct in *maintaining* the action is immune from sanction. However, in context, the statute is most reasonably construed to also apply to attorneys or parties who maintain sanctionable claims. Notably, for example, § 12-350(2) invites courts to consider "[t]he extent of any effort made *after the commencement* of an action to reduce the number of claims or defenses being asserted or to dismiss claims or defenses found not to be valid." (Emphasis added.) In addition to this textual support for applying the statute to the bringing *and* maintaining of a sanctionable claim, it makes little sense to deter and punish offending conduct at the inception of a case, but to permit it, without sanction, during the course of the litigation.

¶42          As Petitioners' complaint was not groundless, thus foreclosing a fees award under § 12-349(A)(1), we decline to consider whether Petitioners' claim was not made in good faith. We will, however, review the trial court's finding that Petitioners acted in bad faith because its

18

ARIZONA REPUBLICAN PARTY v. RICHER
Opinion of the Court

bad faith determination could support a fees award under § 12-349(A)(2) for bringing or maintaining a claim "solely or primarily for delay or harassment."

### III.

¶43       The trial court ruled that Petitioners engaged in sanctionable bad faith by bringing a lawsuit primarily for "political reasons." The court rejected Petitioners' asserted justification that they merely requested a by-the-book hand count in order to dispel public mistrust surrounding the 2020 election, reasoning that "'[p]ublic mistrust' is a political issue, not a legal or factual basis for litigation." *Id*.

¶44       We cannot countenance the trial court's rigid delineation between the motives underlying election litigation—"political" reasons, which invite sanction under § 12-349, and "legal or factual" justifications, which are permissible. Invariably, political motives are inextricably intertwined with the legal or factual considerations in pursuing election cases. Indeed, the Secretary concedes that "[e]lection litigation inevitably carries political considerations." The desire to vindicate a legal right—even if in the election context and animated exclusively by political motives—is not relevant, much less per se sanctionable. Courts should focus on the legal and factual merits of a claim and the party's and attorney's conduct in the course of the litigation. Any suggestion that a party or attorney faces enhanced risk of sanction merely because they couple political motives with a long-shot effort to vindicate a legal right in the election law context intolerably chills citizens and their attorneys precisely in an arena where we can least afford to silence them. Our courts should be cautious that, in their zeal to ensure that election challenges are properly grounded in fact and law under the guise of defending an "election's legitimacy," they do not inadvertently inflict real damage to our republic by slamming the courthouse door on citizens and their counsel legitimately seeking to vindicate rights, which is also important to maintaining public confidence in elections.

¶45       The trial court also ruled that Petitioners acted in bad faith because their declaratory relief served as a mere pretext to request injunctive relief intended to undermine the results of the 2020 election. To be sure, a party may not challenge an election based upon procedural irregularities absent an allegation the irregularities affected the results of

ARIZONA REPUBLICAN PARTY v. RICHER
Opinion of the Court

the election or at least raised uncertainty. *See Miller*, 179 Ariz. at 180. We are willing to assume arguendo that seeking to delay the election results canvass is tantamount to challenging the election and, thus, is disallowed unless there is a credible allegation that the election results are questionable. Nevertheless, we disagree that, on this record, Petitioners' requested injunctive relief evinces bad faith.

¶46        First, despite the trial court's assertion, Petitioners did not abandon their requested declaratory relief. To the contrary, after the trial court denied such relief, Petitioners appealed the adverse ruling. Second, even if Petitioners' requested injunctive relief was unlikely to succeed, we disagree that, in context, the request indicates bad faith. Critically, Petitioners sought an injunction only after the Secretary argued that mandamus would be "impossible" absent an injunction delaying the official canvass. Moreover, in her application for attorney fees, the Secretary characterized Petitioners' injunction request as "at the [trial] [c]ourt's invitation." On this record, we do not conclude that Petitioners' request for an injunction—made midstream in the litigation upon the prompting of the opposing party and at the court's invitation—transmutes the original complaint into a bad-faith pleading.

**IV.**

¶47        The court of appeals awarded the Secretary's attorney fees incurred on appeal under § 12-349. *Ariz. Republican Party*, 255 Ariz. at 375–76 ¶ 60. But the court did not specify the subsection of § 12-349 upon which it awarded fees, nor did it comply with § 12-350's requirement to "set forth the specific reasons for the award." Instead, the court simply based its appellate fees award on "the same reasons outlined by the superior court" and noted Petitioners' failure to respond to the fees request. *Id.*

¶48        The court of appeals' explanation for imposing its § 12-349 sanction—"the same reasons outlined by the superior court"—is insufficient to sustain the fees award. First, the trial court's reasons for its fees award cannot support the appellate fees award because the issues before the courts significantly diverged—on appeal, Petitioners did not contest the trial court's mandamus, laches, or election-law time bar rulings. In fact, the only issues on appeal were the trial court's attorney fees award and Petitioners' alleged failure to name the proper defendant in their request for declaratory relief. Second, because the court did not set forth

ARIZONA REPUBLICAN PARTY v. RICHER
Opinion of the Court

the specific reasons for its appellate fees award, we are left to surmise its justification. Was it per se frivolous to appeal an award of attorney fees and/or to dispute whether a complaint seeking declaratory relief named the proper defendant? We doubt so. Third, we note that the court did not issue sanctions pursuant to Arizona Rule of Civil Appellate Procedure 25, the appellate corollary of Rule 11. In any event, the court of appeals "impose[s] sanctions under Rule 25 only with great reservation, and [it] decline[s] to do so when the issues raised are supportable by any reasonable legal theory, or if a colorable legal argument is presented about which reasonable attorneys could differ." *Villa De Jardines*, 227 Ariz. at 99 ¶ 26 (citations omitted) (internal quotation marks omitted). Thus, we infer that the court did not deem Petitioners' appeal violative of Rule 25, and we decline to infer such a finding on this record. Petitioners' appeal of the trial court's dismissal of their requested declaratory relief and fees sanction was not frivolous and the court erred in awarding the Secretary's appellate fees.

## CONCLUSION

¶49        Petitioners were sanctioned under § 12-349 for pursuing election-related claims the trial court and court of appeals erroneously characterized as "groundless." Far from filing and maintaining a factually unsupported election challenge, Petitioners sought a declaratory judgment based on the plain language of § 16-602(B)(1) and requested mandamus relief conditioned on a favorable resolution of their action for declaratory relief. Under our jurisprudence, for the reasons discussed, Petitioners' claim was not groundless and arguably was made in good faith. Of note, the trial court emphasized in its ruling that Petitioners' gravest transgression and "direct evidence of bad faith" was "[u]ndercutting the election's legitimacy by raising 'questions,'" which it characterized as "a threat to the rule of law posing as an expression of concern." But "raising questions" by petitioning our courts to clarify the meaning and application of our laws and noting the potential consequences of the failure to do so — particularly in the context of our elections — is never a threat to the rule of law, even if the claims are charitably characterized as "long shots." Of course, parties and attorneys in election cases are not immune from sanction under § 12-349, *see, e.g.*, *Kentch v. Jantzen*, No. CV-23-0205-SA, at 3 (Ariz. Aug. 23, 2023) (dec. order), but neither are they *more* susceptible to its terms. During times of social and political contention and strife, we must be mindful that our courts provide a means of resolving such conflicts when issues are legitimately presented. By sanctioning parties and their lawyers

21

ARIZONA REPUBLICAN PARTY v. RICHER
Opinion of the Court

for bringing debatable, long-shot complaints, courts risk chilling legal advocacy and citizens raising "questions" under the guise of defending the rule of law. Even if done inadvertently and with the best of intentions, such sanctions present a real and present danger to the rule of law.

**¶50**　　　　For the foregoing reasons, we vacate the trial court's and the court of appeals' § 12-349 attorney fees awards. We also vacate paragraphs 1 and 32–60 of the court of appeals' opinion.